IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, et al.,       )
                               )
            Plaintiffs,        )
                               )      CV 85 T 665 N
v.                             )
                               )
ALABAMA DEPARTMENT OF          )
TRANSPORTATION, et al.,        )
                               )
            Defendants.        )

## NOTICE OF FILING

Defendants file herewith the supplemental report of their expert, David B. Lasater.

_____
THOMAS R. ELLIOTT, JR.
LISA W. BORDEN

Attorneys for Defendants

OF COUNSEL:

LONDON & YANCEY, L.L.C.
1000 Park Place Tower
2001 Park Place North
Birmingham, Alabama  35203
(205) 251-2531

### Certificate of Service

I certify that the foregoing Notice of Filing has been served upon all counsel of record by placing copies of same in the U.S. Mail, properly addressed and postage prepaid, this 18th day of July, 1997.

_____
Attorney for Defendants

1995

**SUPPLEMENTAL REPORT OF DEFENDANTS' EXPERT**
**DAVID B. LASATER**

Analysis of Out-of-Classification Assignments

July 18, 1997

## Introduction

During my testimony on July 11, 1997, the Court asked me to perform a supplemental analysis of out-of-classification employee assignments within the Alabama Department of Transportation ("ALDOT"). The supplemental analysis reported here was to be performed using 85 (instead of 425) as the number of pre-Consent Decree out-of-classification workers. All of the 85 were Project classification employees. The procedures and data sources I used in performing my supplemental analysis are identical to those which are described in my June 13, 1997 report and my July 11, 1997 testimony with two exceptions:

1. I apply the term "out-of-classification" only to those persons who are working in a classification higher than their current classification; and

2. The results I report herein use two different views of the relevant population of the "lower classification" workers:

   (a) "Lower classification" refers to a single classification, or, alternatively,

   (b) "Lower classification" refers to any and all classifications from which a higher out-of-classification assignment could be made, limited only by the lowest classification from which an actual higher classification assignment was made.

1

## Description of Analysis

My understanding is that the State Personnel Department ("SPD") initially assigned the out-of-classification label to specific work described by ALDOT employees on Form 40's. Those Form 40's were received by SPD at about the time of the Consent Decree (April 1994). SPD created a list of 85 names of persons working "out-of-classification" from that review. Those persons are the "original 85" who were deemed to be working out-of-classification as of the Consent Decree.

Some time after the Form 40's were analyzed, SPD evaluated requests submitted by employees to review their duties and responsibilities for potential reclassification. The Review Requests submitted by approximately 1,300 employees were read by SPD in conjunction with a second reading of the Form 40's for those persons. SPD then determined whether the Review Requests added sufficient additional information to a person's Form 40 information to support a conclusion that the person had, at the time of the Consent Decree, evidently been working out-of-classification.

SPD's second reading of the Form 40's resulted in an additional 340 persons deemed to be working out-of-classification as of the Consent Decree. The "original 85" persons plus the additional 340 persons sum to a list of 425

persons to which I referred as the out-of-classification employees in my July 11, 1997 testimony.

The analysis reflected below, as requested by the Court, assumes that every out-of-classification assignment to other than the "original 85" was made since the Consent Decree. Also, during the July 11, 1997 hearing, the Court expressed a view that all lower classifications within the range of

(a) the <u>lowest classification</u> from which a particular <u>higher classification</u> assignment was made to

(b) that higher classification should be included in the analysis of pro-forma reassignments to the <u>higher</u> classification.

I have prepared such an analysis and reported its results here in Table 3.

The results reported here are in terms of reassignments of duties from whites to blacks or vice versa as necessary to make racially proportional any non-proportional out-of-class assignments made since April 1994.

**Results of Analysis**

A. Table 1 reflects the Department-wide counts of out-of-classification assignments, assuming the original 85 Project Class employees were the only employees working out-of-classification in April 1994. A total of 561 out-of-classification assignments,

3

by the "original 85" assumption, were made since April 1994. Thirteen (13) of the 561 out-of-classification assignments were made to lower classifications than the employee's then-current classification. Approximately 548 (561 - 13) assignments were made to higher classifications. Approximately 30 of the "original 85" persons continue to hold April 1994 out-of-classification assignments as of April 1997.

A comparison of the two different assumptions about the number of April 1994 out-of-classification ("OOC") workers follows:

|  | Original 85 | | | Original 85 + 340 July 11, 1997 Testimony | |
| --- | --- | --- | --- | --- | --- |
|  | New OOC Assignments | Continuing OOC Assignments | Assignments to Lower Classifications | New OOC Assignments | Continuing OOC Assignments |
| White | 470 | 30 | 11 | 397 | 114 |
| Black | 78 | 0 | 2 | 68 | 12 |
|  | 548 | 30 | 13 | 465 | 126 |

Under either assumption, the total out-of-classification assignments as of April 1997 is 591. The different assumptions about the number of April 1994 out-of-classification assignments change the number of OOC assignments calculated to have been newly made during the three-year period following the Consent Decree.

4

Following Table 1 are the supporting data of out-of-classification Project class assignments within each Departmental division or bureau.

B. Tables 2 and 3 reflect the number and locations of pro-forma reassignments required to make racially proportional the 548 out-of-classification assignments since 1994. For Table 2, I analyzed each separate classification without regard to *which* higher classification was assigned, if any.

Following Table 2 are the supporting data for that table. The support is organized by the Project classifications (Project Cost Auditors "Audit"), Highway Office Manager ("Clerk"), Highway Maintenance Technician ("HMT"), Licensed Engineers ("LE"), Non-licensed Engineers ("NLE"), and Right of Way ("ROW")). A separate supporting chart is presented for each division that employs persons in a particular Project classification. For instance, there are no Project cost auditors in divisions 1, 3, and 6. Accordingly, no separate supporting chart is included for the auditor classifications for divisions 1, 3, and 6.

C. Table 3 reflects the results of my analysis of all lower classifications potentially available to fill a higher classification assignment. "Lower classification" in Table 3 refers to any and all classifications from which a higher out-of-classification assignment could be made, limited only by the

lowest classification from which an actual higher classification assignment was made.

Following Table 3 is the supporting, organized by classification only. The presentation of the data in this form is not intended as a waiver of the Department's position that the most appropriate analysis is, first, by division, and then by classification within a division.

## Conclusions

I have drawn the following conclusions from my supplemental analyses:

1. Among the SPD Project classes, a total of 32 reassignments of duties and responsibilities to black employees and 10 reassignments to white employees would make racially proportional the out-of-classification assignments since April 1994. See Table 2.

2. Considering the Court's view of the full range of classifications from which a particular higher classification assignment could be made, a total of 56 reassignments to black employees and 2 reassignments to white employees would make racially proportional the out-of-classification assignments since April 1994. See Table 3.

3. Of the 548 out-of-classification assignments made since April 1994 among the Project class workers, 506, or approximately 92.3 percent of those assignments were racially proportional. See Table 2.

6

4. Of the 548 out-of-classification assignments made among the Project class workers, 490, or approximately 89.4 percent of those assignments were racially proportional. See Table 3.

Respectfully submitted,

*David B. Lasater*

David B. Lasater

Table 1
Analysis of Out-of-classification (OOC), In-classification (IC) Assignments
SPD Project Classes - OOC Employees Identified through Form 40's ("Original 85")
Since April 1994

| Race | (1) New OOC Assignments | (2) Continuing OOC Assignments | (3) (1+2) Total OOC Assignments | (4) Count of IC | (5) (3+4) Total | (6) (1/(5-2)) Percent OOC |
|---|---|---|---|---|---|---|
| White/Other | 470 | 30 | 500 | 1,764 | 2,264 | 21.0% |
| Black | 78 | 0 | 78 | 782 | 860 | 9.1% |
| | 548 | 30 | 578 | 2,546 | 3,124 | 17.7% |

Table 2

The Number and Locations of Pro forma
Reassignments Required to Make Racially Proportional the 548
Out-of-classification Assignments since April 1994
Analysis by Division by Classification

| Unit | Line of Progression | Classificatio | Pro forma Reassignments to Black Employees | Pro forma Reassignments to White Employees |
|---|---|---|---|---|
| Division 1 | HMT | HMT II | 1 | 0 |
|  | NLE | CE I | 0 | 1 |
|  | NLE | EA I | 1 | 0 |
|  | ROW | ROW I | 1 | 0 |
|  | ROW | ROW II | 1 | 0 |
|  |  |  | 4 | 1 |
| Division 2 | NLE | CE II | 1 | 0 |
|  |  |  | 1 | 0 |
| Division 4 | LE | GCE | 1 | 0 |
|  | NLE | EA III | 1 | 0 |
|  |  |  | 2 | 0 |
| Division 5 | HMT | HMT I | 0 | 1 |
|  | HMT | HMT III | 0 | 1 |
|  | NLE | CE I | 0 | 1 |
|  |  |  | 0 | 3 |
| Division 6 | NLE | EA III | 0 | 1 |
|  |  |  | 0 | 1 |

Table 2

The Number and Locations of Pro forma
Reassignments Required to Make Racially Proportional the 548
Out-of-classification Assignments since April 1994
Analysis by Division by Classification

| Unit | Line of Progression | Classificatio | Pro forma Reassignments to | |
|---|---|---|---|---|
| | | | Black Employees | White Employees |
| Division 7 | HMT | HMT I | 3 | 0 |
| | HMT | HMT II | 2 | 0 |
| | NLE | CE I | 1 | 0 |
| | NLE | EA II | 1 | 0 |
| | NLE | EA III | 1 | 0 |
| | | | 8 | 0 |
| Division 8 | HMT | HMT I | 1 | 0 |
| | HMT | HMT II | 2 | 0 |
| | NLE | EA I | 1 | 0 |
| | | | 4 | 0 |
| Division 9 | HMT | HMT II | 1 | 0 |
| | HMT | HMT III | 1 | 0 |
| | NLE | EA II | 1 | 0 |
| | NLE | EA III | 1 | 0 |
| | | | 4 | 0 |
| Materials & Tests | LE | GCE | 1 | 0 |
| | NLE | CE V | 1 | 0 |
| | NLE | EA I | 0 | 1 |
| | NLE | EA II | 0 | 1 |
| | NLE | EA III | 0 | 1 |
| | | | 2 | 3 |
| Transportation Planning | NLE | EA I | 1 | 0 |
| | | | 1 | 0 |

Table 2

The Number and Locations of Pro forma
Reassignments Required to Make Racially Proportional the 548
Out-of-classification Assignments since April 1994
Analysis by Division by Classification

| Unit | Line of Progression | Classificatio | Pro forma Reassignments to Black Employees | Pro forma Reassignments to White Employees |
|---|---|---|---|---|
| Design Bureau | LE | GCE | 1 | 0 |
|  | NLE | CE II | 0 | 1 |
|  | NLE | CE III | 0 | 1 |
|  | NLE | EA III | 4 | 0 |
|  |  |  | 5 | 2 |
| Right of Way | NLE | EA I | 1 | 0 |
|  |  |  | 1 | 0 |
|  |  | TOTAL | 32 | 10 |

Table 3

The Number and Locations of Pro forma
Reassignments Required to Make Racially Proportional the 548
Out-of-classification Assignments since April 1994
Working Class Analysis by Classification

| Line of Progression | Working as Higher Classification | Pro forma Reassignments to Black Employees | Pro forma Reassignments to White Employees | Current Lower Classifications |
|---|---|---|---|---|
| AUDIT | PCAU I | 0 | 0 | EA I |
|  | PCAU II | 1 | 0 | PCAU I, EA III |
| HMT | HMT II | 4 | 0 | HMT I |
|  | HMT III | 11 | 0 | HMT I, HMT II |
|  | HWY MNT SUPT | 1 | 0 | HMT II, HMT III |
| LE | GCE | 1 | 0 | EA II, EA III, PCET, CE I |
|  | GRE | 2 | 0 | GCE, CE I |
|  | PCE I | 4 | 0 | GCE, GRE |
|  | PCE II | 1 | 0 | GCE, GRE, PCE I, CE III |
|  | PCE III | 0 | 0 | PCE II |

Table 3

The Number and Locations of Pro forma
Reassignments Required to Make Racially Proportional the 548
Out-of-classification Assignments since April 1994
Working Class Analysis by Classification

| Line of Progression | Working as Higher Classification | Pro forma Reassignments to Black Employees | Pro forma Reassignments to White Employees | Current Lower Classifications |
|---|---|---|---|---|
| NLE | EA II | 4 | 0 | EA I |
|  | EA III | 4 | 0 | EA I, EA II |
|  | CE I | 8 | 0 | EA I, EA II, EA III |
|  | CE II | 2 | 0 | EA II, EA III, CE I, HMT III |
|  | CE III | 4 | 0 | EA III, CE I, CE II, GCE |
|  | CE IV | 3 | 0 | EA III, CE I, CE II, CE III, GCE, ROW SPEC III |
|  | CE V | 3 | 0 | CE I, CE II, CE III, CE IV, GCE, ROW SPEC III |
|  | CE VI | 1 | 0 | CE IV, CE V |
|  | CE VII | 0 | 0 | CE VI |
| ROW | ROW I | 0 | 0 | EA I |
|  | ROW II | 0 | 0 | ROW SPEC I |
|  | ROW III | 0 | 0 | ROW SPEC II |
|  | ROW IV | 0 | 0 | ROW SPEC III |

Table 3
The Number and Locations of Pro forma
Reassignments Required to Make Racially Proportional the 548
Out-of-classification Assignments since April 1994
Working Class Analysis by Classification

| Line of Progression | Working as Higher Classification | Pro forma Reassignments to Black Employees | Pro forma Reassignments to White Employees | Current Lower Classifications |
|---|---|---|---|---|
| OTHER | ASO I | 0 | 1 | TRANS OFF MGR |
| | MECH STCK CLK | 1 | 0 | HMT I |
| | TST I | 1 | 0 | HMT I |
| | TST II | 0 | 0 | HMT II |
| | TRNG SPEC I | 0 | 0 | EA III |
| | SAFETY | 0 | 0 | CE III |
| | EQUIP MNT SUP | 0 | 0 | CE V |
| | EEO OFF | 0 | 1 | ROW SPEC I |
| | TOTAL | 56 | 2 | |