IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


JOHNNY REYNOLDS, ET AL.,

      Plaintiffs,

                                     CIVIL ACTION NUMBER:
v.                                  CV-85-T-665-N
                                     **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

      Defendants.


# REPORT AND RECOMMENDATION
# ON THE ADAM INTERVENORS' MOTION FOR AN INTERIM
# AWARD OF ATTORNEYS' FEES AND EXPENSES

I.

      This case is before the Special Master on the Court's Order of Reference (Docket № 7740) referring the Intervenors' "Motion for an Interim Award of Attorneys' Fees and Expenses" for a Report and Recommendation. Docket № 7732. The Intervenors seek $138,477.50 in fees and $8,328.68 in expenses for the four-month period between January 1, 2005, and April 30, 2005. The Intervenors assert they are prevailing parties in this litigation, and as such are entitled to reasonable fees and expenses under the applicable fee provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k) and the Civil Rights Fee Award Act of 1976, 42 U.S.C. § 1988. The Intervenors'

motion is filed pursuant to the agreed-upon procedures set forth in the January 2005 fee agreement with the Defendants.  Docket № 7636.

In compliance with the agreed-upon procedures, the Defendants have reviewed the Intervenors' submission, paid what they do not contest, and submitted their objections to the remainder of the request.  Docket № 7738 and 7739.  Of the approximate $146,000 in fees and expenses sought by the Intervenors, the Defendants have voluntarily paid $5,261.25.  Docket № 7790 at 2.

The Defendants contest the Intervenors' status as "prevailing parties" and therefore any right to collect fees under a prevailing party standard.  Furthermore, the Defendants maintain that even if the Intervenors are a prevailing party, that the fees requested should be substantially reduced because of an alleged lack of success on the merits of the issues  litigated.  The Defendants also assert that the payment of fees is premature in many instances because the issues for which fees are sought remain unresolved by the Court.

This is the Court's first opportunity to review an application for fees since the Intervenors and the Defendants agreed to scrap their original fee agreement which was the subject of so much judicial criticism.  *See* <u>Reynolds v. McInnes</u>, 338 F.3d 1201, 1217-20 (11th Cir. 2003)(criticizing the Plaintiffs' fee agreement with the Defendants that was essentially identical to the fee agreement between the Intervenors and the Defendants).

Under the new agreement, the Intervenors and the Defendants agree "that reasonable fees and expenses . . . for work performed by the intervenors' counsel . . . shall be paid pursuant to the criteria governing [the] award of fees and expenses under 42 U.S.C. § 1988 and Title VII. . . ." Docket № 7636.

II.

A.

Whether the Intervenors are entitled to recover all or part of their requested fees and expenses turns on whether they are "prevailing parties" within the meaning of Title VII and Section 1988. In <u>Hensley v. Eckerhart</u>, the Supreme Court held that prevailing party status depends on whether the party seeking fees succeeds on "any significant issue in the litigation which achieves some of the benefit the party sought in bringing the suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). Commenting on the "significant-benefit standard" Judge Thompson has noted that it requires that at least some relief on the merits be achieved. "Once this requirement is met, [a party] has, in general, crossed the threshold to a fee-and-expense award of some kind." <u>Hall v. Lowder Realty Co., Inc.</u>, 263 F.Supp. 2d 1352, 1358 (M.D. Ala. 2003)(Thompson, J.), *see also*, <u>Wyatt v. Sawyer</u>, 67 F.Supp. 2d 1331, 1343 (M. D. Ala 1999)(Thompson, J.)("All the significant-relief standard requires is that the plaintiff receive at least some relief on the merits of his claim").

3

In the context of institutional reform litigation, the Eleventh Circuit notes that to achieve prevailing party status, a party "need only have received 'actual relief on the merits of [the party's] claim [that] materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the [party].'" Ensley Branch, NAACP v. Seibels, 31 F.3d 1548, 1583 (11th Cir. 1994) *quoting* Farrar v. Hobby, 506 U.S. 103 (1992); *see also id.*, at 1582 ("'at a minimum,' the party claiming fees 'must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant'") *quoting* Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 789 U.S. 782, 789 (1980).

There is little need to long tarry on whether the Intervenors are a prevailing party.  This case is replete with examples of the Intervenors' success on the very principles that undergird the Consent Decree.  *See generally* Docket № 7758 at 7-18 (enumeration by the Intervenors of their successful litigation efforts in this case).  It was the Intervenors who successfully challenged the race-conscious provisions of the first proposed consent decree between the Plaintiffs and the Defendants, and by that, secured a significant and lasting benefit for their class.  The appellate decisions in this case are full of examples of the Intervenors' ongoing and vigorous vindication of this right.  Moreover, the Intervenors together with the Plaintiffs successfully secured entry of the 2000 Contempt Order (Docket № 4284) which provided an agreed-to structure by

4

which the Defendants were to remove the contempt that has for so long afflicted this

case.  Finally, and perhaps most importantly, the Intervenors are parties to the Consent

Decree and the 2000 Contempt Order with standing to enforce its provisions.

*See* Docket № 6915 (discussing in general the Intervenors' standing).  The fact that the

Intervenors are actual parties to the Consent Decree and participated in its negotiation

is perhaps alone sufficient to justify a finding that they are prevailing parties.  *See*

ECOS, Inc. v. Brinegar, 671 F.Supp 381. 386-87 (M.D. N.C. 1987)("Both the court and the

. . . defendants tacitly acknowledge [the intervenors'] status as a party by allowing

[them] to sign the consent judgment.  "This implicit recognition of [the intervenors] as a

party is a sufficient basis for allowing [them] to seek attorney's fees.  If an applicant for

intervention participates in a proceeding in a manner comparable to that of a recognized

party, the applicant may be treated as a party . . . ").  The legal relationship between the

Intervenors and ALDOT has been materially altered in a fashion favorable to the

Intervenors.  The Intervenors are a prevailing party.  *Cf.*, Turner v. Orr, 785 F.2d 1498,

1503 (11th Cir, 1986)(parties prevail when they vindicate rights through a consent

judgment).

B.

Determining that the Intervenors are prevailing parties, is not, however,

tantamount to a finding that they are actually entitled to an award of fees and expenses.

5

Before the Intervenors can be awarded fees, the Court must be confident that the hours for which compensation is sought are reasonable and compensable.  It is at this stage where the court must calculate a "lodestar figure."

The lodestar is the number of hours reasonably expended multiplied by a reasonable hourly rate.  Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) *see also* Wyatt, 67 F.Supp 2d at 1345("[t]he starting point in setting any fee . . . is determining the 'lodestar figure—that is, the product of the number of hours reasonably expended to prosecute the lawsuit and [a] reasonable hourly rate . . . "). Since the Defendants and the Intervenors have previously agreed on the hourly rates to be applied (Docket № 7636), the issue to determine is the number of hours "reasonably expended" by the Intervenors in pursuit of the Consent Decree objectives.

In Wyatt v. Sawyer Judge Thompson examined the legal standards governing the payment of attorneys' fees for post-judgement work:

> In complex institutional litigation that often entails extensive remedial efforts over a long period of time, it is generally accepted that prevailing plaintiffs are entitled to post-judgment fee-and-expense awards for legal services necessary for securing compliance with, and reasonable monitoring of, the decree.  *See* Turner v. Orr, 785 F.2d 1498, 1502-1505; Adams v. Mathis, 752 F.2d 553, 554 (11th Cir.1985) (*per curiam*); Miller v. Carson, 628 F.2d 346, 348-349 (5th Cir.1980).
>
> The reasoning underlying this general notion can be viewed as two-fold. First, "[c]omplex civil rights cases seldom end with the grant of a permanent injunction." Association for Retarded Citizens of North Dakota

v. Schafer, 83 F.3d 1008, 1010 (8th Cir.1996). "The injunction must be implemented, that process must be monitored, and lingering or new disputes over interpretation of the decree must often be presented to the court for resolution. These functions take time and effort by the prevailing party's attorney." *Id.* Second, the nature of the relationship between the plaintiff and the defendant, after a judgment in plaintiff's favor, changes, or should change, dramatically. For pre-judgment fees and expenses, the plaintiff and the defendant have divergent goals, and each is viewed as having lost or won depending upon in whose favor the court has found. By contrast, after a judgment in the plaintiff's favor, the plaintiff and the defendant have an essentially common goal: compliance with the judgment. Thus, in the post-judgment years, both the plaintiff and the defendant prevail when the defendant reaches full compliance: the plaintiff prevails because he has obtained the relief he sought, and the defendant prevails because it can now be released from the judgment.

In line with this approach, when a plaintiff engages in activity other than monitoring--for example, when he seeks some affirmative additional relief or opposes later efforts of the defendant to set aside the judgment--it is not necessary that the plaintiff succeed in full, that is, that he prevail on a specific issue in order to recover the fees and expenses connected with that issue. The fees and expenses "incurred in [the plaintiff's] post-judgment efforts at monitoring and enforcement are properly payable by the defendants as those of a 'prevailing party' whether or not [the plaintiff] prevails in each individual post-judgment effort because these 'measures necessary to enforce the remedy ordered by the [district] court cannot be severed from the matters upon which the plaintiff prevailed' in obtaining the judgment." Turner, 785 F.2d at 1504 (*quoting* Adams, 752 F.2d at 554). Or, as the former Fifth Circuit Court of Appeals put it, "[b]ecause issues may at times be reasonably related," the district court in assessing post-judgment work must resist the temptation to "always sever an attorney's work into 'issue parcels' and then assess that work for purposes of a fee award in terms of the outcome of each issue standing alone." Miller, 628 F.2d at 348.

Nevertheless, the mere fact that efforts are post-judgment does not mean that they are compensable. First, "when 'claims distinctly different from the underlying lawsuit' arise after resolution of the main civil rights issues,

7

plaintiffs must prevail on these unrelated claims to be entitled to a fee award of the post-judgment work." <u>Schafer</u>, 83 F.3d at 1011 (*quoting* <u>Willie M. v. Hunt</u>, 732 F.2d 383, 386 (4th Cir.1984)). Second, even if the post-judgment work is solely in pursuit of compliance with the judgment, the work must still "be reasonable and necessary," <u>Schafer</u>, 83 F.3d at 1011, as measured by the standard articulated in <u>Hensley v. Eckerhart</u> "that requires balancing the amount of effort against plaintiffs' overall success." <u>Schafer</u>, 83 F.3d at 1011.

<u>Wyatt</u>, 67 F. Supp.2d at 1344-45.

The law quite clearly does not guarantee the payment of attorneys' fees after the resolution of every dispute and every issue involving compliance with the Consent Decree. It is simply not enough to be a "prevailing party." If the work undertaken for which fees are sought cannot be said to "be reasonable and necessary," then, the balancing required by <u>Hensley</u> suggests that fees not be awarded for such activities. According to the Defendants, the requirement that the work be "reasonable and necessary" before post-judgment fees can be awarded requires an assessment of the degree of success achieved by the Intervenors. Only after assessing the Intervenors' degree of success can the Court decide whether the Intervenors are entitled to post-judgment fees, and if so, the amount of the fees. This is the Defendants' fundamental argument. *See* Docket № 7764 at 5. ("Intervenors and ALDOT have a fundamental disagreement over whether the Court should consider the degree of success in determining the amount of fees to which the Intervenors are entitled. "The Court's resolution of this question impacts not only the amount of fees owed but also whether

8

fees for certain services are due now or should be deferred for determination at a later date").

Citing <u>Turner v. Orr</u>, the Intervenors assert that "post-judgment efforts at monitoring and enforcement are properly payable by the defendants as those of a 'prevailing party' whether or not [the prevailing party] prevails in each individual post-judgment effort because these 'measures necessary to enforce the remedy ordered by the district court cannot be severed from the matters upon which the [party] prevailed' in obtaining the judgment." Docket № 7758 at 2-3 (brackets in original). The Intervenors' reading of the law that the courts should not engage in "issue parceling" when considering a petition for post-judgment fees is correct.

The prohibition against issue parceling does not, however, negate the well-established requirement that a party's degree of success be considered when awarding fees. *See* <u>Hensley,</u> 461 U.S. at 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. . . . "[W]here the plaintiff achieved only a limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained").

The degree of success is an important factor in deciding the appropriate amount of post-judgment fees to award. Requiring an assessment of the degree of success is

not tantamount to requiring a party to "prevail" on each post-judgment issue standing alone.  It is a measure by which the Court can determine whether the fee requested is appropriate, and it operates with the "reasonable and necessary" standard to produce a framework for analyzing fee requests after the determination of prevailing party status.[1]


## C.

### 1.

In assessing the Intervenors fee request, the Defendants have separated into discreet groupings the hours for which the Intervenors seek payment.  The groupings reflect ALDOT's categorization of the Intervenors' billings based on ALDOT's assessment of the time submitted.  The ALDOT categories are: Compensable; Non-compensable; Services on Issues Not Yet Resolved; Compensable at a Reduced Rate;

---

[1] Recognizing the important principle that is embodied in requirement that fee petitions be analyzed with an eye on the degree of success obtained, Justice Powell writing for the Hensley court noted the following:

> Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

Hensley v. Eckerhart, 461 U.S. 224, 436 (1983).

Possibly Compensable at a Reduced Rate; and Michael Cooper Entries.   Docket №

7791 at 1-2.

The Intervenors' time is submitted in block descriptions.  Accordingly, all of the

work done in a single day is described in a single statement and the aggregate time for

all the day's activities, by individual attorney is then posted.  To allocated the

Intervenors' time among its various categories, ALDOT made certain assumptions

about how much time should be apportioned to one category or another.  These

assumptions have been made in good faith, but because the Intervenors have not

tested the Defendants' assumptions, the allocation of time among the categories is not

definitive.  Nevertheless, the Defendants' work is helpful because it provides a division

of time—albeit preliminary—between those services the Defendants believe are fully

compensable and those services that they believe are either not compensable, not

compensable at this time, or compensable but at a reduced rate.

2

i.

The only work that the Defendants concede is fully compensable at the rates

previously agreed to[2] is that work spent preparing for and attending the monthly status

---

[2]   The Intervenors and the Defendants have previously agreed to the
following hourly rates for compensable services in this case: Mr. Fitzpatrick, $215 an
hour; Mr. Cooper, $175 an hour; Mr. Clark, $175 an hour; and Mr. Brown, $115 an
(continued...)

conferences set by the Court and preparation of the Joint Quarterly Testing Schedule.

Docket Nº 7790 at 2.  Of the total 802.50 hours of counsel time reported by the

Intervenors, less than 31 hours—30.04 to be exact—are included in ALDOT's category

"Compensable."  Docket Nº 7791 at Exhibit 1.

ii.

Since much of the Intervenors' work relates to issues that are not yet resolved

by the Court, the Defendants argue that no fees should be paid for such work because

it is impossible to gauge the degree of success until there is a final resolution.  Docket

Nº 7790 at 2.  Within this category, termed "Services on Issues Not Yet Resolved," the

Defendants include the following activities:  (1) Work on Article I—recruitment; (2)

Work on Articles II and III—sanctions, fine suspension and contempt; (3)Work on

Article VII; (4) Work on Article VIII—interview/mediation; (5) Work on Article XIV; (6)

Work on Article XV —O/C assignments; (7) Work on Article XVI; (8) Work on Article

XIX—non-grievance; (9) Work on compliance issues; (10) Hiring claim issues/groups I

and II; (11) <u>Freeman</u> Motion to terminate the Consent Decree; and (12) Preparation and

attendance at conferences before Special Master—as it relates to the above issues.  *Id.*

---

[2](...continued)
hour.  It was also agreed that paralegal time would be compensable at $50 an hour.
Docket Nº 7636.  These rates have been in place for a number of years without
adjustment, and according to Mr. Fitzpatrick are well below market rates in Alabama
for lawyers of similar skill and experience.  *See* Mr. Fitzpatrick's Affidavit at ¶ 6,
attached to Docket Nº 7758.

12

at 2-3.  As calculated by ALDOT, 253.80 hours should not be compensated at this time.
Docket № 7791 Exhibit 3.

Other than describing certain time entries of the Intervenors as reflecting
"services on issues not yet resolved" (Docket № 7790 at 2) or as "non-ripe matters"
(Docket № 7738 at 2)(same issues) the Defendants have not explained in any
meaningful manner the status of the issues so categorized.  They simply assert that
"[t]he determination of the amount of fees, if any, which the Intervenors may be entitled
to recover for their services on these issues must await final resolution of the issues so
that this Court can consider the 'most critical factor' of 'the degree of success that the
party obtained.'" Docket № 7738 at 3.

The problem with so broad and unspecific a statement is that in some instances
the Special Master is left to speculate about what the underlying issues are that remain
undecided and how they relate to the pending fee petition.   There is simply no
discussion of the issues.

(a)

The Intervenors clearly prevailed when they, together with the other parties
negotiated, and the Court entered the 2000 Contempt Order.  Docket № 4284
*republished in* <u>Reynolds v. ALDOT</u>, 84 F.Supp 2d. 1339 (N.D. Ala. 2000).  That order
specifically found the Defendants in civil contempt of the Consent Decree and set out a

schedule by which the Defendants were to "demonstrate full compliance with each article of [the Consent Decree]." Reynolds, 84 F. Supp. at 1342. The Contempt Order also requires the Defendants, the Intervenors, and the Plaintiffs, to take specific actions before the Defendants can be found in compliance with any article of the Consent Decree. *Id.*, at 1345.

Under the provisions of the Contempt Order, the Defendants, when seeking to purge their contempt, are required to first request of the Plaintiffs and the Intervenors a stipulation that the Defendants are in fact in compliance with a given article of the Consent Decree. *Id.* In support of their request for a stipulation of compliance, the Defendants are required to include a detailed report demonstrating full compliance. The report is to include "appropriate documentation." The Plaintiffs and the Intervenors are then required to respond to the Defendants' request for stipulation and to stipulate if they agree that the Defendants have achieved compliance with the decree article. If in the opinion of either the Plaintiffs or the Intervenors, the Defendants are not in compliance, they are required to promptly send the Defendants a written statement specifically identifying why in their opinion the Defendants are not in compliance. If the parties still can not agree on whether the Defendants are in compliance, the Contempt Order requires that the issue be submitted to a mediator and only after the mediation can the Defendants move the Court for a finding of compliance. This process

has been in place since 2000.          During the period covered by the current fee petition, the Defendants sent several requests for stipulations of compliance to the Intervenors'. In particular, the Defendants have requested the Intervenors to stipulate compliance for the following Consent Decree Articles: I, VII, IX, and XIII.  Docket № 7758 at 42.  The Defendants' stipulation requests automatically triggers the Court-ordered activities outlined above.  Those activities are by definition reasonable and necessary and directly related to the results obtained in securing the Contempt Order in the first instance. The law clearly requires that parties comply with a court's orders and activity in compliance with court orders is compensable.  *See* Sierra Club v. Hankinson, 351 F.3d 1358, 1364 (11th Cir. 2003)("[w]e are guided by the Supreme Court's observation that 'measures necessary to enforce the remedy ordered by the District Court cannot be divorced from the matters upon which [plaintiffs] prevail in securing the consent decree").


It is recommended that the Court find the time spent by the Intervenors on activities required by the Contempt Order is reasonable and necessary and fully compensable at the rates previously agreed to by the Defendants.  In other words, all work undertaken by the Intervenors from the review of the Defendants' request for a stipulation of compliance through and including the required mediation should be paid.

15

(b)

It is recommended that the time the Intervenors spend preparing for and

attending conferences with the Special Master be compensable at the rates previously

agreed to by the Defendants.  The Intervenors' attendance at conferences is required

and is certainly reasonable and necessary.  Counsel for the Intervenors are always well

prepared and their involvement is essential to the Special Master's understanding of

the issues before him.  In attending conferences with the Special Master, the

Intervenors, and all counsel, are acting in compliance with a court official's directive, as

such, the time should be compensable.[3]

(c)

The Intervenors seek payment for work done with regard to the Defendants'

Article VIII, XIV, and XIX compliance motions.  These, and other, compliance motions

are pending before the Court.  While the Contempt Order permits the filing of

compliance motions, Reynolds, 84 F. Supp. 2d at 1342, it does not require it, nor does it

set out a procedure to be followed once those motions are filed.  Therefore it is

recommended that payment for time spent by the Intervenors in opposing the

Defendants' compliance motions be held in abeyance until the Court rules on the

---

[3]   The Defendants have conceded that attendance by the Intervenors at the
Court's monthly status conference is a fully compensable activity.  Docket № 7790 at
2.

16

pending motions.  Only then can the Court make an assessment of the Intervenors'

degree of success, if any, in opposing the Defendants' motions.  The work to be

excluded from the current fee petition is the work occurring after the Court-required

mediation.  It is further recommended that the Intervenors review their current fee

submission and indicate those time entries reflecting the work which should not be

considered for payment at this time. The Intervenors should share the product of their

review with the Defendants.  If the Defendants and the Intervenors cannot agree on the

appropriate entries to be excluded from the current fee petition, the issue should be

submitted to the Special Master for resolution.

(d)

The payment of fees related to the Intervenors' work on the Defendants'

Freeman motion, (Docket № 7730) is premature since the Court has yet to act on the

motion and cannot therefore weigh the degree of success the Intervenors may have in

opposing the Defendants' motion.  It is recommended that payment for time spent

responding to the Freeman motion be held in abeyance.  It is further recommended that

the Intervenors review their current fee petition and indicate those time entries

reflecting work on the Freeman motion that should not be considered for payment at

this time. The Intervenors should share the product of that review with the Defendants.

If the Defendants and the Intervenors cannot agree on the appropriate entries to be

17

excluded from the current fee petition, the issue should be submitted to the Special

Master for resolution.

(e)

The Defendants object to paying for work done by the Intervenors in opposing

the Defendants' motion to terminate Article II and III contempt fines. On March 4, 2005,

the Special Master recommended that the Court return to the Defendants the contempt

fines previously paid by the Defendants on Articles II and III.  Docket № 7694.  The

Intervenors objected to the recommendation, (Docket № 7705) and those objections are

now pending before the Court.

According to the Intervenors, because the contempt-sanction provisions of the

Contempt Order directly relates to the Defendants' compliance with the validation

provisions of the Consent Decree, the work done in opposing the defendants motion

for termination and refund "were necessary to preserve and enforce the central

validation-related provisions of the decree and the Contempt Order."  Docket № 7758 at

34.  The Intervenors may very well be right, but as regards the possible award of fees,

determining the interplay between the reasonableness and necessity of the Intervenors'

actions and the ultimate outcome of their objection is not yet possible.

It is recommended that payment for time spent responding to the Defendants

motion to terminate and return Article II and III contempt fines (Docket № 7405) be held

in abeyance.  It is further recommended that the Intervenors review their current fee

petition and indicate those time entries reflecting work on the motion. The Intervenors

should share the product of that review with the Defendants.  If the Defendants and the

Intervenors cannot agree on the appropriate entries to be excluded from the current fee

petition, the issue should be submitted to the Special Master for resolution.

iii.

The Defendants categorize 163.22 hours as "non-compensable" (Docket № 7791

at Exhibit 2), arguing that the Intervenors should not receive fees for work on issues

that have "no direct impact upon their clients or on which they have no approval rights

. . . ." Docket № 7790 at 3.  The Defendants identify and explain those issues as

follows:

(a)

> Work on Article II (MQs, testing, experts). Intervenors do
> not have approval rights on the MQ, etc. issues and have
> been furnished documents on these matters as a courtesy at
> their request. *Id.,* at 3.

Article II of the Consent Decree requires the development and use of validated

minimum qualifications ("MQ") for testing and employment.  The use of validated MQs

is central to achieving the goal of the Consent Decree which is the establishment of

race-neutral hiring practices.  The Intervenors have a specific and consistently

19

recognized interest in securing the use of race-neutral employment practices at ALDOT.

Validated minium qualifications and examinations assures that the Defendants are in

fact complying with the race-neutral employment requirements of the Consent Decree.

The Intervenors' time spent working on MQs and testing validation issues is

reasonable and necessary to the effective monitoring and enforcement of the race-

neutral employment practice which the Consent Decree guarantees the Intervenors.

Moreover, by ensuring that MQ and testing validation efforts comply with the race-

neutral employment provisions of the Consent Decree, the Intervenors have achieved a

complete vindication of their clients' interests, *i.e.,* they have achieved a very

considerable degree of success.   It is recommended that all the work on Article II MQ

and testing validation efforts be fully compensable at the agreed-upon rates.


(b)

> Work on Article IV.  No specific action is required under this
> Article and Intervenors should not be paid for doing any
> work in connection with it.  Docket № 7790  at 3.

The only entry noted by the Defendants' in the category denominated "non-

compensable" and relating to Article IV appears to be the following entry by Mr.

Fitzpatrick dated 1/3/05: "Review findings including motion to suspend fines; referral

orders, etc., conference with [Mr. Clark] re review of courts findings on Articles 2,3,4."

For these activities, Mr. Fitzpatrick reports a total time of 1.50 hours.  Docket № 7791

Exhibit 2.

A fair reading of the description prepared by Mr. Fitzpatrick does not reflect that

he engaged in independent work on Article IV issues, but that he "reviewed" the courts

findings on several Consent Decree articles, of which Article IV was but one.  Time

spent reviewing the Court's orders or findings is always compensable.

If there are time entries that relate specifically to activity under Article IV other

than the one set out above, the Defendants should note those entries, and submit them

to the Special Master for review, or resolve the issue directly with the Intervenors.  It is

recommended that Mr. Fitzpatrick's time described above be paid.

(c)

> Work on Article XIX (grievance/complaint procedure). To
> the extent the time billed relates to individual grievance
> claims, ALDOT has previously advised Intervenors that
> these services are not compensable. Intervenors have
> acknowledged in their cover letter accompanying their
> billing that they have not included time for individual
> grievances and they have purportedly reserved the right to
> seek recovery of these fees via a separate proceeding. Yet,
> the time entries appear to include work involving individual
> grievance claims and thus no payment is owed.  Docket №
> 7790 at 3.

The Defendants have long objected to the payment of any fees related to the

Intervenors' work on Article XIX grievances.  And for just as long, the Intervenors

21

have reserved their right to at some future date seek the Court's guidance on whether they are entitled to such fees from ALDOT.  That issue is not before the Court, and until the matter is resolved, the Intervenors have agreed to forego the collection of Article XIX grievance fees.  To the extent the current fee petition, (Docket № 7732) contains hours related to grievance claims, those hours should be held in abeyance and not compensated at this time.  It is recommended that the Intervenors review the current fee petition and remove any time related to the grievance claims.  Counsel for the Intervenors should confer with counsel for the Defendants to ensure that no hours reflecting grievance claim work are being submitted for compensation with the current fee petition

(d)

Recoupment of paralegal services for work described in the
billing entries of a clerical nature.   Docket № 7791 at 3.

The 24 hours of paralegal time recorded in the current fee petition relates to services which are of a clerical nature—filing, updating pleading notebooks, etc.—and as such are not compensable under 42 U.S.C. § 1988.  *See* Hall v. Lowder Realty Co., Inc., 263 F.Supp. 1352, 1364-65 (M.D. Ala. 2003)(Thompson, J.).  It is recommended that ALDOT not be required to pay for the 24 hours of paralegal time recorded in the current fee petition.

(e)

22

> Services involving global settlement discussions initiated by
> Plaintiffs and Intervenors which were unproductive, services
> involving Intervenors' review of matters relating to the fee dispute
> between ALDOT and the Plaintiffs, services relating to unite
> weighting which was an issue between the Defendants and the
> Plaintiffs, and services involving discussions with class members
> on the new fee arrangement.  Docket № 7790 at 4.

There appears to be 1.5 hours recorded by Mr. Clark on March 22, 2005, related to work on settlement issues.  *See* Docket № 7791 Exhibit 2.  It is recommended that this time be paid as appropriate and reasonable.  Over the years, the parties have settled many issues.  A settlement reached by the parties is more often than not better than a resolution imposed by the Court.  Settlement efforts are a necessary and essential component in a complex case of this nature.

It is unclear which of the Intervenors' entries the Defendants believe reflect time related to the review of materials involving the Plaintiffs' fee dispute with the Defendants.  If any time has been spent by the Intervenors reviewing the Plaintiffs' fee dispute with the Defendants, that time is not reasonable and necessary to the Intervenors' monitoring and enforcement of the Consent Decree.  As such, it should not be compensated.

The Defendants should point out to the Intervenors those time entries which the Defendants believe reflect a "review of matters relating to the fee dispute between

ALDOT and the Plaintiffs." If the Intervenors and the Defendants cannot agree, the matter should be submitted to the Special Master for resolution.

It is recommended that the time spent informing the Intervenors' class representatives about their counsels' new fee agreement with the Defendants is compensable as a reasonable and necessary activity. The Intervenors' class representatives are entitled to know and understand how their counsel are to be compensated, particularly given the considerable agitation of the Eleventh Circuit about the prior fee agreements in this case. Keeping clients informed of important developments is not only smart but is ethically required.

(f)

> Expenses of the Intervenors' expert. From the description contained in the bills from the expert, the expert's services related to review of issues on which Intervenors have no input, such as approval of MQs. Moreover, the expert has not testified during the course of these proceedings and there is no evidence that he has provided any services of assistance to the Court in reaching its decision. Under these circumstances, ALDOT should not have to bear his fees. Docket № 7790 at 4.

Section 1988 and Title VII provide for the payment of expert fees. 41 U.S.C. § 1988(c); 42 U.S.C. § 2000e-5(k). It has already been determined that the validation provisions of the Consent Decree are central to securing for the Intervenors the full

benefits of a race-neutral employment-selection regime at ALDOT.  The development of valid MQs and testing procedures involves highly technical determinations under the Uniform Guidelines for Employee Selection Procedures.  *See* Docket № 6537 at *et seq.* (discussing MQ development procedures).  The development of valid selection procedures can only be accomplished with the consultation of experts, and so it stands to reason that the review of such procedures depends on the assistance of experts as well.  It is therefore recommended that the expenses of the Intervenors' expert contained in the current fee petition be paid by ALDOT.  These expenses are reasonable and necessary to the monitoring and enforcement of the Consent Decree.

iv.

Under the category "Compensable at a Reduced Rate," the Defendants list the time they believe was spent in connection with positions advocated by the Intervenors in which they only partially succeeded. The Defendants point to the Intervenors' negotiation of their current fee agreement with the Defendants, and to their work in connection with the preparation of the proposed order following the December 2004 hearings. Docket № 7790 at 4. As to the 48.58 hours in this category, (Docket № 7791 at Exhibit 4), the Defendants believe that the loadstar should be adjusted downward to reflect the Intervenors' "limited success." Docket № 7738 at 5.

(a)

The Defendants suggest that the Intervenors only partially succeeded when they negotiated the current fee agreement with the Defendants in January 2005. Docket № 7636. Prior to the January 2005 fee agreement, the Defendants had sought to modify Paragraph 41 of the Contempt Order which provided for the payment of attorneys' fees in this case. Docket № 7470. While the Defendants' motion to modify the original fee agreement was filed in October 2004, they had, however, not paid any of the Intervenors' fee invoices since August 2004. *See* Docket № 7624 at 3 (R&R, later vacated as moot). In response to the Defendants' motion to modify Paragraph 41 of the Contempt Order, the Intervenors filed a motion for contempt enforcement of Paragraph

41. Docket Nº 7478.  An R&R was issued on the Intervenors' motion and the Special

Master recommended, in part, that the Defendants be found in contempt of Paragraph

41. Docket Nº 7624.  Thereafter, the Defendants and the Intervenors successfully

negotiated the January 2005 fee agreement.  Docket Nº 7636.

The January 2005 fee agreement provided for the payment of all past due fees

through December 31, 2004, but required that all future fee petitions filed by the

Intervenors be governed by the requirements of 42 U.S.C. § 1988 and Title VII of the

1964 Civil Rights Act.  The current fee petition is the first request for fees submitted

under the new fee agreement.

It can hardly be disputed that the Intervenors obtained a significant concession

from the Defendants—payment of all past due fees—as a result of their negotiations.

By any measure the Intervenors substantially prevailed in their discussions with the

Defendants.  It is recommended that the Intervenors be fully compensated at the

agreed-to rates for time spent negotiating the fee agreement with the Defendants.

(b)

The Defendants seek a reduction to the loadstar calculation for work done

relating to the Court's December order extending the Consent Decree.  Docket Nº 7667.

As explained by the Intervenors, the events leading up to the Court's order are as

follows:

27

At the conclusion of the December decree-extension hearing, the Court directed the parties to jointly submit a proposed order reflecting the Court's rulings. *See* Docket Nº. no. 7600. The defendants then forwarded a draft of a proposed order to the parties, and the intervenors indicated their agreement with a good number of provisions in that order. The defendants, however, were not willing to jointly submit to the Court even the agreed-to provisions of the proposed order, which required the parties to submit separate proposed orders. Ultimately, the Court heard oral argument on the competing proposed orders, and adopted and signed the proposed order submitted by the intervenors and the plaintiffs. *See* Docket Nº. no. 7667.  . . . [I]n the intervenors' extension motion, the intervenors had sought extension of a limited number of articles of the decree. The Court's extension order ultimately granted the intervenors' motion as to each of those decree articles for at least six months (as opposed to the two years requested by the intervenors in their motion).

Docket Nº 7758 at 38.

Obviously, the Intervenors succeeded in their effort to extend certain articles of

the Consent Decree.  The issue is whether the loadstar should be reduced to account

for the limited success when measured against the Intervenors' original objective.

Applying the principles embodied in Hensley v. Eckerhart and the instruction of Judge

Thompson in Wyatt v. Sawyer, that the degree of a party's success be considered in

making an award of fees, it is recommended, that the Intervenors' fees for work on the

Court's December order extending the Consent Decree be reduced by 5 percent (5%).

This recommended percentage reduction reflects the limited success of the Intervenors.

No more than a 5 percent reduction is recommended because the success of the

Intervenors in securing the Consent Decree extension was substantial, and because the

agreed-to hourly rates for counsel are already discounted against rates for similarly

situated counsel in the Middle District of Alabama.  *See* <u>Hall v. Lowder Realty Co</u>., 263

F. Supp. 2d 1352 (M.D. Ala. 2003)(Thompson, J.)(Discussing customary fees in 2003 for

attorneys in civil rights cases).


         It is further recommended that the Intervenors review their current fee petition

and indicate those time entries reflecting work relating to the Court's December Order.

The Intervenors should share the product of that review with the Defendants.  If the

Defendants and the Intervenors cannot agree on the appropriate entries to be excluded

from the current fee petition, the issue should be submitted to the Special Master for

resolution. The recommended reduction should be applied against the loadstar for this

activity.

                                          v.

         In the category "Possibly Compensable at a Reduced Rate" the Defendants

include fees relating to monitoring services, review of monthly reports, and work on

Article XIII.  With respect to monitoring, ALDOT believes that the day-to-day

monitoring by the Intervenors is unnecessary and that the Intervenors should not be

paid for monitoring services on issues or matters not involving them.  Nor does ALDOT

believe that the Intervenors should be compensated for reviewing monthly reports and performing services on Article XIII. Docket № 7790 at 4-5. To the extent that the Intervenors are to be awarded fees for these activities, ALDOT contends there should be a reduction in the loadstar within this category. The Defendants calculate that there are 30.11 hours in this category. Docket № 7791 at Exhibit 5.

It is recommended that the hours spent monitoring the Defendants' compliance with the provisions of the Consent Decree and the Contempt Order be fully compensated at the agreed to rates. The Consent Decree and the Contempt Order are very complex and interrelated documents with a host of specific and detailed requirements that must be implemented. That alone demands constant oversight and assessment. In <u>Knight v. State of Alabama</u>, (Civ. Action Number: 83-M-1676)(N.D. Ala), the Court has now for many years routinely, and without objection, approved attorneys' fees for monitoring work. Without question monitoring the terms of a consent decree is important and compensable work. *Wyatt*, 67 F. Supp. 2d at 1344.

vi.

The Defendants challenge in their entirety all of the hours submitted by one of the Intervenors' counsel, Michael Cooper, on the basis that Mr. Cooper's description of services is insufficient to determine whether the services are compensable or not.

Docket № 7790 at 5.  Mr. Cooper is seeking compensation for 272.5 hours for services rendered between January 1, 2005 and April 30, 2005.  Docket № 7791 at Exhibit 6.

The Special Master has reviewed the time submission of Mr. Cooper.  In the opinion of the Special Master, the time entries used by Mr. Cooper are not so different from those used by the Intervenors' other counsel to warrant the general objection to all of Mr. Coopers' time entries.  "[C]ounsel . . . is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  Hensley, 461 U.S. at 437 n 12.

It is recommended that Mr. Cooper review his time entries and adjust those entries consistent with the recommendations contained herein.  Mr. Cooper should share the product of that review with the Defendants.  If the Defendants and Mr. Cooper cannot agree on the appropriate entries to be excluded from the current fee petition, the issue should be submitted to the Special Master for resolution.

vii.

The Defendants object in general to the expenses of the Intervenors relating to copying charges, phone charges, postage, etc.  Docket № 7738 at 7.  The objections are premised on the alleged insufficiency with which they are recorded.  In total, exclusive of expert consultant fees, the Intervenors seek $1,804 in expenses for the four-month

period covered by the current fee petition. *See* Docket № 7758 Exhibit 6 to Mr. Clark's Affidavit. The majority of the expenses, $975.07 are for copies related to this case.

In support of their claim for copy expenses, counsel have submitted the affidavit of Stacy Woodcock, the person at the Intervenors' firm responsible for making internal copies and coordinating external copies with the firm's outside copy service. *See* Docket № 7758 to which Ms. Woodcock's Affidavit is attached. Ms. Woodcock describes the process used at the firm for making copies and assuring that they are charged to the correct account. The process is very similar to that described in <u>Lambert v. Fulton County, Georgia</u>, 151 F.Supp. 2d 1364, 1376 (N.D. GA. 2000)(allowing expenses such as copying, postage, long distance, telephone, etc.). It is recommended that the Intervenors recover their copy costs and other expenses set forth in their current fee petition. These expenses were appropriately recorded, and are reasonable in relationship to the complexities of this case.

### III.

**ACCORDINGLY**, it is recommended that the Intervenors' "Motion for an Interim Award of Attorneys' Fees and Expenses" (Docket № 7732) be GRANTED IN PART and DENIED IN PART. It is further recommended that if the Court adopts this Report and Recommendation, that the Intervenors and the Defendants review the current fee petition consistent with the findings and procedures set forth above in Sections

II(C)(2)(i)-(vii), and that fees and expenses be paid to the Intervenors in amounts authorized by this Report and Recommendation.

Objections to this Report and Recommendation must be filed with the Clerk of Court by 4:00 p.m. on August 22, 2005. Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 1st day of August 2005.


/s/ C. A. González
SPECIAL MASTER