IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

CIVIL ACTION NUMBER
CV-85-T-665-MHT
**Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

## REPORT AND RECOMMENDATION

I

By order of reference, this case is again before the Special Master on the Defendants' Motion for a Finding of Compliance with Article XIX. Docket № 7457. Because of earlier discussions, the parties were able to narrow the remaining issues regarding the Defendants' compliance with Article XIX to two. The first issue relates to the use of the grievance procedures established pursuant to paragraph seven of Article XIX. In particular, the issue is whether the agreed-to grievance procedures are available to ALDOT employees who allege that the State Personnel Department ("SPD") is guilty of discriminatory acts or of Consent Decree violations. The second issue relates to paragraph four of Article XIX. This paragraph imposes quarterly reporting requirements on both ALDOT and the SPD related to their efforts to comply with the requirements of

the Consent Decree. The exact nature of the required reports is set forth in the 1996 document entitled "Joint Submission of Reporting Appendix to Consent Decree I." (Hereinafter "Joint Reporting Appendix"). Docket № 937. The Plaintiffs complain that the Defendants are not provided all the information required by the Joint Reporting Appendix and thus are not yet in compliance with Article XIX, ¶ 4.

II

A

Article XIX, ¶ 7 provides that:

> Within 180 days of the effective date of this Decree, [ALDOT] will develop and implement an enhanced complaint procedure which assures that all discrimination complaints are processed without fear and reprisal within established time limits and that appropriate action is taken following decisions. Such procedure will be submitted to plaintiffs' counsel for review and comment at least 30 days prior to its implementation.

Pursuant to the requirements of Article XIX, ¶ 7, ALDOT prepared and submitted to the Plaintiffs and Intervenors a proposed complaint procedure designated as the "Revised Complaint Procedure" ("RCP"). Docket № 706. On August 9, 1995, the Court approved the RCP, made it part of the Consent Decree, and "enjoined and restrained" ALDOT from failing to comply with its requirements. Docket № 707. Since 2001, when ALDOT began using the permanent selection procedures developed according to the requirements of the Consent Decree, it has "received <u>a small number</u> of grievances from employees

complaining about examination content, scores, register ranking and other areas of the permanent selection procedures implemented by the [SPD]." Docket № 7993, Exhibit A, Affidavit of Sandi Dietz,(emphasis added). ALDOT does not process claims through the RCP that complain about SPD activity. *Id.*

In 2000, the Eleventh Circuit Court of Appeals described the Article XIX grievance procedure as follows:

> The [RCP] is race-neutral. It opens by stating that "[t]he Consent Decree and Departmental policy mandate that all employees enjoy a work-place free from discrimination." The procedure allows a grievance to be filed for any "alleged wrong based upon the employee's race, color, creed, sex, national origin, age, or handicap." Moreover, it allows grievances for "a violation of the Consent Decree, or arising from matters that are the subject of the Consent Decree."[1] . . .
>
> The grievance procedure consists of four steps. In step one, a grievance is submitted to an employee's immediate supervisor. The supervisor responds in writing with a proposed resolution, which may or may not be accepted by the grievant. If the grievance cannot be resolved, it is submitted in step two to the Department's appointed Equal Employment Opportunity Monitor, who also proposes a solution. If the grievant finds the solution unacceptable, the process moves to step three. Step three is a formal

---

[1] The RCP defines a grievance as:

> [A]n alleged wrong based upon the employee's race, color, creed, sex, national origin, age, or handicap. Any matter concerning allegations of discrimination or a violation of the Consent Decree or arising from or concerning matters that are the subject of the Consent Decree, will be admitted for adjustment. Complaints not involving allegations of discrimination or matters that are the subject of the Consent Decree shall not be adjusted under this Rule.

Docket № 706 at 2 (footnote added).

3

> hearing within the Department, conducted by the Department's "Hearing Officer."  If the matter is still not resolved, then, at step four, either party may seek arbitration before "an external arbitrator . . . selected from a panel of Seven (7) arbitrators, with Three (3) of such panel members to be designated by class counsel, Three (3) to be designated by the Department, and One (1) to be designated by agreement among the other Six." An employee with a grievance is not required to invoke the Revised Complaint Procedure;  as the procedure states, an employee may file an "administrative charge or separate legal action" instead.

*Reynolds v. Roberts*, 207 F.3d 1288, 1294-95 (11th Cir. 2000)(footnotes omitted).

B

ALDOT's decision not to process grievances alleging improper SPD activity is based on ALDOT's belief that "Article XIX imposes a grievance requirement on ALDOT alone" and that "nothing in the Consent Decree, or the RCP . . . requires SPD to follow the Revised Complaint Procedure or any other grievance procedure."  Docket № 7993 at 2.  In short, according to the Defendants, the only party required to implement the RCP is ALDOT.  In support of their position the Defendants note that the RCP is signed by only ALDOT, that the RCP does not mention the SPD by name, that ALDOT and the SPD are distinct State agencies with distinct missions, and that ALDOT has no authority under either the Consent Decree, the RCP, or State law to compel SPD to take any action or to provide ALDOT employees any relief for wrongful acts of the SPD.  Docket № 8024 at 2-6, and Docket № 7993 1-3.  Moreover, since the Step I and Step II of the RCP both involve ALDOT employees investigating the grievance, providing any relief for an ALDOT employee complaining about SPD actions would be impossible for ALDOT because ALDOT has no authority to investigate or order relief against the SPD.  *Id*. at 3.

The Consent Decree expressly prohibits ALDOT from any involvement in SPD's development and use of examinations except to the extent ALDOT employees may serve as subject matter experts. *See* Consent Decree, Article III, ¶ 11 ("Except to the extent that service ratings are a component of the examination, all examinations shall be administered by [SPD] without the involvement of [ALDOT], including the scoring, ranking, evaluating, grading or assessing of applicants; . . . provided further that nothing contained in this [Consent Decree] will preclude or limit the use by [SPD] of [ALDOT] employees as 'subject matter experts' in a validation project").

## C

Not surprisingly, the Plaintiffs and the Intervenors believe the Defendants' refusal to process grievances against the SPD violates the Revised Complaint Procedure and Article XIX. Relying on the definition of a grievance in the RCP[2], the Intervenors and Plaintiffs assert that the RCP "clearly permits grievances for 'any matter concerning allegations of discrimination or violation of the Consent Decree . . . '" Docket № 8022 at 2 (Intervenors) and Docket № 8026 at 3 (Plaintiffs)("[T]he provision defining a . . . grievance does not exclude SPD from being the subject of a grievance, but rather allows ALDOT employees to grieve 'any matter' concerning allegations of discrimination or consent decree violations").

---

[2] *See supra* at n.1 for the RCP's definition of a "grievance."

Implicitly acknowledging Defendants' contention that ALDOT does not have any authority to investigate the actions of the SPD, the Plaintiffs and the Intervenors focus instead on Steps III and IV of the RCP. In these final two steps of the grievance process, the decision makers are independent of both SPD and ALDOT. In Step III a hearing officer selected from a list of persons agreed to by the parties is charged with conducting a hearing and issuing findings of fact and a recommendation which is to be implemented by ALDOT unless an appeal from the recommendation is taken. Docket № 706 at 9 ("[ALDOT] shall implement the recommendation of the Hearing Officer unless an appeal is taken to Step IV"). If the parties have been unable to agree on the hearing officers' recommendation, then in the final step of the RCP the matter is submitted to binding arbitration conducted by an arbitrator selected by the parties. *Id*. at 10. The Plaintiffs and the Intervenors contend that because these final two steps in the RCP are under the supervision of independent decision makers, that it would not be "ALDOT" exercising oversight over the SPD, but rather the independent decision makers required by Steps III and IV of the RCP.

### III

Determining whether the parties intended the grievance procedure required by Article XIX, ¶ 7 and set forth in the RCP to reach the SPD is the threshold issue. The procedural question of whether the RCP as designed and implemented is an appropriate means of reaching allegations by ALDOT employees against the SPD is a subsidiary issue that need only be reached if it were the intention of the parties to include complaints

6

against the SPD in the grievance procedure.  If the parties did not intend to make SPD's actions subject to the RCP, then the Defendants are entitled to a finding of compliance with Article XIX, ¶ 7 since the only dispute between the parties is whether a complaint against the SPD must be processed through the RCP.

A

According to the Defendants, "the only party required to implement the RCP is ALDOT" (Docket № 8024 at 3) and since the SPD is not mentioned or discussed in either Paragraph 7 of Article XIX, or in the RCP, nothing in either of these documents subjects the SPD to the Revised Complaint Procedure.  Docket № 7993 at 2.  The Defendants' arguments rest on too narrow a reading of the requirements of the RCP or the intention of the parties in agreeing to the terms of Article XIX, ¶ 7.

By its own terms the Revised Complaint Procedure is not limited to grievances directed at ALDOT.  The definition of a grievance is broader than the Defendants are willing to concede.  Under the RCP, an ALDOT employee can file a grievance for "**any matter concerning** allegations of discrimination **or a violation of the Consent Decree or arising from** or concerning matters that are **the subject of the Consent Decree**."  Docket № 706 at 2(emphasis added).  Unless otherwise limited in the RCP "any matter . . . arising from or concerning . . . the subject of the Consent Decree" is broad enough to sweep within its sphere those provisions of the Consent Decree that require action by the SPD.

The State Personnel Department is a party to the Consent Decree and though ALDOT was the party charged with developing the grievance procedure, the SPD's actions are certainly included in the phrase "any matter arising from the Consent Decree." The SPD is involved in virtually every important aspect of this case and the Consent Decree, and over the last several years it has worked diligently to help bring the State into compliance.

The Defendants have themselves describe the responsibilities of the SPD in this litigation as follows:

> The Decree establishes a number of duties for [the SPD] including four projects that will involves substantial studies:
>
>> (a) Validation of minimum qualifications (Article Two);
>> (b) Examination validation (Article Three);
>> (c) Study of multi-grade job (Article Fifteen); and
>> (d) Analysis of individual reclassification requests (Article Fifteen).
>
> Article Four, Paragraph One. Similar provisions exist throughout the decree, such as the requirements defining what criteria SPD must use in selecting an examination type (Article Three, Paragraph Five); what types of registers SPD must use for particular classifications (Article Six, Paragraph One); and what procedure SPD must follow in abolishing a register (Article Six, Paragraph Four).

Docket Nº 8024 at 3-4.

The SPD activities with respect to MQ development, validation studies, and issues involving registers and testing, are the very issues over which the parties have been litigating for the past several years. These undertakings are at the core of the parties' objective to eliminate any vestiges of discrimination remaining from ALDOT's prior employment practices through the enforcement of the Consent Decree. To say these core

8

SPD activities remain outside the agreed-to grievance framework because the SPD was not specifically mentioned in the Revised Complaint Procedure or Article XIX, ¶ 7 is to shield from the grievance procedure many essential components of the Consent Decree. If the parties or the SPD had wanted to limit the grievance process to only claims against ALDOT, they could have easily done so by including language to that effect in the RCP. They did not, and there is no indication that they intended to do so when they negotiated the agreed-to grievance procedure which the Eleventh Circuit has stated is "an amendment to Consent Decree I." *Reynolds*, 207 F.3d at 1300.

B

Having determined that the Consent Decree activities of the SPD should be subject to the grievance procedure, the issue becomes whether the grievance procedure as designed is appropriate for its intended purpose given the unique and separate responsibilities ALDOT and the SPD have under the Consent Decree and within State law. The answer seems clearly not.

State law makes clear that the SPD and ALDOT are two distinct state agencies. ALDOT has duties relating to roads, highways, and bridges. Ala. Code § 23-1-40. SPD has responsibility for among other things administering the state merit system, maintaining employment registers, preparing and grading merit exams, and authorizing appointments. Ala. Code § 36-26-8. State law does not invest in ALDOT any authority to oversee, countermand, or otherwise supervise SPD activities or SPD employees. Moreover, the Consent Decree itself clearly requires that ALDOT not take any action that

9

would interfere with the SPD in the discharge of the SPD's duties. *See* Consent Decree, Article III, ¶ 11("Except to the extent that service ratings are a component of the examination, all examinations shall be administered by [SPD] without involvement of any [ALDOT] employees in any aspect of the administration, including the scoring, ranking, evaluating, grading, or assessing of applicants . . .").

The first two steps of the RCP require ALDOT employees to investigate grievances and to offer possible resolutions. *See supra.* at 3-4. Under the terms of the Consent Decree—or the laws of the State—ALDOT and its employees are not empowered to investigate the actions of the SPD, much less impose any kind of remedy on behalf of its employees that the SPD is duty bound to follow.

The Plaintiffs and the Intervenors point out that the last two steps of the grievance process involve hearing officers and arbitrators who are completely independent of both ALDOT and SPD. As such, they contend that any relief to which a grievant may be entitled is ultimately determined not by ALDOT but by independent officials who have jurisdiction to hear and resolve the grievances. Docket № 8022 at 3 (Intervenors); Docket № 8026 at 4 (Plaintiffs).

The RCP is a single and unified procedure in which all four steps are designed to work together. The Plaintiffs and the Intervenors focus on the last two steps of the process when discussing grievances involving the SPD and thereby ignore the basic structure of the RCP. The parties are not at liberty to ignore those portions of the RCP that are "inconvenient" or inconsistent with the desired outcome. The RCP as designed is

therefore not an appropriate procedure by which to resolve the grievances of ALDOT employees against the SPD for Consent Decree violations or claims of discriminatory treatment.

If the Court agrees that the parties intended to allow grievances against the SPD for Consent Decree violations, then the parties should be directed to revise the RCP and establish an appropriate procedure to resolve the "small number" of grievance against the SPD. The revision could be as simple as agreeing to skip the first two steps of the RCP when a claim is made against the SPD and go directly to either the hearing officer stage or the arbitrator stage. Or the parties could devise some other method of initial claim screening that does not require ALDOT employees to assess the conduct of the SPD. For example, the parties could agree to use the SPD's existing grievance procedure in the place of the first two steps of the RCP.

IV

The Plaintiffs complain that the Defendants have not satisfied their reporting obligation under Article XIX, ¶ 4. The specific requirements of the reporting obligation of Article XIX are set forth in the Joint Reporting Appendix. Docket № 937, attached as Exhibit C to Docket № 7990. The Joint Reporting Appendix, which was approved by the Court in 1996, requires the Defendants to report monthly on 33 different categories concerning ALDOT employees and the Defendants' compliance efforts.

The Intervenors do not take issue with the Defendants' claim of compliance with the reporting requirements of Article XIX, ¶ 4.

To say that the produced reports are voluminous is an understatement. The monthly reports fill at least one CD-Rom disk—the equivalent of more than two banker's boxes per month. Docket № 7993 at 4. "ALDOT provides not only the reports described in the Joint Reporting Appendix itself but also the backup materials from which the reports are generated . . . ." *Id*. The parties were able to resolve most of the Plaintiffs' concerns about the Defendants' reports. Of the 33 monthly reports required, the Plaintiffs are still dissatisfied with the Defendants' reporting efforts in nine separate categories believing the reports to be deficient and not compliant with the requirements of the Joint Reporting Appendix. Docket № 7990 at 5.

By in large, the information required by the Joint Reporting Appendix is included in the monthly reports. It may not be set forth in a manner preferred by the Plaintiffs but it is made available both in report form and more importantly in the underlying data that comprises the reports. Most of the objections of the Plaintiffs to the reports of the Defendants seem to elevate form above substance. This is true even when the required information is available through the underlaying data or in another report to which the Plaintiffs have not objected.

Of the nine categories of reports to which the Plaintiffs object, the Special Master recommends that the Court find the Defendants in compliance with the following seven categories:

- Section I(H) requires the Defendants to produce "copies of the data compiled or used to monitor the racial composition of appointments

to each job pursuant to the requirements of Article IX, ¶ 11and the defendants' Affirmative Action Program." The Defendants have complied with this requirement by producing for the Plaintiffs copies of all certificates of eligibles and the appointment forms used by the Defendants for a particular job. These items make up the "appointment packets" for each position and those "appointment packets" are provided to the Plaintiffs. From these documents, the racial composition of appointments can be determined.

- Section II(D) of the Joint Reporting Appendix requires the Defendants to produce a termination roster indicating the reason for the termination and setting forth information regarding the identity of the person filling the position. The Plaintiffs complain about the termination report because it does not contain information about the person replacing the terminated individual but rather lists the position as "vacant." Section II(D) only requires ALDOT to provide a termination roster for the one-month period under review. Generally a terminated employee cannot be replaced within one month given the many hiring steps that ALDOT must go through. According to the Defendants, "once a replacement is hired, the Persons Hired and/or Persons Promoted report [Section I(B)] will provide information regarding the prior incumbent and his or her reason for leaving,

including termination." The Plaintiffs have not challenged the sufficiency of the reporting required by Section I(B) of the Joint Reporting Appendix.

- Section II(E) requires the Defendants to report on vacancies within ALDOT positions. The Plaintiffs contest the Defendants' compliance with this reporting requirement because several vacancies are listed with the phrase "No History for Position." Of the 700 vacancies listed on the most recent vacancy report, less than 100 indicate no history for that position. Docket № 8024 at 8. The Plaintiffs contend that the use of the phrase has the potential to mask whether the position at issue ever had an incumbent. Docket № 8035 at 5. The Defendants have stated that the use of that phrase designates the creation of a new position.[3] Docket № 8024 at 8.

- Section II(H) requires the Defendants to provide "a report of the in-house designation and career paths required by Article Ten, ¶1-2 and such other information as is necessary to determine compliance with Article Ten of the

---

[3] The brief of the Defendants is somewhat vague, but a fair reading of the brief is that the phrase "No History for Position" is limited to those positions "that are newly created." If the phrase is used for old positions with incumbents that have new position numbers, or positions that were filed by incumbents on a temporary basis, then the objections of the Plaintiffs would carry more weight.

14

Consent Decree." The Defendants have complied with this reporting requirement by providing ALDOT organizational charts which indicate in-house job titles and career path training materials. The Plaintiffs point to the fact that career path training materials have not been provided since early 2002. Of course the Defendants were in compliance with Article X on March 12, 2002. Docket № 5769. The Defendants have met their reporting obligation under Section II(H) of the Joint Reporting Appendix.

- The Plaintiffs' objection to the job announcement report, Section II(K), is an example of elevating form above substance. The Plaintiffs object because the various reports submitted to the Plaintiffs do not contain a "job announcement section." The Defendants point out, however, that the information is available from the SPD SPOT reports and the SPD website. The information required by this section of the Joint Reporting Appendix is available to the Plaintiffs and the Defendants have made known where it can be found.

- The Defendants are in compliance with the reporting obligation of Section II(O) which requires reporting on employee in-house assignments and the data necessary to monitor the assignment of duties and responsibilities. The information required can be found in the organizational charts provided

15

with each month's report, and form the basis for the quarterly proportionality reports required under the Consent Decree. A report is also provided showing all employees working out-of-classification.

- Section II(R) requires a report on the use of EIT. Since ALDOT no longer uses EIT, there is nothing to report. The Plaintiffs acknowledge that EIT has been eliminated as a prerequisite for any job classification at ALDOT but still insist that the information be reported because ALDOT may, at some point, consider for employment or promotion an employee who actually possess an EIT. This exults form well above substance. ALDOT no longer uses EIT, leaving it noting to report. The Defendants are in compliance with Section II(R) of the Joint Reporting Appendix.

In the following two categories, the reports of the Defendants do not comply with the reporting requirements of the Article XIX, ¶ 4 and the Joint Reporting Appendix.

- Section II(L) requires a report "that lists the identity of persons purged, inactivated, or otherwise removed from a register[.]" In response to this requirement, "ALDOT provides copies of the letters . . . sent to eligibles, pending their removal from the register." Docket № 8024 at 8. The letters sent to those about to be purged warns the recipient of the pending action and the steps necessary to prevent being removed from register. *See id.*,

16

Exhibit H, Number 3 at 243. Sending copies of the notification of a possible administrative action is different from identifying persons actually purged from a register. Presumable, the person notified could take the suggested action necessary to remain on the register, in which case the notification would not be tantamount to being purged from the register. The Defendants can cure this defect by simply reporting the names, etc. of persons <u>actually</u> purged from the registers, not the names of those who might be purged in the future if they fail to take certain actions.

- Section II(Q) of the Joint Reporting Appendix requires a monthly report on "'on-the-job training' that identifies each employee who was provided the opportunity to perform the duties and responsibilities of a higher classified job" and the nature and extent of such training. Apparently no such report is produced by the Defendants. The Defendants instead point to the EDP reports which track ALDOT employees through the EDP training program. It may be that the EDP reports satisfy the Section II(Q) reporting requirements. From the description of the Defendants there is a high likelihood that it would. Docket № 8024 at 9. The reports have not been submitted into evidence with this motion nor is it known what the frequency of the EDP reports is or the exact nature of the information provided. The Defendants should again confer with the Plaintiffs and point them, if they

>do not already know, to the relevant reports and see if that satisfies the Plaintiffs' needs. If not, an example of the EDP report can be submitted to the Court and the Court can decide whether it provides the Plaintiffs with the nature of the information required by Section II(Q) of the Joint Reporting Appendix.

**ACCORDINGLY**, it is RECOMMENDED that the Defendants be found in compliance with the requirements of Article XIX, ¶ 4, except the reporting provisions required by Sections II(L) and (Q) of the Joint Reporting Appendix. It is further recommended that the Defendants take the simple steps necessary to bring them into compliance with sections L and Q.

It is further RECOMMENDED that the Court find the Defendants not in compliance with the Revised Complaint Procedure to the extent the Defendants do not process grievances against the SPD. Notwithstanding the conclusion that Article XIX, ¶ 7 and the RCP requires the Defendants to process grievances against the SPD, it is noted that the RCP as currently designed is an inappropriate mechanism for processing such grievances. ALDOT employees are not authorized to investigate and second guess the decisions of the SPD. The parties should redesign the grievance procedure to make it possible to resolve those "small number of grievances [by ALDOT] employees complaining about [SPD activities.]"

Objections to this Report and Recommendation must be filed with the Clerk of Court by July 11, 2006. Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 26th day of June 2006.

/s/ C. A. González<br>SPECIAL MASTER