IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

      Plaintiffs,

                                  CIVIL ACTION NUMBER
v.                            CV-85-T-665-MHT
                              **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

      Defendants.

# REPORT AND RECOMMENDATION ON THE INTERVENORS' FOURTH REQUEST FOR FEES AND EXPENSES

I

      This matter is before the Special Master for a Report and Recommendation on the Intervenors' Fourth Motion for an Interim Award of Attorneys' Fees and Expenses. Docket № 8037. The Defendants have responded to the Intervenors' motion agreeing in part and objecting in part to the Intervenors' fee request.  Docket № 8043.

      The basis for an award of fees to the Intervenors has been exhaustively examined by the Court and the Special Master and there is no need to repeat here for the fourth time that basis.  See generally, Docket № 7824, 7908, 7909, and 8034.

      This fee request differs from those previously filed because the Intervenors are requesting compensation for deferred time stretching back to January 1, 2005.  The Intervenors' previous fee applications had sought payment for work on issues that at the

time of the submissions remained unresolved.  As a consequence, the Court deferred consideration of those portion of the fee requests until the underlying issues had been finally resolved and the Court could determine the degree of success achieved by the Intervenors. Besides seeking compensation for deferred time, the Intervenors are also requesting payment for work performed during the first quarter of 2006.

The Supreme Court has consistently held that in awarding fees, trial courts should consider the extent of a party's success in obtaining the relief sought.  See  Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. . . .  "[W]here the plaintiff achieved only a limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained"); see also Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1302 (11th Cir, 1988).  Since the issues for which deferred compensation is sought are now resolved, a determination of the Intervenors' degree of success on those issues can be made.

In total the Intervenors seek $120,320.00 in fees and $625.80 in expenses.  Docket № 8088.  Of the $120,320.00 request, $98,918.75 represents previously deferred fees and work recorded in the current billing cycle (January 2006 through April 2006) that deal with  issues that are now resolved.  Id., at Exhibit 5.  The balance of $21,401.25 is sought for activities undertaken between January 1, 2006, and April 30, 2006, excluding time spent on deferred issues.

II

A

Of the $21,401.25 fee request for the current billing cycle, the Defendants have

paid $7,135.05, (Docket № 8043 at 2), and $12,577.50 has been identified by the

Intervenors as dealing with issues that are not yet resolved and therefore should be

deferred until a later date.  Docket № 8088, Exhibit 4 at 3-4.  Into this deferred category

the Intervenors have listed a time entry by Mr. Fitzpatrick dated March 28, 2006, for 0.25

of an hour with a value of $53.75.  This entry reflects Mr. Fitzpatrick's review of various

responses to the Article I Show Cause Order.  Id. at 3.  This entry should be moved from

the deferred category to the currently compensable category.  The Intervenors are entitled

to be paid for work associated with compliance motions up through the mediation required

by the 2000 Contempt Order.  Docket № 7824 at 15.  No Article I mediation had been

conducted by March 28, 2006, and so this time is currently compensable.

Under the category of "Review of Court Orders," the Intervenors have listed an

entry by Mr. Fitzpatrick related to the review of a notice of compliance.  Docket № 8088,

Exhibit 4 at 5.  The entry is for a quarter of an hour, has a value of $53.75 and the notice

(Docket № 8020) relates to Article VIII (one of the deferred categories) and not a Court

order.  Therefore, $53.75 should be moved from Exhibit 4 and placed into Exhibit 5 which

summarizes the Intervenors' deferred hours.

The Intervenors seek $3,042.50 for time spent working on their third and forth fee

petitions.  The Defendants agree that the Intervenors are entitled to be paid for such time

3

but have proposed a 10 percent reduction in such fees based on the Intervenors' limited "degree of success" in securing past attorney fees.  Docket № 8043 at 4-5.  To the amounts claimed by the Intervenors, the Defendants have added several time entries related to review of various Court orders concerning previous fee petitions. The time spent by the Intervenors reviewing Court orders is listed in a separate category and under the earlier decision of the Court is compensable at the rates agreed to.  Additionally, the Defendants list an entry by Mr. Cooper dated April 27, 2006, reflecting one hour of work ($175).  No such entry appears on the Intervenors' time sheets.  Compare. Docket № 8043, Exhibit 3 at 2 with Docket № 8088 Exhibit 4 at 6.

The issue is whether the $3,042.50 in fees should be reduced by some amount to reflect the Intervenors' degree of success.  According to the Defendants, "[c]onsideration of the degree of success factor warrants a reduction of the Intervenors' time for services relating to their fee petitions because they were not 100% successful in their fee entitlement efforts."  Docket № 8043 at 5.  The Defendants' argument essentially rests on the fact that a significant portion of the fees sought by the Intervenors were deferred.  The Special Master has previously dealt with compensation for time spent preparing and defending a fee request and has found that time to be fully compensable.   Docket № 7979 at 5 and Docket № 7909 at 8-9.  It is no different in this instance.  Any reduction attributable to a lack of success will be applied against the substantive issue.  The Intervenors' fee litigation has been reasonable and successful.

The Intervenors and the Defendants agree that $1,400.00 in the current fee petition relates to work on individual contempt claims, and as such is not compensable at this time. Docket № 7824 at 22. The Defendants do not dispute the Intervenors' entitlement to $625.80 in expenses.[1]

B

As previously noted, for the period January 2006 through April 2006, the Intervenors request $21,401.25 in fees and $625.80 in expenses.  The Defendants have already paid the Intervenors $7,135.05, and $12,577.50 should be deferred as time spent on issues not yet resolved.  As described above $53.75 should be moved from the deferred category to a currently compensable category.  The Intervenors included $53.75 in one of the currently compensable categories for the review of an Article VIII compliance notice. This amount should be deducted from the $21,401.25 in requested fees and added to the fees set out in Exhibit 5 related to Article VIII deferred time.  The Intervenors are entitled to an additional $914.50 in fees for work performed from January 2006 through April 2006.  To summarize:

---

[1]  The Defendants actually calculate the Intervenors' expenses as $699.80. According to the Defendants, the Intervenors failed to include certain April travel expenses.  Docket № 8043, Exhibit 2 Category 17.  The Intervenors have not themselves made such a claim, and in their reply to the Defendants' objections, the Intervenors continued to seek $625.80 in expenses and not the $699.80 suggested by the Defendants. The Intervenors are in the best position to account for their own expenses.

$21,401.25 (Fees (January - April 2006))
   625.80 (Expenses (January - April 2006))

**$22,027.05 (Subtotal)**

($7,135.05)(Previous Payment by Defendants)

(12,577.50)(Deferred and Not Currently Compensable)

(  1,400.00)( Not Currently Compensable Work on Individual Contempt Claims

(     53.75)(Transfer from Currently Parable Category to Deferred Category)

    **$860.75 (Subtotal of Fees Due Intervenors)**

     53.75 (Transfer from Deferred Category to Compensable Category)

    **$914.50** (Remaining Fees owed by Defendants  (January 2006 - April 2006)

III

The Intervenors seek $98,918.75 in fees for previously deferred time from January 2005 through April 2006.  Docket № 8088, Exhibit 5.  These fees relate to the Intervenors' work on the Defendants' Motion to Refund Articles II and III Contempt Fines; the Defendants' Motion for a Finding of Compliance with Article VIII, and the Defendants' Freeman Motion.  Final resolution of these issues has now been reached and the Intervenors request payment in the following amounts:

| | |
|---|---:|
| Article II/III Fines | $22,732.50 |
| Article VIII | 70,846.25 |
| <u>Freeman</u> Motion | 5,340.00 |
| | $98,918.75[2] |

The Defendants do not contest the Intervenors' entitlement to $5,340.00 for work opposing the <u>Freeman</u> Motion.  Docket № 8043 at 7.  This money has already been paid to the Intervenors.  With regard to Article VIII, the Defendants paid the Intervenors $33,809.25 in fees, but withheld the balance based on their own assessment of the degree of the Intervenors' success in objecting to the Article VIII compliance motion.  The Defendants have not paid any of the requested fees dealing with the return of contempt fines paid under Articles II and III.  The chart below summarizes the current state of affairs.

| | **Amount Sought** | **Amount Paid** | **Difference** |
|---|:---:|:---:|:---:|
| Article II/III Fines | $22,732.50 | -0- | $22,732.50 |
| Article VIII | 70,846.25 | $33,809.25 | 37,037.00 |
| <u>Freeman</u> Motion | 5,340.00 | 5,340.00 | -0- |
| Totals | $98,918.75 | $39,149.25 | $59,769.50 |

---

[2]  Docket № 8088 Exhibit 5 at 1.

A

1

In 2004, the Defendants filed a motion to terminate Article II and III contempt fines and to recover the approximately $4.6M in previously paid fines and accrued interest because the "no-overlap" provision of Article II made it impossible to comply fully with the requirements of Article II or Article III.  Docket № 7405.  In their show cause response to the motion to terminate, the Intervenors argued, among other things, that the Defendants' motion should be denied because they had failed to seek a modification of the 2000 Contempt Order under the standards announced in Rufo v. Inmates of Suffolk Co. Jail, 502 U.S. 367 (1992).  Docket № 7440 at 23-28.  The Contempt Order set forth the schedule of civil contempt fines to be paid by the Defendants for contempt of the Consent Decree's various provisions, including Article II and Article III.  Docket № 4284.

Following the referral of the refund motion, and after extensive briefing by the parties, the Special Master issued a Report and Recommendation recommending that the Court "grant the Defendants' motion for refund of all fines and accrued interest paid for contempt of Articles II and III."  Docket № 7694 at 10.  The basis of the recommendation was that the no-overlap provision of Article II made compliance with Article II and Article III "factually impossible" and therefore the Defendants should not have been required to pay contempt fines related to the two articles.  The Report and Recommendation did not address the Intervenors' assertion that the Defendants were required to seek a modification of the Contempt Order.

8

The Intervenors filed objections to the Report and Recommendation, arguing that the Special Master had granted the Defendants' motion for a refund of the contempt fines without requiring the Defendants to first satisfy the requirements of <u>Rufo</u> as it related to the modification of the Contempt Order.  Docket № 7706 at 4-8.  The Defendants dispute the Intervenors' assertions, claiming that no modification of the Contempt Order was necessary because compliance with Article II and Article III was factually impossible and therefore, the imposition of fines was never appropriate in the first instance.  Docket № 7722 at 17-21.  Following oral argument on the objections to the Report and Recommendation, the Court directed the Defendants to file "a companion <u>Rufo</u> motion" (Docket № 7727 at 1) which the Defendants did on April 27, 2005.  In their <u>Rufo</u> motion, the Defendants "proposed amending the [contempt] order to remove any and all references to deadlines for commencement of sanctions for Articles II and III."  Docket № 7845 at 8.

On August 30, 2005, the Court entered an Order that sustained the Intervenors' objections to the Report and Recommendation, denied the Defendants' motion to terminate the contempt fines for Articles II and III, but granted, in part, the Defendants' motion to modify the Contempt Order.  Docket № 7845 at 11-12.  As a result of the Defendants' success in securing a modification of the Contempt Order, the Court found that the "defendants [were] entitled to a refund of 85% of all fines and accrued interest paid pursuant to the 2000 order of civil contempt for Articles II and III."  <u>Id</u>., at 12.  The Court concluded that 15% ($685,350) of the fines paid for noncompliance with Articles II and III was attributable to Defendants' failure to timely comply with several provisions of

9

Articles II and III not affected by the no-overlap provision, to wit: Article II, ¶2(a) and (b) and Article III, ¶2. Id. at 6, n. 5. Therefore, because of the Court's August 30, 2005 Order, the Defendants recovered $3,883,650—or 85%—of the previously paid civil contempt fines.

On September 9, 2005, the Defendants moved the Court to alter or amend its August 30 judgment. Docket № 7857. The Defendants' argument in support of their motion was based on the position that they were in compliance with those provisions of Articles II and III unaffected by the no-overlap requirement[3] and that the Court should not have withheld fifteen percent of the fine. The Court refereed the motion to alter or amend to the Special Master who, on December 5, 2005, issued a Report and Recommendation recommending that the Defendants' motion for an additional refund of contempt fines for Articles II and III be partially granted. Docket № 7930 at 17-18. Specifically, the Special Master recommended that Defendants be refunded an additional $303,959.33 on a pro-rated basis for their compliance with Article II, ¶2(a) and Article III, ¶¶2(b)-(d). The Defendants were also directed to submit additional evidence on the issue of compliance with Article II, ¶2(b) and Article III, ¶2(a). Id.

The Defendants were not able to locate evidence pertaining to their compliance with Article II, ¶2(b), (Docket № 7938 at 3) but did submit additional evidence and argument pertaining to Article III, ¶2(a). On the basis of the newly

---

[3] Article II, ¶2(a) and (b) and Article III, ¶2.

10

produced evidence, the Defendants sought an additional refund of $59,152.23.  On March 16, 2006, the Special Master issued a final Report and Recommendation denying the Defendants' request for an additional refund under Article II, ¶2(b) and Article III, ¶2(a). Docket № 7988 at 7.  The Court adopted the R&R on March 16, 2006.  Docket № 7999. The Court's Order of March 16 finally ended the extended litigation over the return of Article II and Article III civil contempt fines.  In the end, the Defendants recovered $4,187,609, or 91.6% of the $4,569,000 in civil contempt fines paid over the years for contempt of Articles II and III.  The Defendants had earlier abandoned their effort to recover any accrued interest.

2

The Intervenors have divided their request for $22,732.50 in fees related to Article II and III fine refund into three categories:  First is the Intervenors' opposition to the Defendants' initial motion for a fine refund.  For work associated with this activity, the Intervenors seek $14,481.25.  Docket № 8048 at 10.  The second category of time relates to the Intervenors' opposition to the Defendants' <u>Rufo</u> motion.  <u>Id</u>, at 11. For this work, the Intervenors request $5,215 in fees.  The final category involves work in opposition to the Defendants' motion to alter or amend the judgement of the Court to seek an additional refund beyond the 85% awarded by the Court when it granted, in part, the Defendants' <u>Rufo</u> motion.  The fees sought for this work total $3,036.25.  <u>Id</u>.

i

The Intervenors assert that they are entitled to $14,481.25 in fees for work performed between January 1, 2005, and April 27, 2005, the day the Defendants recast their initial refund motion as a <u>Rufo</u> motion. In asserting that they are entitled to be fully compensated for this time, the Intervenors argue that the Court indisputably denied the Defendants' initial motion for a refund of contempt fines based on the Defendants' failure to seek the modification of the 2000 Contempt Order. Docket № 8048 at 10. There is no denying the Intervenors' contention that they strongly argued before the Court and the Special Master that the Defendants' request for a refund could not be granted in the absence of a modification to the 2000 Contempt Order.

The Defendants took an equally strong stand that the elimination of the no-overlap provision from the Consent Decree constituted a significant change in factual circumstances justifying under <u>Rufo</u> any modification to the Contempt Order necessary to authorize a refund of the civil contempt fines. Docket № 7722 at 24-25. The Defendants made this argument in support of their original motion even though they were not seeking a modification of the Contempt Order for purposes of effecting a refund of the civil contempt fines.

The Defendants now contend that requiring them to file a <u>Rufo</u> motion was essentially a procedural issue that did not go to the underlying entitlement of the Defendants to a refund. Docket № 8043 at 8. According to the Defendants, the Court's instruction that the Defendants recast their refund motion as a companion <u>Rufo</u> motion

was "a sensible effort to protect the record and to avoid any later claim that the Court used the wrong procedural mechanism in addressing the underlying merits of Defendants' refund claim."  <u>Id</u>., at 9.

After the filing of the <u>Rufo</u> motion no new evidence was presented to the Court, and the Court essentially adopted the same argument that the Defendants had advanced several months earlier by noting that the removal of the no-overlap provision from the Consent Decree was "a . . . changed circumstance [sufficient] to warrant the modification of the contempt agreement."  Docket № 7845 at 8 (Court's Order), <u>compare</u> Docket № 7722 at 25 (Defendants Brief in Support of March 4, 2005 R&R ("the elimination of the no-overlap provision constitutes a changed circumstance that justifies any modification of the January 31, 2000 Contempt Order needed to effectuate the refund of all Articles II and III civil contempt fines").

Nevertheless, the filing of a <u>Rufo</u> motion is not simply an inconsequential procedural matter.  The granting of a <u>Rufo</u> motion involves substantive assessments of changing factual and legal circumstances.  While the Court agreed with the Defendants that they had satisfied the <u>Rufo</u> standards for modification of the Contempt Order, it also agreed with the Intervenors that the Defendants could not go forward until or unless they meet the legal requirements necessary to modify the Contempt Order.  In the absence of doing so, the Defendants would not have been entitled to the recovery they sought.

The Court's agreement with the Intervenors is apparent from the fact that the Court denied the Defendants' initial motion for a refund (Docket № 7405 (Motion)), rejected the

Special Master's Report and Recommendation thereon (Docket № 7694 (R&R)), but granted, in part, the Defendants' motion to modify the Contempt Order pursuant to <u>Rufo</u>. (Docket № 7728 (<u>Rufo</u> Motion)).  <u>See</u> <u>generally</u>  Docket № 7845 (Court Order). As a result, the Court awarded the Defendants a refund of almost $3.9M.

As measured by the ultimate outcome—the return of fines paid—the success of the Intervenors in opposing the return of contempt fines was minimal.  The Defendants were clearly entitled to modify the Contempt Order on the basis of facts that were incontrovertibly established prior to the filing of the <u>Rufo</u> motion.  The Intervenors' position that the Defendants had to seek a modification of the Contempt Order pursuant to <u>Rufo</u> cannot, however, be dismissed as a "purely procedural matter." The Court took substantive action consistent with the Intervenors' position.  In the end, however, the Defendants substantially secured the relief they sought and the filing of the <u>Rufo</u> motion did not affect the final outcome.

Therefore considering the degree of the Intervenors' success[4] in insisting that the Defendants comply with <u>Rufo</u>, and measuring that against the largely unsuccessful opposition to the return of any contempt fines, the Special Master believes a reduction of 75% in the fees sought for work performed between January 1, 2005, and April 27, 2005—the day the Defendants recast their initial refund motion as a <u>Rufo</u> motion—is appropriate.  The Intervenors were largely unsuccessful in opposing the Defendants' request for a fine refund.  The fee sought for this period is $14,481.25; a reduction of 75% results in an award of $3,620.31.

ii

The Intervenors' seek $5,215 for work associated with their opposition to the Defendants' <u>Rufo</u> motion.  Docket № 8048 at 11.  This covers the period April 28, 2005, to September 8, 2005.  The Defendants' <u>Rufo</u> motion for modification of the Contempt Order was granted, in part, by the Court.  Docket № 7845 at 8-11.  In awarding only 85% of the sought-after recovery, the Court relied on the Intervenors' (and Plaintiffs')

---

[4]  As noted in an earlier Report and Recommendation on the Intervenors' first request for fees,

> The degree of success is an important factor in deciding the appropriate amount of post-judgment fees to award.  Requiring an assessment of the degree of success is not tantamount to requiring a party to 'prevail' on each post-judgment issue standing alone.  It is a measure by which the Court can determine whether the fees requested is appropriate, and it operates with the 'reasonable and necessary standard to produce a framework for analyzing fee requests after the determination of prevailing party status.

Docket № 7824 at 9-10.

arguments that granting the Defendants' <u>Rufo</u> motion in its entirety would not satisfy the requirement that the modification be suitably tailored to the changed circumstances. <u>Rufo</u> 502 U.S. at 391. Docket № 7735 14-18. The Court noted that there were obligations in Articles II and III that were unaffected by the no-overlap provision, and as such it would be inappropriate to modify the Contempt Order in the manner suggested by the Defendants because it would result in the return to the Defendants of the full amount of contempt fines paid.

In granting the <u>Rufo</u> motion, the Court also directed the parties to cooperate in calculating the amount of the 85% refund. Docket № 7845 at 12. The Plaintiffs and the Defendants did in fact jointly calculate 85% of the contempt payments. (Docket № 7852). The Intervenors did not join in the Plaintiffs' and the Defendants' calculation, nor did they offer an alternative calculation. Instead, the Intervenors filed a motion to amend or alter the Court's Judgment. Docket № 7853. If granted, the motion would have effectively reversed the prior decision of the Court. The motion to amend or alter was summarily denied by the Court. (Docket № 7876).

At the time the Court issued its August 30, 2005 Order, the Defendants had not offered any evidence that they were in compliance with the provisions of Article II or Article III unaffected by the no-overlap provision. Consequently, the Defendants moved the Court to alter or amend the August 30 judgment. The basis of the motion was that for those provisions of Article II and Article III unaffected by the no-overlap provision, the

16

Defendants had evidence to support a finding of compliance different from the issues swirling around the no-overlap requirement.

Considering the limited success the Intervenors had in opposing the Defendants' Rufo motion and considering that the Defendants ultimately recovered almost 92% of the paid fines, it is recommended that the Intervenors request for $5,215 in fees for work opposing the Defendants' Rufo motion be reduced by 80% to $1,043. Twenty percent of the requested fee is reasonable, given that the Intervenors successfully resisted the Defendants' argument that the Contempt Order should be modified to remove completely the obligation to pay any fines for contempt of Articles II and III.

iii

On September 9, 2005, the Defendants moved the Court to alter or amend its judgment entered August 30 and grant an additional refund for Article II, ¶¶2(a) and (b) and Article III, ¶2. Docket № 7845. These were the paragraphs identified by the Court in its August Order as being unaffected by the no-overlap provision. Docket № 7845 at 6 n. 5. The Defendants based their motion on the contention that they were in compliance with these paragraphs prior to the Court's lifting the contempt fines. The motion was referred to the Special Master for a report and recommendation. Docket № 7877.

On December 5, 2005, an R&R recommending that an additional refund of contempt fines for Articles II and III be granted was filed. Docket № 7930. Specifically, the recommendation was that the Defendants be refunded an additional $303,959.33 on a pro-rata basis for their compliance with Article II, ¶2(a) and Article III, ¶2. The Special

17

Master found the Defendants complied with the requirements of Article II ¶2(a) before the lifting of the contempt fines, id. at 5-8, and further noted that the Intervenors had long ago conceded Defendants' compliance with Article III, ¶2.  Id. at 11.  The Intervenors had opposed any additional refund with respect to Article II, ¶¶2(a) and (b).

There was insufficient evidence in the record, however, to determine whether Defendants had in fact complied with Article II, ¶2(b) prior to the termination of the fines. Accordingly, the Defendants were directed to submit further evidence in support of their claim.  Id., at 16.  The Court adopted the Special Master's December 5, 2005 Report and Recommendation.  Docket № 7964.

In response to the December 5, 2005 R&R, the Defendants informed the Special Master that they had no additional evidence regarding their compliance with Article II, ¶2(b).  Docket № 7938 at 3.

Since the Intervenors did not contest the Defendants' entitlement to a refund with respect to Article III, ¶2, the issue is the Intervenors' success in opposing the additional refund for Article II, ¶¶2(a) and (b).  In all, the Defendants sought $342,675 in additional refunds for Article II, ¶¶2(a) and (b).  Docket № 8043 at 20.  The Intervenors were unsuccessful in opposing the Defendants' efforts to recover a refund for Article II, ¶2(a). The Defendants themselves ultimately acknowledged that they had no evidence regarding compliance with Article II, ¶2(b), but only after the Intervenors had challenged their argument.  As a result, the Defendants received $171,337.50, one half or of the total refund sought for Article  II.

In opposing the Defendants' motion to alter or amend the August 30 judgment, the Intervenors are seeking $3,036.25 in fees.  Determining the Intervenors' "degree of success" requires more than simply comparing the amount sought by the Defendants ($342,675) to the amount actually recovered ($171,337.50).  "[I]f post-judgment work is solely in pursuit of compliance with the judgment, the work must still 'be reasonable and necessary' as measured by the standard articulated in <u>Hensley v. Eckerhart</u> 'that requires balancing the amount of effort against plaintiff's overall success'" <u>Wyatt v. Sawyer</u>, 67 F.Supp. 2d 1331, 1345 (M.D. Ala. 2003)(Thompson, J.)(citations omitted).  Here the effort expended, and the results achieved are reasonable.  Also, the goal of ensuring compliance with the Court's decrees and orders is reasonable and necessary.  The Intervenors should recover 60% of the amount sought or $1,821.75.  A forty percent reduction is appropriate because the Intervenors did not fully succeed in their stated effort of opposing any additional fine recovery for Article II, ¶¶2 (a).

3

The Intervenors request an award of $70,846.25 for work on the Defendants' Article VIII compliance motion.  Docket № 8088 at Exhibit 5.  Of this amount, the Defendants have voluntarily paid $33,809.25.  Docket № 8043 at 7.  The Article VIII compliance issues focused on the use and development by ALDOT of supplemental interview questions.  Also at issue was the question of whether ALDOT's  policy of excluding from interviews certain non-African Americans who appeared on ALDOT Certificate of Eligibles violated Paragraph 2 of Article VIII.

By in large the Intervenors succeeded to a very significant degree in challenging the Defendants' motion for compliance with Article VIII. They established that ALDOT's method of developing supplemental interview questions violated Article VIII, ¶2 until July 31, 2005. They also were successful in securing a change in ALDOT's interview process to require the interview of most persons (white and black) appearing on ALDOT Certificate of Eligibles.

i

The Defendants concede that the Intervenors succeeded in establishing that the method used to develop supplemental questions by ALDOT prior to July 31, 2005, did not satisfy the requirements of ¶ 2 of Article VIII. The Defendants write in their brief:

> the Special Master ruled that supplemental questions used before and after January 2004 were not developed consistent with the requirements of Article Eight and that the Defendants efforts in using the supplemental questions during this period of time fell short of the standards required by Article Eight . . . the intervenors can claim success on these points . . .

Docket № 8043 at 23.

Despite their admission that the Intervenors succeeded in establishing noncompliance with Article VIII, the Defendants nevertheless contend that since no supplemental interview questions were used after February 4, 2005, that the Defendants were in compliance with the Article VIII, ¶2 as of that date. Id. There are no findings either by the Court or by the Special Master that supports such a conclusion. In fact the Court's conclusion is that the Defendants did not bring themselves into compliance with Article VIII, ¶2 until July 31, 2005, the date ALDOT finished training its workforce on the

20

use of the Supplemental Interview Question Guide ("Guide").  Docket № 7976 and

Docket № 8043.  Whether the Defendants did or did not use unvalidated supplemental

questions after February 4, 2005, is beside the point.

The question before the Court on the Defendants' motion for compliance with

Article VIII was whether the Defendants had a valid and lawful method for developing

supplemental interview questions, and if so, when.  The conclusion of the Court is that

compliance was not achieved until July 31, 2005—long after the September 22, 2004

compliance motion was filed (Docket № 7493), and long after the litigation on this issue

had been fully joined.

ii

At the time the Court was reviewing the Defendants' compliance with Article VIII,

ALDOT had a policy, as required by the Consent Decree, of interviewing all African

Americans whose names appeared on Certificate of Eligibles ("COEs").  Non-African

Americans who also appeared on ALDOT's COEs were not automatically interviewed, but

had to be specifically selected for an interview by the hiring authority.  The Intervenors

argued that this policy violated the Consent Decree's race-neutral mandate.

On the basis of the Special Master's initial review of the Intervenors' objections to

ALDOT's interview policies, it was concluded that ALDOT was not required under

Article VIII to interview all non-African Americans on its COEs.  Docket № 7976 at 30-

34.  The Intervenors objected to that portion of the Special Master's Report and

Recommendation, (Docket № 7982) and on April 3, 2006, the Court issued an oral order

21

directing the Defendants to interview all persons regardless of race appearing on any

ALDOT COEs other than those appearing on the ASA COEs.  With regard to persons on

ALDOT's ASA COEs, the parties were informed that the Court would contact the Special

Master regarding the resolution of the ASA issue.  The oral order of the Court was

memorialized by the Courtroom Deputy Clerk in the Minute Entry Form filed in the

Clerk's office.  Docket № 8012.

Because of the Court's oral order, the Defendants filed a notice of compliance with

the Court (Docket № 8020) informing the Court that they had amended the interview

policy to require the interview of all persons, regardless of race, who appeared on any

ALDOT COEs other than those appearing on an ASA Certificate of Eligibles.  Thereafter,

the Special Master facilitated a course of negotiations between the Intervenors and the

Defendants that resulted in an agreement with respect to the ASA issues.  The terms of the

parties' agreement were filed with the Court.  Docket № 8033.

By any measure the Intervenors were very successful in challenging the

Defendants' interview policy and ensuring that it was implemented in a race-neutral

fashion and in accordance with Article VIII and the Consent Decree.

iii

Of all of the issues dealt with by the Special Master, the litigation surrounding the

Defendants' motion for compliance with Article VIII has been among the most

contentious and involved.  The Defendants believe that the Intervenors' fees for work on

Article VIII should be reduced for two reasons.  "First, considering . . . the factor of degree

22

of success, the Intervenors clearly did not achieve 100% success in advocating their positions. "Second, some of their work was not performed on behalf of their clients and constituted advocation of positions contrary to the express terms of the consent orders agreed to by them." Docket № 8043 at 21.

Of course the test is not whether a party otherwise entitled to an award of fees achieves 100% success in the positions advocated. The test is whether the fees sought are reasonable considering the success achieved. Hensley, 461 U.S. at 436. Quite clearly the Intervenors achieved a considerable degree of success. They altered ALDOT's interview policy and successfully established that ALDOT's development of supplemental interview questions violated the Consent Decree until the implementation of the Guide. No one can or should seriously dispute that the Intervenors' success in altering ALDOT's interview policy had considerable benefit for Intervenor class members. Nor was advocacy on this point "contrary to the express terms of the consent orders." Indeed, it advanced the well-established notion that the Consent Decree is to be implemented in a race-neutral fashion.

The Intervenors exerted considerable effort in challenging the sufficiency of the Guide. The challenge failed and some modest reduction in fees is appropriate to reflect that failure, particularly given that the Guide was developed by the Defendants with an eye to securing compliance with Article VIII and that effort was undertaken prior to the filing of a compliance motion.[5] Of course the Guide was not fully implemented until July 2005

_____

[5] The Guide was completed by August 2004, one month before the Defendants moved the Court for a finding of compliance with Article VIII. Docket № 7816 at 33. All
(continued...)

after ALDOT employees had been trained on the use of the Guide, but the Defendants nevertheless initiated the process of reform prior to the start of litigation over Article VIII.

The Intervenors seek $70,846.25 in fees for their work on Article VIII. Given the Intervenors' substantial degree of success in insuring compliance with the Consent Decree, the Intervenors' should recover 95% of the fees sought or $67,303.94.  The five percent reduction reflects the failure of the Intervenors in challenging the appropriateness of the Guide.

## IV

The charts below summarize the conclusions of this Report and Recommendation and set forth the fees that should be paid to the Intervenors.

---

[5](...continued)
that was left was to train ALDOT personnel on its use.  The training took the next eleven months.

CURRENT FEES & EXPENSES FOR JANUARY 2006 - APRIL 2006

$22,027.05 (Fees and Expenses January 2006-Through April 2006.)
($7,135.05)(Previous Payment by Defendants)
(12,577.50)(Deferred and Not Currently Compensable)
( 1,400.00)( Not Currently Compensable Work on Individual Contempt Claims)

**$914.50** (Remaining Fees owed by Defendants for January 2006 - April 2006)

FEES FOR DEFERRED TIME JANUARY 2005 - APRIL 2006

|  | **Amount Sought** | **Amount Previously Paid** | **Amount Owed** |
|---|---|---|---|
| Article II/III Fines | $22,732.50 | -0- | $6,485.06 |
| Article VIII | 70,846.25 | $33,809.25 | 33,494.69 |
| Freeman Motion | 5,340.00 | 5,340.00 | -0- |
|  | $98,918.75 | $39,149.25 | **$39,979.75** |

**TOTAL FEES CURRENTLY DUE   $40,894.25** (39,979.75 + 914.50)

V

**ACCORDINGLY**, it is RECOMMENDED that the Intervenors' Fourth Motion for Fees and Expenses (Docket № 8037) be GRANTED IN PART and DENIED IN PART, and that the Intervenors be awarded $40,894.25 in fees.

Objections to this Report and Recommendation must be filed with the Clerk of Court by August 10, 2006.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED  this 25th day of July 2006.

/s/ C. A. González
SPECIAL MASTER