IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

    CIVIL ACTION NUMBER
    85-cv-665-MHT
    **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

## REPORT AND RECOMMENDATION

This case is before the Special Master by Order of Referral, (Docket № 8369), on the Intervenors' Motion For Further Orders Regarding Disposition of Contempt Fines. Docket № 8361. For the reasons that follow, it is recommended that no further order regarding the ultimate disposition of the contempt fines be entered at this time and that all pending motions with respect to the use of the contempt fines be denied without prejudice.[1]

---

[1] During an untranscribed conference call between counsel and the Special Master on March 16, 2009, it was agreed that no additional briefing was required to resolve the Intervenors' motion in light of the previously filed briefs on this issue by the Defendants and Plaintiffs and Intervenors.

I

The ultimate use of the approximately $13M in civil contempt fines currently on deposit in the Court's registry is an issue that has generated significant attention from the parties.  Such attention is unwarranted at this stage of the litigation as it is a diversion from the task of resolving the individual contempt claims of the Plaintiffs and Intervenors.

The Intervenors and Plaintiffs feel differently.  They believe an order requiring the funds to be used to compensate victims of the Defendants' contempt would "materially advance the process of bringing this litigation to a conclusion."  Docket № 8361 at 1 (Intervenors) and Docket № 8280 at 8 ("Plaintiffs strongly believe that such fines should be used to prompt resolution of the most intractable phases of the case that remain—the individual contempt and monetary remedies not resolved by the 2000 contempt agreement. . . .").

The Defendants, on the other hand, seek the return of all remaining contempt fines.  They suggest that if the contempt fines are returned the money would "be used to fund ALDOT training and recruiting programs and to pay any outstanding and/or future attorneys' fee awards in this

litigation."  Docket № 8179 at 1.  The Defendants appeal to the Court's equitable powers to order the refund.

## II
### A

In August 1999, the Defendants stipulated to their contempt of the Consent Decree.  Docket № 4147.  Thereafter, on January 31, 2000, the Court entered an agreed-to order finding the Defendants in contempt and approving the parties' Agreement on Remedies for Contempt, ("Agreement on Remedies").  Docket № 4284, published at Reynolds v. Alabama Dept. of Transportation, 84 F.Supp.2d 1339 (M.D. Ala. 2000).  Among other things, the Agreement on Remedies established compliance deadlines for the Consent Decree, and the framework for the imposition of coercive civil contempt fines in the event the deadlines were not met.  Unfortunately, the Defendants failed to meet many of the deadlines, and were required to pay contempt fines beginning in early 2000.

In all, the Defendants paid $19,367,000 in fines during the term of their contempt.  Docket № 8179 at 1. Between 2001 and April 11, 2008, the Defendants were refunded a total of $6,612,609.33, leaving $12,745,390.67 of previously paid contempt fines in the Court's registry together with accumulated interest.

3

**B**

Several principles regarding the ultimate disposition of the contempt fines can be set forth:

- First, the contempt fines now in the registry of the Court were lawfully collected by the Court pursuant to the Agreement on Remedies.  Reynolds, 84 F.Supp.2d at 1342.

- Second, where claims were made that the contempt fines were improperly paid, as with Articles II, III, and XV, those claims were litigated and as appropriate, fine money was returned to the Defendants.

- Third, all fine money within the possession of the Court and lawfully collected by the Court belong to the Court. The Court does not act as a trustee for the Defendants with respect to paid contempt fines, but takes possession and ownership of the fines and may dispose of the fines as it sees fit in accordance with the requirements of the law.  Cabrera v. Municipality of Bayamon, 622 F.2d 4, 8 (1st Cir. 1980)(the court controls the disposition of contempt fines).

- Fourth, the purpose of civil contempt fines is to secure compliance with the orders and decrees of the court or to compensate those who suffered a loss as a result of the contempt. "[S]anctions in civil contempt proceedings may be employed 'for either or both of two purposes:  to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained'" Local 28 of the Sheet Metal Workers' International Assoc. v. EEOC, 478 U.S. 421, 443 (1986) quoting  United States v. Mines Workers, 330 U.S. 258, 302 (1947).  See also, United States v. City of Miami, 195

F.3d 1202, 1293 (11th Cir. 1999)("Civil contempt sanctions are designed to (1) coerce a party into complying with a court's order or (2) compensate a party for losses suffered as a result of the contemptuous conduct").

- Fifth, the Court has the equitable power to use the contempt fines in furtherance of the goals of the ligation. See Docket № 8179 at 2 (Defendants)("It is well-established that a federal court may, in the exercise of its equitable power, order that fines it has imposed as sanctions for civil contempt be used to remedy the problem underlying the contempt finding and to further the goals of the litigation")(citation omitted); Docket № 8200 at 3 (Intervenors)(the use of civil contempt fines to further the goals of the litigation "is a principle that, on its face we do not contest"); and Docket № 8202 at 2 (Plaintiffs)("the court has the equitable power to use contempt funds to further the purpose of the original order").

- Sixth, if at the end of a lawsuit a party were simply able to return to the Court and request a refund of contempt fines otherwise properly paid and collected, then the coercive purpose of the fines would be lost or greatly diminished.

- Seventh, the contempt fines were paid by Alabama taxpayers. Accordingly, to the extent possible, the fine money should be used in ways that benefit Alabama taxpayers including paying the costs associated with this case, and to support worthwhile programs that further the objectives of the Consent Decree.

## C

The Defendants have suggested that if the remaining contempt fines are returned that they will use the money to fund the following programs

instituted during the terms of the Consent Decree: Workforce Planning, Training-the-Trainer Programs; Training Materials; Outsourcing; Job Shadowing Program; Community College Programs; FE/PE Study Materials; High School Recruitment Programs; and College Recruitment Programs; Scholarship Program; and Marketing Campaign. Docket № 8179 at 5-7. The Intervenors and Plaintiffs object to using the funds for such programs insisting that the funds be used to compensate victims of the Defendants' contumacious conduct.

**1**

The parties' arguments are presented as if the disposition of the contempt fines presents an either/or proposition; either the money is returned to the Defendants for use in various Consent Decree programs, or it is paid over to the Intervenors and the Plaintiffs to compensate class members for losses suffered as a result of Defendants' contempt. The reality, however, is more nuanced.

There are hundreds of pending individual contempt claims. The strength of some of those claims is now being tested. The process being used to resolve the individual contempt claims is one arrived at through extensive discussions with counsel. Moreover, the decision was long ago

made that individual contempt claimants bear the burden of proving they are actual victims of the Defendants' contumacious conduct and therefore entitled to recover make-whole relief. Docket № 6928. In the absence of such proof, a claimant will not succeed on his or her allegation of individual contempt. Of course all monetary damages for contempt of the Consent Decree through May 29, 2001, have already been resolved.

At this juncture it is impossible to know whether the claimants will be entitled to make-whole relief, and if so, in what amount. How then, with the issue of liability for individual contempt claims unresolved, can the Court direct that contempt fines be used to pay such claims? The sequence is illogical. Until more is known about the merits of the individual contempt claims and the range of damages that claimants may be entitled to, no decision should be made about the final disposition of the contempt fines.

As a practical matter it is inconceivable that the Defendants would pay damages, if any, to individual contempt claimants from current operating funds at ALDOT when almost $13M in contempt fines is potentially available. To do otherwise is to insult the hard-pressed taxpayers of Alabama and further stress the budget of ALDOT. Allowing the funds to be used to compensate the victims of the Defendants'

contempt is fully within the authority of the Court and consistent with the use of civil contempt fines.

## 2

Since the Defendants liability for individual contempt claims is unknown, it would be imprudent at this time to grant the Defendants' motion to use contempt fines to fund ongoing Consent Decree programs. Much more than is now known would need to be disclosed about the programs the Defendants wish to fund. Additionally, questions about the amount to be budgeted to each program and the method of accounting to the Court for the funds would have to be decided. These sorts of questions cannot be resolved on the basis of the record before the Court and to ask the parties to address such issues at this time seems to be a distraction from the more pressing issue of the individual contempt claims.

In my opinion, the use of contempt fine money to fund ongoing and appropriate Consent Decree programs is entirely reasonable to the extent funds remain after meritorious individual contempt claims, if any, have been resolved.

**3**

With respect to sequencing the use of the contempt fine money, as a matter of good public policy it makes sense that the individual contempt claims be resolved first because payment for such claims, if any, will be outside the regular ALDOT budget.   Conversely, the Consent Decree programs that ALDOT is currently supporting, and would wish to use contempt fine money to further support, are presumably budgetary items within the existing ALDOT budget.  As such, those programs already have a designated source of funds and the inclusion of additional support funds in the form of contempt fine money would be "extra budgetary."

**4**

As requested by the Court I have offered my recommendation regarding the future use of the contempt fines. The Court is, of course, free to simply return the funds to the federal treasury at any time and not concern itself with how the funds can be used facilitating the final wind down of this case.

Unlike the Intervenors and Plaintiffs, I do not believe that a ruling on the use of the fines at this time will ease the parties toward a final resolution.  If the Court were to order that the fines be used to compensate

individual contempt claimants, the parties would still have to litigate whether the claimants were actual victims of the Defendants' conterminous conduct and if so, the appropriate measure of make-whole relief.  In the end, the $13M on deposit with the Court may be significantly more than is needed or may not be enough.

## IV

**ACCORDINGLY**, it is RECOMMENDED that the Defendants' Motion to Recover Contempt Fines, (Docket № 8179), to the extent remanded by the Court, (Docket № 8299 at 2), be DENIED WITHOUT PREJUDICE.

It is further RECOMMENDED that the Intervenors Motion For Entry of Further Orders Regarding the Disposition of Contempt Fines, (Docket № 8361) be DENIED WITHOUT PREJUDICE.

Objections to this Report and Recommendation must be filed with the Clerk of Court by April 10, 2009.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

This 20th day of March 2009.

/s/ C. A. González  
SPECIAL MASTER