IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


JOHNNY REYNOLDS, ET AL.,

      Plaintiffs,

                                    CIVIL ACTION NUMBER
v.                                 85-cv-665-MHT
                                **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

      Defendants.


## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE INTERVENORS' INDIVIDUAL CONTEMPT CLAIMS


### INTRODUCTION

This case is again before the Special Master on the Defendants' Motion for Partial Summary Judgment on Intervenors' Individual Contempt Claims. Docket № 8372. The Defendants have filed a brief in support of their motion, (Docket № 8373), and the Intervenors have filed a response in opposition (Docket № 8380).

The Defendants frame the issues on which they seek summary judgment as follows:

- Defendants are entitled to summary judgment on all contempt claims arising from delays associated with implementation of Article 15. Docket № 8373 at 2.

- Defendants are entitled to summary judgment on all pre-Fairness Hearing claims seeking monetary relief, including claims for back-pay, salary adjustment, or adjustment to retirement benefits. Id. at 11.

-  With respect to claimants who are deceased, or who have retired or resigned from ALDOT, Defendants are entitled to summary judgment on (1) all pre- and post-Fairness Hearing claims for non-monetary relief, and (2) all pre-Fairness Hearing claims for compensatory, monetary relief, including claims for adjustments to pension benefits. Id. at 14.

- Defendants are entitled to summary judgment on (1) all post-Fairness Hearing claims for salary adjustments by Claimants occupying ALDOT-specific project classifications who received salary adjustments in February 2000 and (2) for any post-Fairness Hearing claims seeking salary adjustments for periods covered by the two-year freeze on salaries of ALDOT merit system employees. Id. at 15.

2

- Defendants are entitled to summary judgment on claims by multiple claimants seeking promotion or instatement to the same vacant position.  Id. at 17.

- Defendants are entitled to summary judgment on all duplicate claims seeking the same relief through separately filed Article XIX grievances.  Id. at 18.

- Defendants are entitled to summary judgment on Claimants' pre-Fairness Hearing instatement claims to the extent that they seek instatement relief for the same job classifications made the basis of the Promotions Class settlement.  Id. at 19.

- Defendants are entitled to summary judgment on Claimants' post-Fairness Hearing claims seeking individual contempt relief for out-of-classification duty assignments.  Id. at 21.

- Defendants are entitled to summary judgment on claims for make-whole relief to the extent that the claims are attributable to implementation of the no-overlap provision of Articles 2 and 3.  Id. at 23.

- The Court should not award any additional Contempt relief Because Claimants have been sufficiently compensated, and Defendants have been sufficiently punished.  Id. at 24.

3

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog, 193 F.3d at 1246 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). The party requesting summary judgment "'always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281 (11th Cir. 1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal

4

quotation marks omitted). "The movant[] can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." Id. at 1281-82. "There is no requirement, however, 'that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" Id. at 1282 (quoting Celotex, 477 U.S. at 323).

## INTRODUCTION

An almost identical motion for summary judgement to the current motion of the Defendants was filed on February 15, 2008, (Docket № 8273), in which the Defendants sought the summary disposition of the Plaintiffs' Individual Contempt Claims.  That motion resulted in a lengthy R&R granting in part and denying in part the Defendants' motion.  Docket № 8310 and as amended Docket № 8319.  The Court adopted the R&R but noted that the issues of multiple claimants for the same position was not sufficiently concrete so as to allow resolution since it presented a 'hypothetical" problem.  Docket № 8371 at 2.  The resolution of the Defendants' current motion is largely tied to the resolution of the

5

Defendants' early motion.  With that understanding, this R&R will borrow liberally from the Special Mater's previous Report and Recommendation on the Defendants' motion for summary judgment

The ongoing controversy involving the Intervenors' individual contempt claims has its genesis in the Court's Order of Civil Contempt entered January 31, 2000.  Docket № 4284, *reported at*  Reynolds v. Ala. Dept. of Transp., 84 F. Supp. 2d 1339 (M.D. Ala. 2000)(hereinafter "Contempt Order").  The Contempt Order was entered based on the parties' agreement "that the defendants should be held in civil contempt of court for noncompliance with consent decree I . . . until such time as [the Defendants] have affirmatively demonstrated that they have achieved full compliance with [consent decree I] . . .."  Id. at 7, 84 F. Supp. 2d at 1342. In addition to finding the Defendants in contempt of their obligations under the Consent Decree, the Contempt Order left open issues "concerning what non-coercive remedies or compensation, if any, should be awarded to redress or undo the effects of the defendants' non-compliance and contempt."  Id. at 21, 84 F. Supp. 2d at 1346.  The Contempt Order specifically recites that it "does not in any way resolve or foreclose any

employee's individual rights and remedies, if any, under federal or state law or under consent decree I . . .." Id. at 23, 84 F. Supp. 2d at 1346.

In discussions subsequent to the entry of the Contempt Order, the Intervenors and the Defendants were able to reach a Settlement Agreement that resolved the Intervenors' compensatory and monetary individual contempt claims through May 29, 2001—the date of the Settlement Agreement's Fairness Hearing.   (hereinafter "Settlement Agreement" or "Agreement").  By its own terms the Agreement did not resolve the Intervenors' individual non-monetary remedies for contempt.  Docket № 4923 at 2.  Nor did the Settlement Agreement restrict the right to seek monetary or compensatory relief for contempt occurring after May 29, 2001.

## ARTICLE 15 DELAYS

As previously determined, the Defendants' are entitled to summary judgment on all contempt claims arising from delays associated with the implementation of Article XV for the 19-month period between May 27, 2003 and December 6, 2004.  Docket № 8310 at 29.

On April 10, 2008, the Court adopted the Special Master's Report and Recommendation, (Docket № 8299), which dealt in part, with Defendants'

compliance with the provisions of Article XV.  It was recommended that the

Defendants be found in compliance with Article XV for the period of May 27,

2003 (i.e., the filing of the motion to lift Article XV sanctions) through

December 6, 2004 (the date the Court adopted the Special Master's

compliance finding).  It is on this basis that the Defendants are entitled to

summary judgment for the 19-month period noted above.  The Defendants

were in compliance with Article XV as of May 27, 2003, and consequently,

no claim for contempt of Article XV is sustainable after that date.


## MONETARY RELIEF FOR PRE-FAIRNESS HEARING CLAIMS

Defendants contend they are entitled to summary judgment on all

pre-Fairness Hearing claims seeking monetary relief, including claims for back

pay, salary adjustment, or adjustment to retirement benefits.  Docket № 8373 at

11.

To the extent the Claimants can establish that they are actual victims of the

Defendants' contumacious conduct , they can recover monetary damages for such

contempt for the period after May 29, 2001.  They cannot, however, recover

compensatory and monetary damages for the Defendants' contempt before May

29, 2001—those claims having been settled by the April 2001 Settlement

Agreement.

8

To the extent the Claimants are entitled to an adjustment to retirement benefits, that entitlement accrues for the period after May 29, 2001.  The same is true for any Claimant seeking salary adjustment.  Accordingly, to the extent a Claimant is entitled to receive a salary adjustment, such an adjustment should be calculated from May 29, 2001.

It is nevertheless true that the Intervenors retained the right to seek non-monetary make-whole relief for their pre-Fairness Hearing claims.  Docket № 4923 at 2.  Such relief may include, under appropriate circumstances, a monetary component as set forth in City of Miami (see infra).  This monetary component cannot include back pay or adjustments to salary or benefits arising before May 29, 2001.

The 2001 Settlement Agreement settled all of the Intervenors' claims for monetary relief for "allegations of noncompliance" arising prior to the close of business on the day of the Fairness Hearing."  Id.  Adjustments to salaries and benefits accruing before the Fairness Hearing are monetary in nature and were therefore settled and released in April 2001.

As previously noted, the decision that claims for salary and retirement adjustment pre-Fairness Hearing were settled does not affect the possible entitlement of a Claimant to an appropriate pay grade or retirement adjustment for the period after May 29, 2001.

The fact is that the Intervenors released and settled all compensatory and monetary claims for contempt before the date of the Fairness Hearing. The Agreement did not resolve the right of Claimants to pursue pre-Fairness Hearing claims for instatement or other non-monetary relief.

The Defendants are entitled to a summary judgment on claims, if any, seeking monetary and compensatory damages for pre-Fairness Hearing contempt of the Consent Decree. This includes claims for compensatory relief, claims for back pay, salary adjustment, adjustment to retirement benefits and fringe benefits.

## CLAIMS OF DECEASED, RETIRED, OR RESIGNED CLAIMANTS

The Defendants believe with respect to Claimants who are deceased, retired or have resigned from ALDOT, that they are "entitled to summary judgment on (1) all pre- and post-Fairness Hearing claims for non-monetary relief, and (2) all pre-Fairness Hearing claims for compensatory, monetary relief, including claims for back pay and adjustments to retirement benefits." Docket № 8373 at 14.

For obvious reasons, Claimants who are deceased, retired, or no longer working for ALDOT are ineligible for non-monetary, prospective relief in the form of promotions or instatement. Additionally, Claimants whose relationship with ALDOT was terminated before May 29, 2001, the dated of the Fairness Hearing, have received all monetary relief they may have been entitled to because of the Settlement Agreement between the Defendants and the Plaintiffs. Of course,

those Claimants who retired or left  ALDOT after May 29, 2001, may still have available claims for compensatory and monetary relief, such as back pay and retirement benefit adjustment through the date of their departure since such claims were not released by the Settlement Agreement.

## SALARY ADJUSTMENTS

Defendants argue they are entitled to summary judgment on any post-Fairness Hearing claims for salary adjustments by Claimants occupying ALDOT-specific project classifications who received upward salary adjustments in February and March 2000 pursuant to the requirements of Article XV of the Consent Decree.  Docket № 8373 at 15

The Defendants position is that Claimants who occupied ALDOT-specific project classifications and received upward salary adjustments in February or March 2000 "are not entitled to any salary adjustments as relief for any post-Fairness Hearing individual contempt claims." Id. at 16.  Since the 2001 Settlement Agreement resolved all monetary claims up through May 29, 2001, the Defendants are correct.   Of course, if a Claimant can establish that he or she suffered an injury entitling them to a salary adjustment for the period following May 2001, they can recovery such an adjustment despite the February and or March 2000 salary adjustments.

Because of budgetary pressures, the State of Alabama and ALDOT implemented a freeze on wages and salaries for a two-year period from April 1, 2003 through March 31, 2005.  The Defendants' position is that any Claimants who can establish a right to relief are nevertheless not entitled to a salary adjustment for the two-year period covered by the Statewide wage freeze.  Docket № 8373 at 16.

The Defendants may very well be correct, it is, nevertheless, an issue best taken up as an offset against any salary adjustment that might be awarded that covers the period of the freeze.  The fact that there was a freeze and the fact that Claimants should not receive a salary adjustment for the period covered by the freeze goes to the amount of the salary adjustment, if any, that might be authorized, not to the appropriateness of the adjustment <u>vel non</u>.

## MULTIPLE CLAIMANTS SEEKING SAME POSITION

The Defendants believe they are entitled to summary judgment on claims by multiple Claimants seeking promotion or instatement to the same position. Docket № 8373 at 17.  In assessing the earlier R&R on the Defendants' motion for summary judgement on the Plaintiffs' Individual Contempt Claims, the Court noted that the current posture of the claims is such that the issue of multiple claimants seeking the same position is not ready "for efficient and wise resolution."  Docket № 8371 at 2.  Nothing has transpired in the interim to alter the ruling of the Court.

The Court's admonition that "this issue is not before the court in any concrete sense" since it "is presented with only hypotheticals[,]" id, remains valid today. The Defendants are not entitled to summary judgment on this issue.

## DUPLICATE ARTICLE XIX GRIEVANCE CLAIMS

Defendants contend they are entitled to summary judgment on all duplicate contempt claims seeking the same relief sought through separately filed Article XIX grievances.  Docket № 8373 at 18.

If a Claimant has received a settlement or payment pursuant to his or her grievance filing and then subsequently files an individual contempt claim seeking make-whole relief for the same actions, then the Defendant will be entitled to a setoff against any relief awarded in the contempt proceedings.  Of course the nature of the available make-whole relief may be different from the relief awarded through a grievance proceeding.  Until the facts of the individual cases are available, granting the Defendants' motion summary judgment would be inappropriate.  The crucial point is that double recovery will not be allowed.[1]

---

[1]  The Intervenors acknowledge that they "have never claimed that anyone is entitled to the same compensatory relief twice."  Docket № 8380 at 9.

## SETTLED INSTATEMENT CLAIMS

The Defendants believe that are entitled to summary judgment on

Claimants' pre-Fairness Hearing instatement claims to the extent that they seek

instatement relief to the same job classifications made the basis of their class

settlement.  In the Defendants' own words:

> Claimants now seek instatement to various positions, contending that
> they would have been promoted to those positions but for
> Defendants' contumacious conduct.  Defendants contend, however,
> that the positions made the bases of Claimants' instatement claims
> include claims for promotions that were settled pursuant to the class
> settlement.  In other words, some Claimants who settled their
> discrimination-based promotion/instatement claims are now seeking
> instatement to the same positions made the basis of the promotions
> claims settled and for which they were compensated as members of
> the class.

Docket № 8373 at 20.

The Settlement Agreement retains the right to pursue non-monetary relief

including instatement.  Docket № 4923 at 2.   The Defendants are not entitled to a

grant of summary judgment on this issue.


## POST FAIRNESS HEARING CLAIMS FOR
## OUT-OF-CLASSIFICATION DUTY ASSIGNMENTS

Defendants seek summary judgment on Claimants' post-Fairness Hearing

claims seeking individual contempt relief for out-of-classification duty assignments

based on the execution of waivers by affected ALDOT employees.  Docket №

8373 at 21.  This issue was previously analyzed by the Special Master in his

Statement for the Record.  Docket № 8251 at 15-18.

In October 2000, the Defendants implemented a policy requiring employees

who agree to work on job duties outside their classification to sign a waiver to any

claim for additional compensation for the performance of those duties.  According

to the Defendants any employee who was in fact working out of classification after

the date of the Fairness Hearing, therefore waived any entitlement to further

monetary relief, and all such claims should be dismissed.

The relevant part of the waiver reads as follows:

It has been explained and I understand that I am being requested to
perform these tasks freely and voluntarily without change of status,
classification, salary or benefits. It has also been explained and I
understand that these duties, tasks, and assignment are being made
temporarily.

I freely and voluntarily accept this assignment of tasks and duties for
my own personal reasons, but also to assist the Department in
accomplishing its mission. By voluntarily accepting these tasks and
duties, I agree that I will not initiate or have initiated on my behalf any
legal, administrative or other action of any nature whatsoever
involving my acceptance and/or performance of these duties, tasks
and/or assignments.

To the extent that I have previously been requested to perform new or
additional duties, tasks, and/or assignments, or am currently
performing additional duties, tasks and/or assignments, I hereby
freely and voluntarily accept those assignments and will not initiate or
have initiated on my behalf any legal, administrative or other action of
any nature whatsoever involving my acceptance and/or performance
of these duties, tasks and/or assignments. I understand that if I
decline to voluntarily accept these duties, tasks and/or assignments
by executing this document, appropriate work adjustments will be
made to reassign those duties, tasks, and/or assignments.

Docket № 8373 at 22.

15

Nowhere in the waiver is any reference made to the <u>Reynolds</u> case or the Consent Decree or the waiver of potential claims related thereto, though the signed release was to be delivered to ALDOT's outside counsel, Lisa Borden, who at the time was responsible for the <u>Reynolds</u> litigation.

The Defendants argue that the waivers were knowingly and voluntarily executed.  Accepting that ALDOT employees who signed the waivers did so voluntarily does not necessarily mean they did so knowingly, that is, that they understood they were relinquishing all legal rights to any additional compensation, including additional compensation that they may be entitled to under the Consent Decree.

To release a cause of action the release must be "'voluntary and knowing' based on the totality of the circumstances."  <u>Myricks v. Federal Reserve Bank of Atlanta</u>, 480 F.3d 1036 (11th Cir. 2007) (quoting <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 52 n.15, (1974).  The Eleventh Circuit has stated that the review of the totality of the circumstances surrounding the signing of a release involves several objective and individualized factors:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

16

Myricks, 480 F.3d at 1040 (citing Puentes v. United Parcel Service, Inc., 86 F.3d 196, 198 (11th Cir. 1996).

The Defendants argue that ALDOT employees understood that "the phrase 'legal, administrative, or other action of any nature whatsoever' obviously encompasses all actions, including individual contempt claims filed within the Reynolds litigation."  Docket № 8373 at 23.  There is no evidence to support such a proposition.   Moreover, had ALDOT wanted to clearly waive any claims class members might have pursuant to the Consent Decree, they could have, and should have, specifically referenced the Reynolds case in the waiver language. They did not and they cannot now argue, without any evidence, that those who signed the waivers understood they were waiving any claims they might have under the Consent Decree.  As the Defendants acknowledge, the waiver policy was implemented during the throes of the Reynolds litigation.  As such, it should have been explicitly referenced; it was not and there is no evidence that the signers of the waivers knew they were waiving their rights under the Consent Decree.[2]

---

[2]   Of course, to the extent an ALDOT employee who signed the waiver acknowledges that he or she understood they were relinquishing all legal rights, including any rights under the Consent Decree, then the waiver would be enforceable against that person.

## ARTICLES II & III DELAYS

Defendants assert they are entitled to summary judgment on claims for make-whole relief to the extent that the claims are attributable to delays caused by the Defendants' failed efforts to implement the no-overlap provision of Articles II and III.  Docket № 8373 at 23-24.

Article II of the Consent Decree governs the development and validation of minimum qualifications ("MQs") and authorizes their use as part of a job examination process.  Minimum qualifications are those job-related qualifications deemed to be minimally necessary to perform the duties of a given job at the entry level position.

Article II, ¶ 1 of the Consent Decree contains the "no-overlap provision."  In general terms, the "no-overlap provision" relates to the requirement that the "knowledge, skills and abilities. ("KSAs") necessary to qualify an ALDOT job applicant to sit for an employment examination in the first instance cannot also be the same KSAs tested for in the job examination itself.  The relevant portion of Article II reads,

ARTICLE TWO
MINIMUM QUALIFICATIONS

1.  Limitation on the use of minimum qualifications.

> Minimum Qualifications will not be utilized on examination
> announcements or to preclude an applicant from examination
> unless the minimum qualification bears a manifest relationship
> to skills, knowledge or abilities necessary to the performance of
> the job at entry without a brief orientation, <u>and such skills,
> knowledge and abilities are not addressed in the examination
> process</u>.

(Emphasis added to denote the "no-overlap provision.")

Stated otherwise, relevant KSAs could be measured by either the minimum

job qualifications or the examination, but not both.

Article III requires, among other things, that only job selection criteria

and procedures validated in accordance with the Uniform Guidelines can be

used by the State Personnel Department to fill positions at ALDOT.  The

use of validated minimum qualifications, as required by Article II, is an

essential component of establishing lawful job selection criteria and

procedures that comply with the Consent Decree.

By order dated July 1, 2002, the Court modified the Consent Decree

by eliminating the no-overlap provision, determining that it was infeasible in

application.  Docket № 5991.  The modification was affirmed on appeal to

the Eleventh Circuit.  <u>Reynolds v. McInnes</u>, 338 F.3d 1221 (11th Cir. 2003).

In affirming the modification, the Court of Appeals said of the no-overlap

provision, that it "was not the most important part of Article II, . . . but is one

of several means of accomplishing the purpose of the decree, and is, in fact, but one of several means of ensuring the development of non-discriminatory MQs" Id. at 1228.

In ruling on the Defendants' motion for a refund of Article II and Article III contempt fines, Judge Thompson echoed the sentiment of the Circuit Court when His Honor noted:

> The defendants did not comply with provisions of the Articles II and III that are independent of the no-overlap clause. To relieve the defendants of all contempt fines because the no-overlap provision was infeasible would effectively undermine this court's ability to enforce those provisions. The defendants' contention that these provisions are peripheral to the order and would not in themselves trigger fines is dispelled by a plain reading of the 2000 contempt order. That order does not require compliance with only certain portions of Articles II and III, but is an all or nothing proposition.

Docket № 7845 at 6-7 (footnote omitted).

The fact that the Court found the no-overlap provision to be infeasible did not relieve the Defendants from the obligation to timely comply with those sections of Articles II and III that were unaffected by the no-overlap provision.   Nevertheless, there were provisions of Articles II and III that were affected by the no-overlap provision that made it impossible for the Defendants to comply with those provisions.  As such, the Defendants cannot be in contempt of a provision that was impossible to comply with.

20

The Defendants are entitled to summary judgment on those claims seeking make-whole relief for contempt of Articles II and III to the extent such claims are based on delays attributable to the no-overlap provision.

### CLAIMANTS HAVE BEEN SUFFICIENTLY COMPENSATED

The Defendants contend that "irrespective of these individual summary judgment issues, . . . the Court should exercise its discretion and deny any additional award of relief to Claimants for their individual contempt claims because they have been sufficiently compensated and Defendants have been sufficiently punished."  Docket № 8373 at 24.

During the pendency of the Consent Decree, the law required the Defendants to comply with the Consent Decree's terms.  The Defendants failed to do so, and that failure resulted in the imposition of contempt fines.  While those fines have been substantial and the cost of this case to the taxpayer significant, that alone is not grounds for the Court to deny individual employees of ALDOT who may have been harmed by the Defendants' contempt of the Consent Decree the right to pursue what the law allows.

The motion that the Court should exercise its discretion to deny any claims for individual contemp relief should be denied.

**ACCORDINGLY,** it is recommended that the Defendants' Partial Motion for Summary Judgment, Docket № 8372, be GRANTED IN PART and DENIED IN PART in conformity with this Report and Recommendation.

Objections to this Report and Recommendation must be filed with the Clerk of Court by May 27, 2009. Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 1st day of May 2009.

/s/ C. A. González
SPECIAL MASTER