IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

        CIVIL ACTION NUMBER
           85-cv-665-MHT
        **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

## REPORT AND RECOMMENDATION

### I

Pending is the "Defendants' Motion for Judicial Estoppel Concerning Leroy Williams." Docket № 8432. The Defendants' motion is based upon the failure of Mr. Williams to list his individual contempt claim and his participation in the Reynolds January 2001 settlement in his bankruptcy proceedings. The facts at issue are not contested.

Mr. Williams filed for bankruptcy protection in the United States District Court, Middle District of Alabama, on four separate occasions. Three of these

bankruptcy filings occurred while Mr. Williams was employed by the Alabama Department of Transportation.[1]

On December 15, 1997, Mr. Williams filed for Chapter 13 bankruptcy, Case № 97-06343. This case was terminated on September 7, 2000. On October 10, 2000, Mr. Williams filed a Chapter 7 bankruptcy, Case № 00-05568, which was terminated on January 29, 2001. Finally, on December 17, 2002, Mr. and Mrs. Williams filed another Chapter 13 bankruptcy that was later converted to a Chapter 7 bankruptcy, Case № 02-34006. The December 2002 case was discharged on May 26, 2004. (See generally Docket № 8433 at 2 and exhibits cited therein).

Mr. Williams has been deceptive in these individual contempt proceedings concerning the number of times he filed for bankruptcy. In his deposition he admits to filing only two bankruptcies. Id., at Exhibit G, 14:11 - 15:19. In response to an interrogatory specifically asking whether he had filed for bankruptcy protection within the past fifteen years, Mr. Williams answered "No." See id., at Exhibit B, Interrogatory 10 ("Have you filed for bankruptcy within the proceeding fifteen years? "If so, please give the case number and court. Response: No.")  These false statements are troubling.

---

[1] Mr. Williams began working at ALDOT on April 2, 1994, as a Highway Maintenance Technician I. Docket № 8433 Exhibit C-2.

2

**II**

The Defendants believe they are entitled to invoke the doctrine of judicial estoppel to prevent Mr. Williams from proceeding with his individual contempt case because he did not disclose to the Bankruptcy Court his individual contempt claims against the Defendants in the Reynolds case. Docket № 8433 at 3. Judge Thompson has explained the doctrine of judicial estoppel as follows:

> Judicial estoppel is an equitable doctrine, invoked at the court's discretion, under which a party is precluded from asserting a claim in a legal proceeding inconsistent with a claim made in a precious proceeding. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id., (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Nevertheless, the doctrine "ought to be applied with caution 'because the harsh results attendant with precluding a party from asserting a position that would normally be available to the party.'" Sumner v. Michelin N. Am., 966 F.Supp. 1567, 1578 (M. D. Ala.) (Thompson, J.) (quoting Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir.1996)).
>
> While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," New Hampshire, 532 U.S. at 750, the Eleventh Circuit Court of Appeals considers two primary factors in applying the doctrine to a particular case. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make mockery of the judicial system." Burnes, 291 F.3d at 1285 (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001)). Therefore, judicial estoppel may be applied only in situations involving intentional manipulation

of the courts, not when the litigant's contradictory positions are the "product of inadvertence or mistake." Burnes, 291 F.3d at 1287 (quoting Matter of Cassidy, 892 F.2d 637, 642 (7th Cir.1990)).  Judicial estoppel "looks toward cold manipulation." Johnson Service Co. v. Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir.1973).  The "deliberate and intentional manipulation" of the courts required before judicial estoppel may properly be invoked can be inferred from the record. Burnes, 291 F.3d at 1287.

In bankruptcy, a debtor has a duty to disclose all potential assets and must amend her financial statements if circumstances change.  11 U.S.C.A. § 521(1).  Potential assets may include "contingent, dependant or conditional" claims, and a debtor must disclose them if she has "enough information prior to confirmation to suggest that [she] may have a possible cause of action."  Youngblood Group v. Lufkin Fed. Sav. And Loan Ass'n, 932 F.Supp. 859, 867 (E. D. Tex.1996) (Heartfield, J.) (internal citations omitted).  Such claims include "litigation which has the potential of arising in a non-bankruptcy context." Id. at 868.

Spann v. Dyncorp Technical Services, LLC, 403 F.Supp.2d 1082, 1086-87 (M.D. Ala. 2005)(Thompson, J.).

As Judge Thompson noted, "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(1), and 541(a)(7)." Burnes at 1286.  The duty to disclose is a continuing one that does not end once the bankruptcy is filed; rather, a debtor must amend his or her financial statements as circumstances change. Id. "Full and honest disclosure in a bankruptcy case is 'crucial to the effective functioning

4

of the federal bankruptcy system.'" Id. quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al., 81 F.3d 355, 362 (3d Cir. 1996).

### III
### A

As to the first two bankruptcies filed by Mr. Williams, in 1997 and then again in 2000, the failure to list participation in the Reynolds case does not rise to the level of "intentional manipulation." Mr. Williams was never a class representative in Reynolds and played no role in the development of class litigation strategy. Docket № 8461 at 2. The first bankruptcy was filed in 1997 and final in September 2000—several months before the January 2001 settlement agreement from which Mr. Williams would eventually receive some money. The second bankruptcy was filed in October 2000 and final on January 29, 2001, less than two weeks after the Plaintiffs and Defendants submitted the proposed settlement to the Court, Docket № 4700. There is no evidence that Mr. Williams knew he would receive money from the settlement since the Court had not yet held the fairness hearing which was still several months off. There is no factual basis for determining that Mr. Williams engaged in deliberate and intentional manipulation of the courts when he failed to disclose to the Bankruptcy Court his status as a class member in the Reynolds case.

**B**
**1**

With respect to Mr. Williams' December 2002 bankruptcy filing, the issues are decidedly different. On December 17, 2002, Mr. Williams filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code. At the time of the bankruptcy filing, Mr. Williams had not received any compensation from his participation in the Reynolds settlement.  By Mr. Williams' own admission, however, by September 2003 he had received payment of his promotion settlement funds.  Docket № 8461 at 2, 3.  Earlier that year on March 5, 2003, Mr. Williams and several hundred other members of the Plaintiffs class gave notice of their individual contempt claims.  See Docket № 6482 at 1-2. Then on January 27, 2004, Mr. and Mrs. Williams converted their Chapter 13 bankruptcy to a Chapter 7.

The notice of conversion from a Chapter 13 filing into a Chapter 7 filing required the completion several forms issued by The United States Bankruptcy Court for the Middle District of Alabama.  See In re Williams, Bankruptcy Case No. 02-34006. at Docket № 46.  The forms are submitted to the Court under penalty of perjury and signed by the debtor.  Among the forms filed is Form 7 entitled "Statement of Financial Affairs."  Mr. and Mrs. Williams filed their

Statement of Financial Affairs on January 27, 2004. Question four in the "Statement of Financial Affairs" asks the following:

> **4. Suits and administrative proceedings, executions, garnishments and attachments**
>
> a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)
>
> . . .

Id. at 25 (emphasis in original).

In response to this question, the Williamses list a single garnishment action filed against Mrs. Williams in the small claims court of Montgomery County. No mention is made of the March 2003 individual contempt claim of Mr. Williams.[2]

**2**

There are two primary factors that the Eleventh Circuit Court of Appeals considers when applying the doctrine of judicial estoppel: (1) "it must be shown

---

[2] In addition to the fact that Mr. Williams' pending individual contempt claim should have been listed in response to question four of the "Statement of Financial Affairs," it should have also been listed in response to question 20 of "Schedule B. Personal Property" dealing with contingent and unliquidated claims. Question 20 requires debtors to list: "[o]ther contingent and unliquidated claims of every nature,. . . ." In response to this question, the only item listed was a worker's compensation claim. See In re Williams, Bankruptcy Case No. 02-34006, Docket № 46 at 10.

that the allegedly inconsistent positions were made under oath in a prior proceeding" and (2) "such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Spann, 403 F.Supp. 2d at 1086, citing Burnes, 291 F.3d at 1285, quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001).

That Mr. Williams failed to disclose[3] his pending individual contempt claims when he signed under oath the petition to convert his and Mrs. Williams' Chapter 13 bankruptcy to a Chapter 7 bankruptcy is incontestable. The question is whether his failure to disclose was "calculated to make a mockery of the judicial system." "Circumstances showing that debtors have made a 'mockery of justice' imply a strong showing of intent to deceive" Thompson v. Quarles, 392 B. R. 517, 527 (S. D. Ga. 2008). Determining "whether a failure to disclose was based on an honest mistake or intentional manipulation of the court depends on the facts of each case." Id. "Deliberate or intentional manipulation can be inferred from the record," and "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Burnes, 291 F.3d at 1298, quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999).

---

[3] "A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather a debtor must amend his Financial Statements if circumstances change." Burnes, 291 F.3d at 1286 (internal citations omitted).

8

There is no affidavit from Mr. Williams or other evidence in the record that would explain why Mr. Williams failed to disclose his pending individual contempt claim to the Bankruptcy Court. All that is left then are the inferences to be gleaned from the record. The Eleventh Circuit's opinion in <u>Burnes v. Pemco Aeroplex, Inc.</u> is instructive in such cases.

<u>Burnes</u>, was an employment class action brought in the Northern District of Alabama. One of the named class members, Mr. Billups, had been an employee of Pemco for several years at the time of the suit. On July 3, 1997, Mr. Billups' lawyer filed for Chapter 13 relief in The United State Bankruptcy Court for the Northern District of Alabama. <u>Burnes</u>, 291 F.3d at 1284. Six months later, January 30, 1998, Mr. Billups filed a claim of discrimination with the EEOC. <u>Id</u>. Then, on December 9, 1999, Mr. Billups, joined a class action lawsuit against his employer Pemco. In the complaint, Mr. Billups and the other members of the class sought both monetary and injunctive relief. "Mr. Billups never amended his Chapter 13 schedule of assets or statement of financial affairs to include his lawsuit against Pemco." <u>Id</u>.

During the pendency of the lawsuit, Mr. Billups moved the Bankruptcy Court to convert his Chapter 13 petition to a Chapter 7 case. As part of the conversion, Mr. Billups filed an updated schedule of assets and liabilities. His schedules did not include any mention of his pending claims against Pemco. <u>Id</u>. On January 23, 2001, Mr. Billups received a 'no asset,' complete discharge of his

9

debts from the Bankruptcy Court.  On May 3, 2001, Pemco moved for summary judgment asserting that the doctrine of judicial estoppel barred Mr. Billups' claims.

The Eleventh Circuit affirmed the grant of summary judgment to Pemco on the basis of judicial estoppel with respect to Mr. Billups' claims for monetary relief, but reversed the District Court's application of the doctrine to bar his claims for injunctive relief.  Id. at 1289.  On the basis of the record before it, the Circuit Court had no difficulty concluding that Mr. Billups' failure to amend his financial statement was intentional and an effort to manipulate the judicial process to receive the benefits of a "no asset" discharge from the Bankruptcy Court while maintaining for himself the potential monetary windfall that a successful lawsuit may bring.  Id. at 1287-88.

**3**

The circumstances of Mr. Williams' case are in material respects almost indistinguishable from those of Mr. Billups in the Burnes case.  At the time of Mr. Williams' conversion of his Chapter 13 bankruptcy to a Chapter 7 bankruptcy, he failed to disclose his then pending claims for individual contempt relief.  There is no basis for believing that Mr. Williams was unaware of his claim or that he was unaware of the need to disclose the claim.  Indeed, Mr. Williams had a long history of filing bankruptcies.  It is also telling that Mr. Williams has difficulty telling the truth with respect to his history of bankruptcy, having admitted to only two

previous bankruptcies in his deposition and earlier denying filing any bankruptcies whatsoever in response to interrogatories.

Mr. Williams' failure to disclose his pending individual contempt claim at the time of his Chapter 7 filing had the effect of potentially sheltering money from his rightful creditors. Mr. and Mrs. Williams were given a "no asset" discharge from the Bankruptcy Court. What the Bankruptcy Court would have done had the disclosure been made is not known, but what is known is that Mr. Williams had a duty to disclose, he failed in that duty and that failure, based on the evidence in the record, was most likely intentional and constituted purposeful manipulation of the judicial process.

**4**

Mr. Williams' counsel in the pending individual contempt claims[4] argues that the Defendants should not be permitted to rely on the equitable powers of the Court to avoid potential liability to Mr. Williams because of the Defendants' stipulated contempt of the Consent Decree and because of the Defendants' previous arguments in the case that the "Plaintiffs are precluded from receiving

---

[4] Counsel now representing Mr. Williams in his individual contempt claim were not involved in any aspect of Mr. Williams' December 2000 bankruptcy or any of his earlier bankruptcies. There is no evidence that Plaintiff's counsel were aware of Mr. Williams' dissembling to the Bankruptcy Court and there is no suggestion in the record or otherwise that counsel knew Mr. Williams' answers to his interrogatory or deposition questions concerning prior bankruptcies were false.

monetary damages by the 2001 settlement." Docket № 8461 at 5.  Of course, the bar to monetary relief only exists through the date of the fairness hearing—May 29, 2001—and Mr. Williams claims damages from the date of the fairness hearing through at least 2003 and perhaps later.  The incontestable fact that the Defendants have conceded their contempt of the Consent Decree does not mean that they lose the ability to defend the claims of individuals who assert they were personally injured as a result of the contempt.  Nor does it relieve the individual claimants from the obligation of being truthful and honest in their dealings with the courts.

The weight of the evidence is that Mr. Williams was intentionally deceptive when he failed to disclose his individual contempt claim to the Bankruptcy Court at the time he converted his Chapter 13 filing to a Chapter 7 filing.

### III

**ACCORDINGLY**, it is recommended that Defendants' motion for the application of judicial estoppel to the individual contempt claim of Leroy Williams, Docket № 8432, be GRANTED, and that Mr. Williams not be permitted to pursue his individual contempt claim.

Objections to this Report and Recommendation must be filed with the Clerk of Court by September 22, 2009.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 31st day of August 2009.


                                              <u>/s/ C. A. González</u>
                                              SPECIAL MASTER