IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

                                    CIVIL ACTION NUMBER
                                          85-cv-665-MHT
                                        **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

# REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EDDIE GREGORY'S INDIVIDUAL CONTEMPT CLAIMS

I

This case is before the Special Master on the Defendants' motion for summary judgment on the individual contempt claim of Eddie Gregory, Docket №: 8471.  The Plaintiffs have filed objections to the motion, Docket №: 8575, and the Defendants have replied, Docket №: 8588.  For the reasons that follow, the motion for summary judgment should be granted.

II

Although Eddie Gregory first applied for a job with ALDOT in 1997, it

1

was not until December 12, 2002, that he was hired and started working as a laborer in Greenville, Alabama. (Gregory depo., at 20-23, 28-29). In December 2003, Mr. Gregory's position was reclassified to Highway Maintenance Technician I. In July 2007, he was promoted to the Transportation Maintenance Technician classification, and then on August 16, 2008, he was again promoted to his current classification, Transportation Maintenance Technician, Senior ("TMT, Sr."). His entire career with ALDOT has been spent in the Greenville, Alabama, area of ALDOT's Sixth Division.

In March 2003, Eddie Gregory, along with several hundred of his fellow employees filed an individual contempt claim indicating that he sought promotion to the Engineering Assistant job classification ("EA"). Docket № 8577, Ex. 2. Since the filing of his ICC, Mr. Gregory has been promoted twice within the Maintenance Technician series. The "MT, Sr. position is considered to be a higher ranking classification than the EA classification in the engineering job series because the salary range is higher." Docket № 8472, at 3 and Docket № 8473, Exhibit E at ¶5.

### III

#### A

"The claimant bears the burden of proving by a preponderance of the evidence that he or she is an 'actual victim' of the Defendants'

contumacious conduct and therefore entitled to make whole relief. In order to state a *prima facie* case for failure to promote by reason of the Defendants' contempt, a claimant must identify the promotion sought, when it was sought, and the training or experience that qualified the claimant for the promotion; or that the claimant would have been qualified for a particular promotion but for the Defendants' contempt of specifically identified Consent Decree activities." Docket №: 6928, at 13. For promotion claims, the Defendants will then have a chance to "show that the claimant did not receive the promotion due to legitimate reasons having nothing to do with Defendants' contempt." (Id. at 15.) "Thereafter, the claimant will have the opportunity to demonstrate that the Defendants' proffered reasons are a pretext for excusing its admitted contempt." Id.

**B**

Summary judgment is authorized under Federal Rule of Civil Procedure 56(c) when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). The party seeking summary judgment bears

the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog, 193 F.3d at 1246; citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  When making the determination of whether summary judgment is proper, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999).  The Court also must "resolve all reasonable doubts about the facts in favor of the non-movant." United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555 (11th Cir. 1990).

### C

#### i

The scope of the current instatement claims has been settled by the Court for more than five years.  The Court directed that the only instatement claims at issue in these individual contempt proceedings are those claims specifically identified in Plaintiffs' March 2003 submission.  Docket №. 7476 at 3. The Court reasoned that "[because the March 2003 deadline was the product of a number of extensions, the plaintiffs had a generous, . . .  period of time to put the class members' claims together and file them.  Any claim or extension of a claim that came after [March 2003] is now too late." Id.

Instatement claims arising after March 2003 may be "pursue[d] . . . in appropriate administrative proceeding or in separate lawsuits or otherwise; . . . ." Id. at 4-5.

In his brief and March 2003 submission, Mr. Gregory asserts that he seeks instatement into the Engineering Assistant job classification line. Docket № № 8575 at 1.[1] More particularly, Mr. Gregory seeks instatement to the Engineering Assistant, Senior position, ("EA, Sr."), not the entry level position of Engineering Assistant noted in his March 2003 submission. Id. at n.1 and p. 8-9. Mr. Gregory's current TMT, Sr. classification is superior to the entry level Engineering Assistant classification included in his March 2003 submission. The TMT, Sr. position has a higher salary range and greater future earning capacity than the EA position originally sought. See Dukes Affidavit Docket № 8473 at ¶5. Mr. Gregory argues that instatement to the EA, Sr. position is proper because had he been timely hired into the Engineering Assistant entry level position when he first applied seven years ago, he would by now have been promoted to the EA, Sr. level. Docket № 8575 at n.1. In other words, the EA, Sr., classification is the natural

---

[1] Later in his brief, Mr. Gregory also claims to seek instatement into the Highway Maintenance Technician II/III and Automotive Mechanic line of progression. Docket № 8575 at 2. Since neither of these two job classifications was mentioned in his March 2003 submission, they are not properly before the Court and will not be considered. See Section III(C) above.

progression in the Engineering Assistant job series, and Mr. Gregory believes he is entitled to instatement into EA line at the highest level.

Whether or not Mr. Gregory is entitled to seek instatement to the EA, Sr. position need not be reached because Mr. Gregory failed to appear for and take the mandatory EA examination. Without taking the examination, Mr. Gregory could not enter the EA job classification at any level. He claims that "the defendants failed to inform him about the examination including the fact that there was an examination at all." Docket № 8575 at 4 and Docket № 8473, Exhibit 1 at 19-20 (Gregory, depo.). The record does not at all support Mr. Gregory's claims.

Mr. Gregory applied for the EA position on August 5, 2002. At the very top of the application he completed, it reads in all capital letters "APPLICATION FOR EXAMINATION." Docket № 8588, at Exhibit I. The application's certification statement at the bottom of page one and signed by Mr. Gregory includes at least two references to the required employment test. The application, that was completed in his own hand, also contains Mr. Gregory's selection and prioritization of his top three testing centers.

Other than his deposition testimony there is no evidence in the record to support Mr. Gregory's claim that he did not know about the examination. In fact all of the evidence is to the contrary. In their brief, the

Defendants review the unrefuted evidence of their efforts to inform Mr. Gregory of the examination requirement.

> Furthermore, as established by the affidavit of ALDOT Recruiting Coordinator Cleo Daniel, SPD notified all qualified EA applications by mail, including Gregory, of the November 2002 scheduled EA exam, which instructed him to contact the SPD to schedule his examination. See EA Exam Notification Letter (Ex. M); Affidavit of Cleo Daniel ("Daniel Aff.") (Ex. K) at ¶2. On or about October 3, 2003, SPD also provided Ms. Daniel a list of qualified minority candidates, including Gregory, for the EA classification (the "call list") for the purpose of contacting each applicant to encourage them to contact SPD and schedule a time to take the EA examination. Daniel Aff., Ex. K at ¶3. Ms. Daniel directed ALDOT recruiters to contact each minority applicant, including Gregory, to encourage them to contact SPD to schedule their EA examination. Id. As reflected on the call list, when the ALDOT recruiter contacted Mr. Gregory to encourage him to schedule a time for his EA examination, Gregory informed the recruiter that he had not applied for the EA classification. Id. at ¶4. At that point, there was nothing further to do because Gregory did not want to take the test. As is the regular practice of the Recruiting Section, Gregory's response was recorded by the recruiter on the call list, and the call list has been continuously maintained by ALDOT. Id. See also Call List excerpt, Exhibit "L".

Docket № 8588 at 7-8 (footnote omitted).

Mr. Gregory had the opportunity to take the exam and was fully informed of the need for the examination if he desired to be promoted to the EA line. He failed to appear for the test and so cannot now be heard to complain. The Defendants are entitled to summary judgment on Mr. Gregory's instatement claim.

7

**ii**

Mr. Gregory claims that after he was hired, he was not selected for an out-of-classification assignment as an HMT II/III or HMS. Docket № 8575 at 4. Other than arguments about the contempt of the Defendants generally, Mr. Gregory does not offer any evidence to substantiate his out-of-classification claims. In fact he specifically testified that since his employment with ALDOT, he has not been denied any particular job duties or assignments that would have helped him in his effort to be promoted.

> Q.  Do you have any claims now that you – since you've been hired, since your hiring date in 2002, do you claim that you were denied any particular job or duties or assignments that would have helped you be promoted to the EA position? . . .
>
> . . .
>
> Q.  So are you claiming that you have been denied assignments or job duties, whether it's to help you be promoted to an EA or any position?
>
> A.  No, sir.

Docket № 8473, Exhibit A at 50-51.

Mr. Gregory's claim that he was denied out-of-classification assignment and rotation is not supported by any evidence. The Defendants are entitled to summary judgment on this claim.

**iii**

Mr. Gregory has no complaints about the level of training he has received since his December 2002 employment with ALDOT. Instead, his training claim rests on the allegation that between the date when he first applied for work with ALDOT in 1997until his eventual hiring in 2002, that he was effectively denied training that would have advanced his promotion opportunities. In other words, during the pendency of his application ALDOT has a duty to train him for his eventual job, and the failure to do so was contempt that effected him personally. Mr. Gregory has testified in his deposition as follows:

> Q. And you don't contend that you've been denied any training at this point?
>
> Mr. Blizzard: Object to the form.
>
> A. I haven't been denied any training since I've been hired.
>
> . . .
>
> Q. So you're saying that . . . I couldn't get training because I didn't get hired prior to the date that I was hired. . . .
>
> A. Yes, sir.
>
> Q. and you claim that that's an injury that you've suffered as a result of what the State has done?
>
> A. Yes, sir.

> Q. And if you has gotten that training, what difference would it have made?
>
> A. It would have made a lot of difference. The State of Alabama is a good job.
>
> . . .
>
> A. It would have been a lot of benefits for my family.

Id. at 48-49.

There are insurmountable problems with the training argument of Mr. Gregory. Foremost among them is that during the period of alleged harm, Mr. Gregory was not an employee of ALDOT, but rather had applied for a position with the organization. The fact that his application was pending does not establish that he was injured by the Defendants' contempt. Mr. Gregory has not offered any evidence to support his contention, and his subjective opinion of events is not sufficient to create a material issue of fact. Early v. Champion Int'l Corp., 907 F.2d 1077,1081 (11th Cir. 1990). The Defendants are entitled to summary judgment on the training claims of Mr. Gregory.

### iv

Mr. Gregory claims that he was not hired as an EA in 1997 through the provisional or backlog appointment process even though his qualifications were superior to those of the individuals hired. Docket № 8575 at 6. The Defendants counter that it was Mr. Gregory's choices

rather than their contempt that affected his opportunity for backlog EA appointment or provisional appointment. Docket № 8472 at 5. They note that Mr. Gregory's application limited the geographic areas where he was willing to work and thus limited his opportunities for appointment to the EA line. Docket № 8588 at 14-15. They also contend that there is no evidence to support that his qualifications were superior to the qualifications of those persons selected for provisional or backlog appointments.

Appointment through the procedures was the product of negotiation between the parties and approved by the Court. The fact that Mr. Gregory was not appointed through the provisional or backlog process is not alone sufficient to make out a claim that he was injured as a result of the Defendants' contempt. Mr. Gregory has set forth the names of a number of individuals–both black and white–working in the Sixth Division who were provisionally appointed or appointed through the backlog process. Docket № 8575 at 6-7. Mr. Gregory states that his "qualifications are superior to those individuals who were chosen for provisional . . . [and] backlog appointment. Id. at 13. Yet he offers no evidence to support that statement. The Defendants, on the other hand, point to the fact that its provisional and backlog appointment of blacks was 43% within the counties where Gregory was willing to work, (Docket № 8472 at 5), and more

11

generally consistent with a race-neutral selection process.  Docket № 8472 at 4.  Despite the unrefuted statistical evidence, the Defendants offer no specific evidence of why Mr. Gregory in particular was not chosen.

The burden is on Mr. Gregory to establish the prima facie case and he has offered no evidence that his failure to receive a provisional or backlog appointment was due to the Defendants' contempt. In his brief, he complains that the backlog and provisional appointment process was not the product of a content valid selection procedure as required by the Consent Decree.  That is true, but the Plaintiffs, themselves, agreed to the backlog and provisional appointment process. Moreover, the effect of the no-overlap provision on the development of content valid selection procedures and the delay in doing so on individual contempt claims has been examined and resolved.  See  Docket № 8310 at 26-29.  The District Court adopted the Special Master's recommendation that to the extent claims seeking contempt relief are based on delays attributable to the Defendants' failure to comply with the no-overlap provision, then such claims are not cognizable in these individual contempt actions.

There is no evidence produced by the Plaintiff that creates a material issue of fact relevant to question of whether the Defendants' contempt was the cause of Mr. Gregory failure to receive a provisional or backlog appointment.

**IV**

**ACCORDINGLY,** it is recommended that the Defendants' Motion for Summary Judgment, Docket № 8471, be GRANTED.

Objections to this Report and Recommendation must be filed with the Clerk of Court by May 28, 2010. Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 3rd day of May 2010.

/s/ C. A. González
SPECIAL MASTER