IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

CIVIL ACTION NUMBER
85-cv-665-MHT
**Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

## REPORT AND RECOMMENDATION

**I**

Before the Special Master is the defendants' Motion for Summary Judgment concerning the individual contempt claim of Samuel Poole. Docket № 8522. Poole has responded in opposition, Docket № 8701, and the defendants have replied, Docket № 8706. The motion is now ripe for resolution.

In his March 2003 individual contempt claim, Poole sought promotion to Civil Engineer Manager, ("CEM"), and rotation in the System Administrator position in the Transportation Planning Bureau. Docket № 8523 at Exhibit B. A few days after filing his individual contempt claim,

Poole was promoted to a CEM position, in late March 2003. According to the defendants, because Poole secured promotion to CEM, he does not state a cause of action for contempt of the Consent Decree.[1]

Obviously, Poole cannot seek instatement into a position he already has and he does not seek such relief in his brief. Instead he claims that the multi-year delay in his appointment as a CEM is attributable to the defendants' contempt of the Consent Decree, and as a result he is entitled to make whole relief. Docket № 8701 at 2. According to Poole, "[a]bsent the defendants' contempt, [he] would have been appointed to [the] CEM [position] sometime between 1994 and 1999 rather than 2003 . . . [and] . . . is [therefore] due relief for that delay in promotion" Id. at 12.

II

Samuel Poole began his employment with the Alabama Department of Transportation in 1978 as a Laborer. Docket № 8523-4 at 18 (Poole deposition). By 1981, Poole was appointed to the position of Engineering

---

[1] Defendants also claim that the "System Administrator" position is "not an established position, but rather is "an extra duty for someone in the bureau to act as a troubleshooter when there were computer problems prior to contacting the Information Systems Bureau." Docket № 8523 at 4. Regardless of the defendants' claim, Poole does not address the issue in his brief, and as such has abandoned any claim with respect to rotation into the System Administrator position.

Assistant I and by 1984 he was provisionally appointed to the position of Engineering Assistant II.  In 1990, he was promoted to Engineering Assistant III, and provisionally appointed to Civil Engineer in 1998.  In November 2002, he was placed on the Certificate of Eligibles, ("COE"), for CEM. Once on the COE, Poole received numerous interview offers around the State.

    Between January 14 and February 13, 2003, Poole turned down no less then nine interviews for CEM positions across the State because they were outside the three county area—Montgomery, Elmore and Autauga—where he was willing to work.  Docket № 8706-2 and Docket № 8706-4.  On March 18, 2003, Poole accepted a CEM position in the Multimodal Bureau in Montgomery.  Docket № 8706-7.  On May 27, 2003, Poole sent a letter to the Bureau Chief for the Maintenance Bureau that he was no longer available for appointment since he had accepted the Multimodal Bureau CEM position in Montgomery.  Docket № 8706-11.

3

## III

### A

Poole has failed to establish that his promotion to the CEM position once placed on the Certificate of Eligibles was delayed or hampered by the defendants' contempt of the Consent Decree.  Poole's unwillingness to work outside a three county area greatly restricted his willingness to be interviewed once placed on the COE.  At any rate, within approximately four months of appearing on a COE, Poole was promoted to the CEM classification.   Activities occurring after Poole's appearance on the COE are not, however, the thrust of his claim. Rather, Poole alleges that the defendants' contempt of the Consent Decree prior to the issuance of the COE adversely affected his employment.

> The defendants violations of the decree particularly Article III, ¶2 and their use of out-of classification assignments and their refusal to use the provisional appointment process damaged Mr. Poole and kept him from being appointed to the CEM classification for which he was qualified for many, many years. Under the subjective standards prior to reinstallation of the [CEM] exam[], Mr. Poole was denied promotion. Once he was able to take the test however, he scored at the top and was able to be appointed. Absent the defendants' contempt, Mr. Poole would have been appointed to CEM sometime between 1994 and 1999 rather than 2003 as he was. He is due relief for that delay in promotion.

Docket № 8701 at 11.

**B**

Prior to the reestablishment of the COEs, ALDOT relied on backlog and provisional appointments to fill position vacancies. The backlog appointments occurred in two rounds and most of those provisionally appointed were given permanent appointments through the backlog process. Docket № 8706-1 at 5-6 (defendants' expert report on Samuel Poole). Poole was provisionally appointed to the CE classification in September 1998. Id. at 4. Poole has produced unrefuted evidence that as early as 1999 several white CE employees in ALDOT's Sixth Division where Poole worked, held CEM positions on an out-of-classification basis. Docket № 8701 at 9. In the subsequent backlog appointments, almost all of the individuals serving in CEM position on an out-of-classification basis were permanently appointed to the CEM classification. Still other white ALDOT employees held out-of-classification assignments to the CEM classification in the Sixth Division after the first round of backlog appointments. Many of these individuals went on to receive permanent appointments as CEMs. Poole was never assigned to the higher duties of the CE line of progression, nor recruited or encouraged to apply for the position. Docket № 8702-2 at 2, ¶¶3, 5 (Poole declaration).

Poole claims a violation of several articles of the Consent Decree. He alleges, for example, that he was denied the opportunity to perform the higher duties of the CE line of progression leading to the CEM position because of the

defendants' contempt of Article III.  Article III of the Consent Decree requires ALDOT to insure that black employees "are provided with equal opportunity to be assigned to duties of the jobs they hold comparable to the assignment of white employees."  Article III, ¶2(a).  Poole has produced sufficient evidence to create a triable issue regarding whether he was provided an opportunity to be assigned to the higher duties of the CE line of progression as was provided to white CE employees in the Sixth Division.

Additionally, Article XIV Paragraph 2(b) requires that to the extent practicable, ALDOT not assign duties "in such a way that any employee gains an advantage in promotion, including reclassification over other employees in the same classification."  At this summary judgment stage, Poole has produced significant evidence of the advantage achieved by white CE employees working out-of-classification  in their quest for promotion to CEM.

**ACCORDINGLY**, it is Recommended that defendants' Motion For Summary Judgement Concerning Samuel Poole, Docket № 8522, be DENIED and that Poole be permitted to proceed with his Individual Contempt Claim to the extent he alleges that the defendants' contempt of the Consent Decree precluded his promotion to CEM prior to March 2003.

Objections to this Report and Recommendation must be filed with the Clerk of Court by January 26, 2011.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 3rd day of January 2011.

/s/ C. A. González
SPECIAL MASTER