IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

                                                                           CIVIL ACTION NUMBER
                                                                               85-cv-665-MHT
                                                                      **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON GLENN McCOVEY'S INDIVIDUAL CONTEMPT CLAIM

**I**

Before the Special Master is the defendants' Motion for Summary Judgment concerning the individual contempt claim of Glenn McCovey. Docket № 8488. McCovey has responded in opposition, Docket № 8698, and the defendants have replied, Docket № 8705. The motion is now ripe for resolution.

**II**

McCovey is a 1979 graduate in civil engineering technology from Alabama A&M University. Docket № 8490-1 (McCovey deposition), at 13.

He hs never been licensed as a Professional Engineer.  Id.  Following graduation, McCovey returned to his home in Mobile, Alabama, and started work with Volkert & Associates, a private engineering firm whose primary client was ALDOT.  Id. at 13-14.  With the exception of a brief period with another company, McCovey worked at Volkert until February 1995 when he was terminated for absenteeism related to cocaine and alcohol abuse.  Id. at 16.  While at Volkert, McCovey worked as a design engineer designing bridges and roads. Id. 14.

In 1980, McCovey applied for a position as a Graduate Civil Engineer, ("GCE"),  with ALDOT but was never interviewed.  Id. at 27.  Then in 1991, while still employed by Volkert, McCovey again applied with ALDOT this time for the Civil Engineer classification since he no longer met the minimum qualifications for GCE progression because he did not qualify as an Engineer in Training, ("EIT").  McCovey's State Personnel Report shows that he failed to appear for the written Civil Engineer test in March 1991.  Docket № 8490-4.

On September 15, 1995, McCovey was arrested in Mobile for robbing the Magnolia Federal Bank and Savings. Id. at 9-10.  On December 14, 1996, he entered a guilty plea to felony bank robbery in Federal District Court in the

2

Southern District of Alabama. Id. at 10-11 and Ex. C.  On March 27, 1996, McCovey was sentenced to thirty months confinement at the correctional facility in Butner, North Carolina.  He completed his sentence on April 1, 1998, and was released from probation in June,1998.

After completing his prison sentence, McCovey worked for a few months as a structural engineer with Process Solutions, Inc. in Mobile County and later he was employed as a staff engineer for Lane Steel from January through August of 1999. Id. at 20-22.  In August 1999, after applying for a position, ALDOT hired McCovey through the backlog appointment process as a Civil Engineer.  He initially worked during his probationary period as a permit engineer at the Third District in Evergreen, Alabama, and was later transferred to the First District (the Ninth Division office) in Mobile, where he was assigned to the planning and analysis section.  Id. at 22-26.  After the Court ordered the uncollapse of the Civil Engineering classification, McCovey was laterally appointed in June 2002 to the Graduate Civil Engineer, ("GCE"), classification, where he continues to work in the First District.  Id. at 30.

From almost the beginning of his employment with ALDOT, McCovey began submitting applications for the Civil Engineer Manager, ("CEM"),  position. In all, from 2000 to 2009, he submitted five CEM applications.  Id. at 34.

In his March 2003 Individual Contempt Claim, McCovey seeks instatement to the Civil Engineer Manager classification, (currently called Transportation

Manger), as well as other make whole relief.  He also seeks relief for a number of non-instatement claims including training and rotation claims.

### III

### A

"The claimant bears the burden of proving by a preponderance of the evidence that he or she is an 'actual victim' of the Defendants' contumacious conduct and therefore entitled to make whole relief."  Docket №: 6928, at 13. Summary judgment is authorized under Federal Rule of Civil Procedure 56(c) when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog, 193 F.3d at 1246; citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  When making the determination of whether summary judgment is proper, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999).  The Court also must "resolve all reasonable doubts

4

about the facts in favor of the non-movant." United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555 (11th Cir. 1990).

B

McCovey contends that the he was denied hiring under the Consent Decree from 1994 until August 1999 when he was hired into the CE classification rather than the Civil Engineer Manger classification.  Docket № 8698 at 1.  Of course for almost this entire period, from February 1995 to June 1998, McCovey was unavailable for employment because he was either addicted to cocaine and alcohol or incarcerated for robbery.  McCovey asserts that because the defendants have not produced any admissible evidence attesting to the fact that his incarceration and substance abuse played any role in the decision not to hire him prior to 1999, that the Court must reject the defendants' contention that McCovey was unavailable for employment between 1995 and June 1998.  Docket № 8698 at 3.

The undisputed fact of McCovey's incarceration is that it made him unavailable for employment during that period of time.  If he was unavailable for employment with ALDOT during that period, he cannot establish that he is an actual victim of the defendants' contumacious conduct during the time of his unavailability.  The defendants are entitled to

5

summary judgment on McCovey's individual contempt claims arising between February 1995 and June 1998.

## C

Any claim that McCovey would have received a backlog appointment to the CEM classification but for the defendants' contempt is not supported by the evidence. McCovey's first employment with ALDOT began in August 1999 when, after submitting an application, he was employed through the backlog process as a Civil Engineer. Docket № 8490-1 at 59, see also Docket № 8490-2 at 4. There were three rounds of backlog appointments, 1998, 1999, and 2000. McCovey was hired during the second round of backlog appointments. According to the Defendants, the final round of backlog appointments, in 2000, occurred while McCovey was still working in his six-month probationary period following his Civil Engineer appointment. McCovey was unavailable for appointment during the first two rounds, and he has failed to present any evidence that his backlog appointment at the CE rather than CEM level was the result of the defendants' contempt. Moreover, he has failed to submit evidence establishing that those ALDOT employees who received backlog CEM appointments between 1998 and 2000 were less qualified than he. More

importantly, however, the evidence establishes that following his incarceration McCovey was hired through the backlog process at the CE level and that during his probationary period, covering the final period of backlog appointments, he did not receive a backlog promotion to a higher management job. The failure to promote during a probationary period, and the failure to hire McCovey directly into a management position very shortly after the end of his prison sentence is not a violation of the Consent Decree for which a claim of individual contempt can be made.

### D

McCovey contends that if the defendants had not been in contempt of Article XIII ¶5 of the Consent Decree, he would have been appointed to the GCE classification presumably prior to his 2000 appointment. Docket № 8698 at 8. In the early 1980s, prior to the entry of the Consent Decree, ALDOT instituted a new minimum qualification for those seeking appointment as a Graduate Civil Engineer. In particular, ALDOT mandated that candidates for the GCE line satisfy the EIT requirement, (Engineer In Training). In order to ensure that the new EIT requirement for the Graduate Civil Engineer classification did not fall disproportionally on the black ALDOT employees who had met the prior requirements for the GCE

7

position and who in fact were placed on the GCE register, the parties agreed to Article XIII of the Consent Decree. Article XIII ¶5(a) identifies by name ten persons who were to be offered employment as GCEs provided they met certain educational requirements without the necessity of passing the EIT requirement. In addition, subparagraph "b" provided that up to a maximum of 10 additional African Americans who met the requirements set forth in Article XIII, ¶5(b)(i)-(iv) should be appointed to the GCE line without reference to the EIT exam requirement.[1]

McCovey claims he was more qualified than all of the individuals who were appointed GCEs pursuant to Article XIII. Docket № 8490-1 at 42. He bases this claim on his engineering experience prior to his employment with ALDOT. Id. at 42-43. He also claims that he met all four of the prerequisites for appointment contained in ¶5(b)(i)-(iv). Id. at 46. Assuming he did, that nevertheless did not entitle him to an appointment; it simply made him eligible. McCovey in fact admits that he has no reason to question whether the people selected under Article XIII met the

---

[1] Article XII, ¶5(b) also provided for the appointment of replacement candidates to the extent that any of the ten candidates named in Article XIII, ¶5(a) are not appointed.

requirements of ¶5(b)(i)-(iv) and that if they met the requirements then their appointment was proper under the Consent Decree.

> Q.  Do you have any evidence that the ten people who were appointed that they didn't meet the four requirements?
>
> A.  No.
>
> Q.   So, if those folks met the four requirements, and they were appointed, ten people appointed, then this has been satisfied, hasn't it, even though you didn't get the promotion?
>
> A.  I would say, yes.

Docket № 8490-1 at 47.

Based on the evidence in the record, there is no basis for finding any material issue of fact regarding McCovey's individual contempt claim related to appointment under Article XIII, ¶(5)(b).  McCovey has not shown that the defendants' contempt of Article XIII affected him individually. Moreover, McCovey cannot rely on any contemptuous delay on fulfilling the requirements of Article XIII since he was not one of the persons chosen for appointment pursuant to Article XIII.

### E

McCovey alleges that he was not allowed to perform the higher job duties of either the CE or GCE positions while white employees were and

9

that consequently, his white colleagues were given an advantage in being promoted to CEM.  Docket № 8698 at 12 and Docket № 8490-1 at 84.

McCovey testified that the lack of rotation affected his ability to perform on the CEM examination.

> Q. . . . Do you recall any portion of the CEM examination where you felt like it cost you because you did not get rotated into those job duties.
>
> A.  Ah, yes.  The management portion of –I mean, well the supervisory portion of the CEM exam.
> . . .
>
> A.  It would have hurt me there.  The scheduling.  It would have hurt me there.

Id. at 86.

McCovey identified several white ALDOT employees who gained an alleged advantage in CEM testing because they were given the opportunity to work out of classification or in various job assignments and rotations that provided practical experience in areas later tested on the CEM examination.  Id. at 83-84 (Fresolone, Palmer, Brewer, Owens, Powell and Tolbert).  McCovey also identified several white GCE's who were rotated into acting positions such as Assistant Construction Engineer, Docket № 8490-1 at 89, (Fresolone), and Project Engineer, id. at 96 (Powell), while he was bypassed for such rotations and acting assignments.

McCovey also claims that he was not rotated into the materials section and as a consequence it affected his promotability because it made him less prepared for th CEM examination . Id. at 108-109.

There is no question that experience in a job prior to being examined for that position imparts an advantage.  Indeed, many of the Articles in the Consent Decree were designed to ensure that African American ALDOT employees received job rotation and assignment duties in proportion to those provided to white ALDOT employees so that no ALDOT employee received an unfair advantage in promotion or testing by virtue of such opportunities.  See e.g., Article XI, ¶ 11, Article XIV, ¶ 2(a-b), 3(c).

The defendants assert that McCovey's claim that the lack of rotation affected his promotion opportunities is conjecture and speculation and as such cannot create a material issue of fact.  Docket № 8705 at 6.  It has been well settled for years that experience in the duties of a particular job classification or EDP training in a classification's higher job duties are essential to adequate performance on a promotion examination. as early As July 24, 1998, defendants' acknowledge the central role that experience and training opportunities have in performance on job examinations.

> "[Plaintiff and defendant experts] advise that [permanent selection] procedure would be sensitive to any disparities in training opportunities because the procedures test for the

11

>knowledge, skills, and abilities needed to perform the job. Therefore, they conclude that persons who had been afforded less training would not perform as well, either on the test or in the interview."

Docket № 3043 at 6.

McCovey has produced sufficient evidence to create a material issue of fact regarding whether the failure to provide him job rotation affected his promotion opportunity. There are also unresolved questions regarding whether McCovey was permitted to complete the appropriate EDP program prior to taking the CEM examination such that the EDP program would substitute for actual job rotation into the higher job duties of the relevant classification. See Docket № 8699-1 at ¶ 4 and Docket № 8489 2-3.

### F

The defendants have moved for summary judgment on McCovey's claims related to his performance evaluation during his six month probationary period and alleged pay disparity. McCovey did not respond to defendants' arguments and those arguments therefore stand unrebutted. Defendants are entitled to summary judgment on McCovey's performance evaluation and pay disparity claims.

**ACCORDINGLY**, it is Recommended that defendants' Motion For Summary Judgement Concerning Glenn McCovey, Docket № 8488, be

GRANTED IN PART and DENIED IN PART, and that McCovey be permitted to proceed with his Individual Contempt Claim to the extent he alleges that the defendants' failure to provide him job rotation or training affected his promotion opportunities.

Objections to this Report and Recommendation must be filed with the Clerk of Court by February 8, 2011.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 19th day of January 2011.

/s/ C. A. González
SPECIAL MASTER