IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

CIVIL ACTION NUMBER
85-cv-665-MHT
**Special Master González**

# REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON JEFFERY HOLLINGSWORTH'S INDIVIDUAL CONTEMPT CLAIM

**I**

Before the Special Master is the defendants' Motion for Summary Judgment concerning the individual contempt claim of Jeffrey Hollingsworth. Docket № 8477. Hollingsworth has responded in opposition, (Docket № 8662), and the defendants have replied, Docket № 8671. The motion is now ripe for resolution.

**II**

In January 1989 Jeffrey Hollingsworth was appointed by ALDOT as an Engineering Assistant I in the Second Division in Tuscumbia, Alabama. By October

1990 he was promoted to an Engineering Assistant II.  In 1994, Hollingsworth was provisionally appointed as an Engineering Assistant III which was later made permanent through the backlog appointment process in 1998.  (See generally Docket № 8479-2 at 4 Defendants' Expert Report summary of Hollingsworth's employment history based on ALDOT records.)  Promoted to Transportation Technologist[1] in May 2005, Hollingsworth was nevertheless returned to his prior EA II/III position in March 2006, after unsuccessfully completing the probationary period for Transportation Technologist.  In February 2008, Hollingsworth retired from ALDOT on the basis of a medical disability.   Docket № 8479-13 at 17 (Hollingsworth Deposition).

Mr. Hollingsworth in 1998 and 1999 twice applied for backlog appointments to the CE classification.  Then in April 2002 he applied for the CE classification through the regular appointment process, but was not placed on the register since no record of him appearing for the written examination exists.[2]  Then again in July 2003, Hollingsworth applied for the CE position, (now Transportation

---

[1] The "Transportation Technologist" position became the revised classification title for the Civil Engineer classification, ("CE").  Because at the time of his individual contempt claim the CE line was still in use and was the line of progression to which Hollingsworth sought instatement, it is used throughout this R&R.

[2] Mr. Hollingsworth testified that he did not remember receiving any notification of the written exam date.  Docket № 8479-13 at 95.

Technologist), appeared for the exam and was placed on the register of eligibles. Docket № 8479-13 at 96-97.  As noted, in May 2005, he was promoted to the CE classification, but later was reinstated to his prior classification of Engineering Assailant II/III.

In March 2003, Hollingsworth submitted an Individual Contempt Claim seeking instatement to the CE classification.  Docket № 8479-3 at 2.  However, because Hollingsworth medically retired from ALDOT in February 2008, he no longer seeks instatement to the CE classification or any of the new Transportation Technologist or Transportation Technologist Senior positions, nor does he have any claims for additional training or job rotation.  Docket № 8479-13 at 130-31.  Mr. Hollingsworth does, however, continue to seek back pay and pension adjustments for alleged delays in his promotion to the CE classification.  Id. at 131.

### III

### A

"The claimant bears the burden of proving by a preponderance of the evidence that he or she is an 'actual victim' of the Defendants' contumacious conduct and therefore entitled to make whole relief."  Docket №: 6928, at 13. Summary judgment is authorized under Federal Rule of Civil Procedure 56(c) when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue

3

as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog, 193 F.3d at 1246; citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). When making the determination of whether summary judgment is proper, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999). The Court also must "resolve all reasonable doubts about the facts in favor of the non-movant." United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555 (11th Cir. 1990).

## B

While Hollingsworth no longer seeks instatement, he continues to seek back pay and pension adjustment for alleged delays in promotion to the CE classification. It is well settled that any claim for back pay or adjustment to retirement benefits arising before May 29, 2001, is foreclosed. See Docket № 8310 at 7-10. The defendants also claim that Hollingsworth was

compensated for any alleged promotion delays through his participation in the April 2005 Grievance Settlement between the plaintiffs and defendants. Docket № 8671 at 3.

Hollingsworth does not address the defendants' argument with regard to the effect of the Grievance Settlement on his claim for back pay and pension adjustment except in the final paragraph of his brief. In that paragraph he makes his only reference to the Grievance Settlement indicating that the defendants have failed to show that he "knowingly released his claims for contempt under the grievance settlement." Docket № 8662 at 16.

The settlement of the plaintiffs' grievance claims turned on whether the Adams Intervenors first settled their grievance claims. See Docket № 4700 at 24 ("If, . . . Defendants settle all grievances of the Adams Intervenors seeking backpay or instatement relief on the basis of only a monetary payment, or monetary payments, Plaintiffs will dismiss all their grievance seeking back pay and instatement relief upon receipt of an amount equal to the total amount of money paid in settlement of the Adams Intervenors' grievances"). The Adams Intervenors did in fact resolve their grievance claims for a payment of $1.45 million. Docket № 4923 at 2. Thereafter, pursuant to the

5

terms of their own settlement the defendants on April 21, 2005, entered into an agreement with the plaintiffs resolving all grievance claims.

> WHEREFORE, plaintiffs have previously agreed that upon (1) the settlement of all grievances of the Adams intervenors seeking back pay or instatement relief, and (2) receipt by plaintiff from defendants of an amount equal to the total amount of money paid in settlement of the Adams intervenors' grievances, plus interest as required by the court's Consent Order (Docket №. 6642), plaintiff would dismiss all of their grievances seeking back pay and instatement. . .;
> . . .
>
> NOW THEREFORE, . . . the grievances attached hereto as Exhibit 1 are dismissed. . . .

Docket № 8479-5 at 1-2.

Hollingsworth had two grievances pending at the time of the plaintiffs' grievance settlement.  Docket № 8479-13 at 63 and Docket № 8479-14 . Both grievances sought instatement to the CE classification and backpay. Both of these grievances were settled through the April 2005 settlement agreement and as a result stand dismissed.  Docket № 8479-16.  Therefore, Hollingsworth has been compensated for his backpay claim through the date of the grievance settlement, April 21, 2005.

Moreover, between Hollingsworth's settlement of his grievance claims and his promotion to the CE classification on May 14, 2005, there were only

6

23 days.  Having settled his backpay claims as of April 21, 2005 and been promoted to the CE classification, Hollingsworth has been compensated for backpay claims between his participation in the hiring class settlement in May 2001 and his grievance settlement.  Hollingsworth is not entitled to seek additional backpay damages for any period prior to April 21, 2005, having already been compensated for such damages.  See General Tel. Co. v. EEOC, 446 U.S. 318, 333 (1980)("courts can and should preclude double recovery by an individual").  Neither is there any evidence that he is entitled to backpay damages for the 23 days between his April 2005 settlement and his May 14, 2005 promotion to CE.

## C

Hollingsworth claims that his promotion to the CE classification "was delayed due to the defendants' contempt of the Consent Decree and his performance was affected by the lack of training, rotation and proportionality of assignments." Docket № 8662 at 14 .  Hollingsworth also alleges that he was not given a fair opportunity to be selected through the backlog appointment process or the regular appointment process.

i

Other than a generalized statement that the defendants have failed to refute that the backlog appointment process was the product of their stipulated contempt, Hollingsworth has not come forward with evidence to create a material issue of fact regarding the effect of the defendants' contemp on his ability to secure a backlog appointment to the CE classification.

Hollingsworth claims that he was not hired through the provisional or backlog appointment process because of the defendants' contempt.  Docket № 8662 at 12-13.  Defendants counter that it was Hollingsworth's choices rather than their contempt that affected his opportunity for backlog CE appointment or provisional appointment.  Docket № 8478 at 7-11. They noted that Hollingsworth's two backlog applications, October 1998 and April 1999, limited the geographic areas where he was willing to work and thus limited his opportunities for appointment to the CE line.  Docket № 8478 at 8.  They also contend that there is no evidence to support that his qualifications were superior to the qualifications of those persons selected for provisional or backlog appointments.  Id at 8-9.

Appointment through the backlog or provisional procedures was the product of negotiation between the parties and approval by the Court.  The

8

fact that Hollingsworth was not appointed through either process is not alone sufficient to make out a claim that he was injured as a result of the defendants' contempt. He must establish that *he* is an actual victim of the defendants' contempt of one or more specific provisions of the Consent Decree. Without this direct link, there can be no claim for individual contempt. Docket № 6928 at 13.

In his brief, Hollingsworth complains that the backlog and provisional appointment process was the "product of defendants' contempt" because they were based on selection standards that were not validated as appropriate for employee selection. Docket № 8662 at 12. That is true, but the plaintiffs themselves—and for good reasons—agreed to the backlog and provisional appointment process. Consequently, they cannot now complain that the process was a violation of the Consent Decree, and he has offered no other argument that would support a claim of individual contempt arising from his participation or lack thereof in backlog or provisional appointment process.

Hollingsworth has set forth the names of a number of individuals who were allowed to work out of classification and were subsequently promoted to CE. Docket № 8662 at 7. According to Hollingsworth, working out of classification gave those individuals an advantage in preparing for the CE examination. Yet

9

he offers no evidence to support that statement.  Hollingsworth identifies several persons who were promoted during his tenure with ALDOT, but other than knowing their names, he has no evidence regarding their particular situation leading to their promotion.  See Docket № 8479-13 at 124.

There is no evidence produced by the Plaintiff that creates a material issue of fact relevant to question of whether the defendants' contempt was the cause of Hollingsworth's failure to receive a provisional or backlog appointment.

## ii

In April 2002, Hollingsworth applied for examination to the CE classification.  Docket № 8479-15.  He failed to appear for the June 2002 CE examination and therefore could not be placed on the register.[3]  Docket № 8479-6 at 6.  The application very clearly states that the successful applicant must pass a written examination and requires the applicant to prioritize the locations in the State where he is willing to sit for the examination which Hollingsworth did.  While he claims he did not receive notice of the examination, he nevertheless does not refute the defendants' records of his

---

[3] Hollingsworth's employment record also reflects that he failed to appear for a Transportation Manager examination on November 14, 2002 as well.   Docket № 8479-6 at 6. Transportation Manager was a successor claissification for the Civil Engineer classification.

10

employment history.  Docket № 8479-13 at 22, 95.  Hollingsworth reapplied for the classification and in September 2003, was placed on the Transportation Technologist register.  By May 2005 he was promoted to the classification he sought.  Docket № 8479-6 at 7.

Hollingsworth had difficulty meeting the requirements of his new position and failed to complete his nine-month probationary period in a satisfactory manner.[4]  As a consequence, he was returned to his prior position as an EA II/III in March 2006 where he remained until his medical retirement in February 2008.  Id. at 7-8.

Hollingsworth was placed on the register the first time he took the CE examination and was hired off the register.  His failure to remain in the CE classification resulted from his failure to satisfactorily meet the duties of his job during his probationary period.  Docket № 8479-13 at 31-49.  Hollingsworth alleges that his unsatisfactory probationary performance evaluations were orchestrated solely to allow Mark Waits, Hollingsworth's Maintenance Superintendent to employ a white ALDOT worker, Frank Holyfield, into the position.  Hollingsworth testified as follows:

---

[4]  ALDOT's probationary period for new hires is normally six moths.  Hollingsworth was given an extra 90 days added to his probationary period to allow him to meet the requirements of the job.  Docket № 8479-13 at 27.  He was unable to do so.

11

Q. And it's your contention that [Waits demoted you back to EA II/III] so that later on he could appoint a white employee to the position that you vacated?

A. Yes.

. . .

Q. All right, So I guess my question would be: Is it your contention that Mr. Waits downgraded you to get you out of the position so that he could then hire Frank Hollifeld for the position two years later?

A. Or a white.

Q. Or any white?

A. A white. You Know.

Q. . . . If he really wanted to do that, why would he even give you an extension of your probationary period?

A. I think he was just following procedures.

Q. I mean, he could have right then said, I'm sorry, but Mr. Hollingsworth is not capable of doing the job and recommended that you be sent back then, couldn't he?

A. I personally think he done it to cover his butt.

Q. That's your opinion, right?

A. Yeah.

Docket № 8479-13 at 137-38, 140-41.

The facts do not bear out Hollingsworth's assertions.[5] It was Waits who requested that Hollingsworth be given a 90-day extension on his probationary period. Moreover, Waits did not hire a replacement for Hollingsworth until over a year after Hollingsworth returned to the EA position. There is simply too much time between Hollifeld's employment and the demotion of Hollingsworth to conclude that the events were related. See Higdon v. Jackson, 393 F3d 1211, 1220 (11th Cir. 2004)(temporal proximity needed to show that two events are related).

### iii

Hollingsworth has failed to present sufficient evidence on the question of training to create a material issue of fact. In all he received 1447 hours in training across 89 different training courses. Docket № 8479-13 at 109. He also participated in the EDP program training as an Engineering Assistant in construction in March 2002. Id. When asked, Hollingsworth was unable to identify any particular training course that he was denied. He simply alleges that he should have been given additional training that would have improved his supervisory experience. Of course, when Hollingsworth sat for the CE

---

[5] Hollingsworth admitted that his belief that Waits wanted a white person to hold the position was his opinion based on his "personal belief." Docket № 8479-13 at 105-06.

examination the first time, he scored well enough to be placed on the register. There is no evidence that the alleged lack of training, if any, affected Hollingsworth's examination performance.

## IV

**ACCORDINGLY**, it is Recommended that defendants' Motion For Summary Judgement Concerning Jeffery Hollingsworth, Docket № 8477, be GRANTED.

Objections to this Report and Recommendation must be filed with the Clerk of Court by March 25, 2011.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 1st day of March 2011.

                                          /s/ C. A. González  
                                          SPECIAL MASTER