IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, ET AL.,

    Plaintiffs,

v.

                      CIVIL ACTION NUMBER
                          85-cv-665-MHT
                      **Special Master González**

ALABAMA DEPARTMENT OF
TRANSPORTATION, ET AL.,

    Defendants.

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NATHAN GILMORE'S INDIVIDUAL CONTEMPT CLAIM**

I

Before the Special Master is the defendants' Motion for Summary Judgment concerning the individual contempt claim of Nathan Gilmore. Docket № 8429. Gilmore has responded in opposition, (Docket № 8603), and the defendants have replied, Docket № 8625. The motion is now ripe for resolution.

II

Nathan Gilmore was first hired by ALDOT in 1978 as an Engineering Assistant. He progressed through the Engineering Assistant classifications

and in 1992 was eventually appointed to the position of Civil Engineer I in Mobile County for the 9th Division of ALDOT.  In 1998, Gilmore transferred to Sumter County and assigned an option code, 483-Construction, within the Civil Engineering class.  When the class codes were revised in 2004, the Civil Engineer classification first became Civil Engineer I/II, followed by a title change to Transportation Technologist.  Currently, Gilmore is employed as a Transportation Technologist in Sumter County, ALDOT's 8th Division.  Gilmore seeks instatement to the Transportation Manager classification, ("TM"), as well as all other appropriate make-whole relief, including monetary relief for the period not covered by the January 2001 Settlement Agreement.  Alternatively, Mr. Gilmore believes he should be instated to the lower classification of Transportation Technologist Senior.  Docket № 8603 at 1 n. 1.

Prior to the establishment of registers, ALDOT relied first on provisional appointments and then on backlog appointments to fill positions.  Once the registers were reestablished, then ALDOT began making employment decisions from the Certificate of Eligibles generated from the registers.

Gilmore applied to be placed on the register three times for the Civil Engineering Manager classification, the predecessor to the TM classification.  In November of 2002 he was placed on the CEM register with a score of 85.36.

Docket № 8429-3 at 59.  And in September 2004, he was again placed on the CEM register with a final test score of 87.05.  Id.  In both instances, Gilmore limited himself to eleven of Alabama's 67 counties: Choctaw, Clarke, Marengo, Washington, Green, Pickens, Tuscaloosa, Bibb, Hale, Sumter, and Wilcox.  Id.  The effect of specifying particular counties is that Gilmore would be eligible for appointment, but only in those counties in which he had indicated a willingness to work.  Docket № 8429-3 at 19 (page 55).  Gilmore was not considered for ALDOT employment in any counties other than those he listed a willingness to work in when he submitted his application.

In December 2005, Gilmore again sought to be placed on the CEM register.  This time his application for placement on the register was denied because he did not have the requisite experience for the CEM position.[1]

Although Gilmore claims not to remember, the unrebutted evidence from the SPD records is that he declined an offer of promotion to the TM position in 2003.  See Docket № 8429-3 at 25, (page 80) and 27 (page 89).  Gilmore also specifically stated in May 2003 that he did not want to be considered for five of the six CEM/TM positions.  Id. at 92.

---

[1] In 2005, Gilmore lacked experience as a Transportation Technologist, Sr. Such experience became a necessary condition of the newly modified and validated minimum qualifications for the CEM.  Docket № 8429-3 at 21 (pages 65-66).

The defendants' expert who reviewed Gilmore's employment record with ALDOT testified by affidavit as follows:

> [A]fter consideration of Mr. Gilmore's geographic limitations, there were 13 appointments from 9 certification lists during the time Mr. Gilmore was placed on the register. Mr. Gilmore was not included on the certification lists for three of the appointments because his score was lower than the lowest scoring candidate on the lists. Additionally, Mr. Gilmore was included on one of the lists from which there were three appointments, but he declined the position. As a consequence of his declination, Mr. Gilmore was not included on the certification lists from which there were five additional appointments because these appointments were re-certifications of the same request number (21100202) that he declined.

Docket № 8626-2 at 2 ¶3.

### III
### A
### i

The Defendants believe they are entitled summary judgment on the following grounds:

- Gilmore's failure-to-promote claim is based, in part, on discrimination and, by definition, was settled as a result of his participation in the May 2001 Promotion Settlement.

- Gilmore failed to present any evidence that defendants denied him training, rotation, out-of-classification assignments or job assignment opportunities required by the Consent Decree or that he was individually harmed by the alleged denial thereof.

4

- Gilmore declined an offer of promotion to the CEM/TM classification.

- Gilmore failed to present any evidence that his failure to obtain promotion to the CEM/TM classification was caused by defendants' contempt.

Docket № 8429 at 8.

### ii

### a

Gilmore participated in the 2001 Promotion Class Settlement. Docket № 4700. The 2001 settlement provided that all non-contempt claims of race discrimination existing as of the May 29, 2001, the date of the settlement agreement's fairness hearing, including claims to instatement were settled.[2] Thus to the extent Gilmore contends that his denial of promotion to the CEM/TM classification was based, in part, on non-contempt racial discrimination,[3] he has

---

[2] The 2001 settlement agreement provides that "The claims released by the Promotion Class settlement are all individual non-contempt, non-grievance claims of Promotion Class Members for race discrimination seeking monetary relief, including, but not limited to, back pay, compensatory damages, and interest, and all individual non-contempt, nongrievance claims to instatement or other non-monetary relief for the period prior to the close of business on the day of the fairness hearing." Docket № 4700 at 41-42.

[3] Gilmore has not pointed to any evidence of contempt discrimination against him. He recounts in detail the general history of the defendants' contempt, but does not tie specific instances of alleged personal discrimination against him to the defendants' contempt.

5

been previously compensated for such claims through May 2001 by his participation in the promotion settlement class. Gilmore's claim, however, is not simply based on discrimination for he also contends that he was denied promotion as a result of the defendants' failure to comply with the training and rotation requirements of Article XVI of the Consent Decree.

**b**

The training requirements contained in Article XVI provide:

2. <u>Regular Training Courses</u>: During the term of this [Consent Decree], the State Highway Department will offer training courses to employees subject to and in accordance with the following subsections:

. . .

(b) The training courses to be offered to such employees are set forth in the attached Appendix ___ to this [Consent Decree] and a course or courses designed to clarify and update black employees on the procedures to be followed and qualifications, training, and experience to be credited in filling higher classified jobs within the Highway Department.

(c) The Highway Department will monitor the enrollment of employees taking training courses in order to ensure to the extent practicable that interested black employees are receiving their fair share of participation in such training courses.

(d) The training courses to be offered pursuant to the Training section of the [Consent Decree] will be started within 120 days after the effective date of the [Consent Decree] . . . .

3. The training courses provided for by this Article will be offered to the employees eligible therefore, with such employees having the option to accept or decline the training courses. Offers and declinations

of training opportunities shall be documented in writing and signed by the affected employee.

The evidence clearly establishes that Gilmore received regular training opportunities from 1995 through 2006. In all, he received 1,456 hours of training across 125 different courses. Docket № 8429-3 at 25 (page 80) and Docket № 8626-1 (Gilmore's State training Record). Gilmore applied for appointment to the CEM/TM classification in October 2000 and then again in January 2004.[4] Between 1995 and 2002, Gilmore received training in 96 different classes—76.8 % of all the classes taken by the claimant. Docket № 8626-1.

In his affidavit filed in response to defendants' motion for summary judgment, Gilmore claims he would have participated in more training opportunities had they been available. Docket № 8608-1 at ¶4. In his deposition, Gilmore identified two areas in which he would have sought additional training: asphalt, and material and tests. Docket № 8429-3 at 30 (pages 99-100). He conceded, however, that he failed to show up for an asphalt training course in October 2002 since he went to the wrong location for the class, and that he failed the same course in 2005. Moreover, Gilmore admitted in his deposition that he never requested training in the material and tests, and design subject areas identified in his deposition. Id. (pages 101-02).

---

[4] The Court did not approve the minimum qualifications for the CEM/TM classification until May 2002. Docket № 5891.

Gilmore has failed to produce evidence of a material fact in dispute related to his claims the defendants' failure to timely implement the Consent Decree's training requirements personally affected his CEM/TM promotion opportunities.

Moreover, it is also the case that Gilmore declined to be considered for promotion to five of six CEM/TM appointments in June 2003, a year and a half after he had been placed on the CEM/TM register, number 21100202. Docket № 8429-3 at 92. Once an offer of appointment from the certified register is declined by a candidate, that candidate is no longer eligible for appointment from that certified register. Docket № 8625 at 7 n.7. At least five appointments to the CEM/TM classification were made off the register from which Gilmore declined employment.

Gilmore contends in his affidavit that he did not decline appointment to the CEM/TM classification since he was willing to take the Assistant Materials Engineer CEM position. Docket № 8608-1 at ¶5. His alleged reason for declining the remaining five CEM positions in June 2003, (Docket № 8429-3 at 92), was because he "believed that persons had been preselected for these positions throughout of class assignments and that I would anger [ALDOT] by interviewing for those positions or because I had never performed job duties in those areas and had never had any rotation into them." Docket № 8608-1 at ¶5. Despite repeated opportunities to discuss such issues in his deposition, Gilmore never disclosed the "facts" described in his affidavit. *See* Docket № 8429-3 at 9 (page 17). Moreover,

8

Gilmore offers no evidence to support his allegations and conjuncture and as such Gilmore's claims are no more than speculation and so do not create an issue of fact. *Earley v. Champion Int'l Corp.* 907 F.2d 1077, 1081 (11th Cir. 1990)(conclusory allegations and assertions will not suffice to create material issues of fact).

The defendants have offered uncontradicted evidence that Gilmore limited his availability for appointment through his self-selected limitation of the counties where he was willing to accept appointment. Docket № 8429-3 at 19 (page 55). From the time the CEM/TM register was reestablished in November 2003 through the end of the Consent Decree in December 2006, there were 123 CEM/TM appointments from registers. Docket № 8429-3 at 12. Of the 123 CEM/TM positions, 95 were appointed when Gilmore was on the register and only 13 of those 95 appointments were made from the nine certification lists that corresponded with Gilmore's location preferences. As analyzed by the defendants' expert,

> Therefore, [Gilmore's] location preferences reduced his chance of being appointed . . . by 86%. . . . Mr. Gilmore was not included on the certification lists for three of the appointments because his score was lower than the lowest scoring candidate on the lists. Mr. Gilmore was included on one of the lists from which there were three appointments, but he declined the position. As a consequence, Mr. Gilmore was not included on the certification lists from which there were five additional appointments because these appointments were re-certification of the same requested number (21100202 that he declined.

Docket № 8429-3 at 15.

Finally, Gilmore testified that he had no evidence that he would have been more qualified to the CEM/TM position had he received the training and rotation appointments he now seeks than the persons ultimately appointed. Id. at 31 (page 104-05). The evidence produced by Gilmore does not establish the existence of material questions of fact. The defendants are entitled to summary judgment on Gilmore's training claim.

c

Gilmore alleges that he was denied opportunities to work out-of-classification in two job classifications—Transportation Technologist Sr. Project Manager, and Civil Engineer Administrator. Id. at 32 (page 105-06). The out-of-classification and assignment of duties requirements are set forth in Article 14, ¶2 of the Consent Decree, which provides, in part:

> ARTICLE 14
>
> 2. Assignment of duties:
>
>> (a) To the extent practicable, the duties and responsibilities of higher classified jobs will be assigned on a proportionately equal basis to black employees compared with white employees in the same lower classified jobs.
>>
>> (b) The Highway Department will to the extent practicable not assign duties in such a way that any employee will gain an advantage in promotions, including reclassification, over other employees in the same classification.

Gilmore identified two white ALDOT employees who he claims were allowed to work out-of-classification, Jeff Powell and Johnny Lawrence. Docket № 8429-3 at 33 (page 111 Powell and at 34 (page 116 Lawrence). The fact that Gilmore did not receive an out-of-classification appointment does not state a violation of the Consent Decree unless Gilmore can establish that similarly situated white employees had an advantage or were treated differently than he. No evidence was introduced that the two white ALDOT employees were similarly situated to Gilmore or that they gained an advantage by virtue of their out-of-classification work opportunities.

Powell worked in a different ALDOT district than Gilmore and Gilmore had no information about Powell's out-of-classification assignment other than he worked the assignment for a short period of time. Id. at 33 (pages 113-14). Gilmore was unable to offer any evidence about Lawrence other than the fact that he may have performed the duties of an acting district engineer.

> Q. So, you say that Johnny Lawrence in '98, '99 was performing job duties as an Acting District Engineer in the first district?
>
> A. If I recall correctly.
>
> Q. . . . Do you know what job classification he was in at the time?
>
> A. No.

Docket № 8429-3 at 34 (page 117).

11

In his affidavit, Gilmore asserts that "ALDOT and SPD assigned mostly white employees in the Civil Engineer classification to any open Civil Engineer Manager jobs as . . . out of classification assignments," and that "[t]hose white employees were then usually appointed to HMS." Docket № 8602-2 at ¶3. Gilmore's assertion does nothing to establish the existence of contested material facts. He provides no evidence to substantiate his claims, not names of these alleged white employees—other than perhaps the ALDOT employees previously identified—no basis for finding that the "white employees" described were similarly situated to Gilmore, not even the specific positions to which the alleged employees were assigned. Gilmore's assertions are simply unsupported by the record. *See Adkins v. Hospital Auth. of Houston County*, 2006 WL 1174446 *8 (M.D. Ga. May 2, 2006) ("Rumors, conclusory allegations and a plaintiff's subjective beliefs about the conduct of allegedly 'similarly situated' individuals 'are wholly insufficient evidence to establish a claim of discrimination as a matter of law.'")(citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992)).

### d

Gilmore's participation in the Employee Development Program satisfied the rotation requirements contained in Article XIV of the Consent Decree. Docket № 7899 at 21 ("The EDP module rotation system satisfies the requirements of Article XIV by ensuring that each participating employee is exposed to the range of duties

and assignments that will best prepare that employee for promotion in his or her natural career path.")(adopted, in part, by the District Court in Docket № 7969, Supplemental Special Master Report and Recommendation on Compliance with Article XIV, adopted by the District Court in Docket № 8134).  Gilmore enrolled in the EDP program in his current Transportation Technologist job in February 2002 and completed the same in October 2004.  Docket № 8429-3 at 26 (page 85).

Although a lack of training and job rotation can affect performance on job examinations, the fact that Gilmore was listed on at least two CEM/TM registers, (Docket № 8429-3 at 59-60),  before he completed the EDP shows that he was qualified and able to meet the CEM/TM requirements prior to fully completing the program.  Despite Gilmore's claims that he would have been better prepared for the CEM/TM examination had he received additional  rotation assignments, he offers no specific evidence to substantiate that claim.

## IV

**ACCORDINGLY**, it is Recommended that the defendants' Motion For Summary Judgment, Docket № 8429, be GRANTED.

Objections to this Report and Recommendation must be filed with the Clerk of Court by July 31, 2011.  Failure to file objections in a timely manner constitutes a waiver of the right to review by the District Court.

IT IS SO RECOMMENDED this 28th day of June 2011.

/s/ C. A. González
SPECIAL MASTER