IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY REYNOLDS, *et al.*,      )
                                )
            Plaintiffs,         )
                                )
      v.                        )   CASE NO. 2:85-CV-665-WKW
                                )              [WO]
ALABAMA DEPARTMENT OF           )
TRANSPORTATION, *et al.*,       )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This action comes to the undersigned in a unique procedural posture after more than a decade of inaction with respect to an unresolved sanctions issue.  Over fourteen years ago in this nearly thirty-year-old case, on March 29, 2000, a panel of the Eleventh Circuit issued an immediate mandate to a prior "chief judge of the Middle District of Alabama [to] assign the case to himself or another district judge (other than Judge Thompson) for the purpose of enabling plaintiffs' counsel to show cause why section 1927 sanctions should not be awarded to the Adams Intervenors."  (Doc. # 4390.)  Judge Ira DeMent, the district judge who was tasked by the chief judge to fulfill the mandate, dutifully and promptly entered orders, requiring counsel for Plaintiffs to submit a written response and evidence relevant to the Eleventh Circuit's *sua sponte* sanctions inquiry.  At the same time, the

district judge "emphasize[d] that it [was] not the function of this court to determine whether or not sanctions should be assessed but simply to give counsel for Plaintiffs an opportunity to show cause why they should not be assessed by the Eleventh Circuit." The culmination of the show-cause proceedings in the district court resulted in the filing of "briefs and a smorgasbord of evidentiary materials, including affidavits, depositions and a 19.5 pound box of exhibits," and a finding that the written submissions were adequate without the need for an evidentiary hearing. (Doc. # 4889.) The district judge then entered an Order on March 28, 2001, certifying the show-cause filings and exhibits to the Eleventh Circuit.

Counsel for Plaintiffs appealed the district judge's Order, and the appeal was assigned to a different three-judge panel ("sanctions appeal"). Counsel for Plaintiffs argued that the district judge had failed to comply with the mandate by denying them a hearing and declining to enter findings on the § 1927 sanctions issue. In their appellate briefs, Defendants and the Adams Intervenors argued that the prior panel had reserved for itself the final decision as to whether to impose § 1927 sanctions against counsel for Plaintiffs and that there was no final or appealable order. The panel assigned to the sanctions appeal dismissed it on grounds that the "district court's March 28, 2001, order, issued in response to this Court's March 29, 2000, order giving instructions regarding sanctions pursuant to 28 U.S.C. § 1927, did not resolve the sanctions issue and, thus, is not final." That

2

was on October 24, 2001.  The sanctions issue lay dormant in the district court –

with no request from any party that the district court take any action on the § 1927

sanctions issue – until more than a decade later.

On February 14, 2012, Defendants ALDOT and the State Personnel

Department filed a motion with Chief United States District Judge W. Keith

Watkins.   In that motion, Defendants contended that the "ALDOT remains

interested in pursuing its interest in having Plaintiffs' counsel assessed sanctions

pursuant to 28 U.S.C. § 1927, so that ALDOT may recoup some of the money it

paid to the Adams Intervenors for their attorneys' fees incurred as a result of

Plaintiffs' counsels' actions relating to this issue."   (Doc. # 8791, at ¶ 33.)

Defendants moved for a status conference "for the purpose of appointing a new

judge" (other than Judge Thompson) to resolve the § 1927 sanctions issue, to

permit "the ALDOT to be heard as the Real Party in Interest" on the sanctions

issue, and for a new district judge "to take the next procedural step in the light of

the Eleventh Circuit's rulings."[1]  (Doc. # 8791.)  The requested status conference

was held on March 22, 2012.  This Memorandum Opinion and Order explains why

Defendants are not entitled to the relief they request.

---

[1] The assignment of a new district judge to handle the sanctions issue has been requested based upon the death of Judge DeMent in July 2011.

## II.   BACKGROUND

### A.   **Summary of *Reynolds*[2]**

Almost three decades ago, in 1985, a number of current and former African-American employees and job applicants brought a class-action suit against the Alabama Department of Transportation ("ALDOT"), alleging race discrimination with respect to certain employment actions.  The named Plaintiffs sought monetary and injunctive relief under 42 U.S.C. §§ 1981, 1983, and 2000e.  In 1986, the Honorable Myron H. Thompson, the district judge assigned to the case, certified three Plaintiff classes.  In November 1993, the parties reached a partial settlement in the form of a proposed consent decree.  This proposed consent decree provided a range of prospective class-wide injunctive relief, such as hiring and promotion quotas and set-asides for African-Americans, an aggressive recruiting campaign at historically black institutions of higher education, and a grievance procedure for existing employees.  The parties presented the proposed consent decree to Judge Thompson, who set the matter for a hearing in January 1994.

Prior to that hearing, a group of Caucasian employees of the ALDOT (the "Adams Intervenors") moved for leave to intervene on behalf of the ALDOT's

---

[2]  This opinion is not about the entire sea of *Reynolds*, as *Reynolds* is assigned to another district judge of this court.  This opinion is only about one grain of sand on the *Reynolds* beach – the § 1927 sanctions issue.  But some background on *Reynolds* is helpful for context.  The summary is adapted from Defendants' well-written, concise overview of the long-running *Reynolds* litigation.  (*See* Doc. # 8791.)  The summary is not meant to be a comprehensive review.

non-African-American employees in order to challenge the race-conscious provisions of the proposed consent decree, including the quota requirement for all job classifications at the ALDOT.   Judge Thompson granted the Adams Intervenors' motion for leave to intervene and eventually certified a class consisting of the ALDOT's non-African-American employees.

At the hearing on the proposed consent decree, after numerous objections were raised, the parties withdrew the proposal and resumed negotiations. Thereafter, the parties submitted a revised consent decree, "Consent Decree I." After another hearing at which no one appeared to raise objections to Consent Decree I, Judge Thompson approved it and adopted it in full in March 1994.

Consent Decree I contained a series of articles that revamped the processes by which the ALDOT hires, promotes, classifies, and pays its employees.   It created new qualifications and procedures for hiring and promotions at the ALDOT.   Part of Consent Decree I included a study of ALDOT employees to determine if any were being assigned duties associated with a higher job classification, and if so, to reclassify such employees.   Another part of Consent Decree I contained a grievance procedure that individual employees could use to assure all discrimination complaints were processed quickly and without retaliation.

By 1996, a number of African-American employees of the ALDOT had filed grievances in which they alleged that the ALDOT had assigned them out-of-classification duties. Each sought back pay and a provisional appointment to the position for which he was performing the duties. At least two of these grievances eventually made their way to the district court for a ruling. The district court ordered back pay and issued an injunction requiring the provisional appointments for the grievants.

By late 1996, three white employees of the ALDOT also had filed grievances alleging that they too had been assigned duties outside of their job classifications in violation of Consent Decree I. They successfully invoked the grievance procedures in the *Reynolds* Consent Decree I and obtained awards from an EEO monitor of provisional appointments to higher-paid positions and back pay. Plaintiffs' counsel filed a motion for preliminary injunction to enjoin the ALDOT from implementing the relief awarded to the Adams Intervenors, which the district court granted. The Adams Intervenors appealed from the issuance of the preliminary injunction prohibiting Defendants from implementing the back pay and provisional appointments awarded to the three white employees.

## B.    Procedural Time Line

The procedural time line with respect to the discrete § 1927 sanctions issue, which is the sole matter before this court, is important. The following is a detailed

6

chronology of that history.  The history begins with the Eleventh Circuit's **March 29, 2000** mandate in the Adams Intervenors' appeal.

### 1.    *The Eleventh Circuit's Mandate*

The § 1927 sanctions issue arises out of the Adams Intervenors' appeal and the mandate issued in *Reynolds v. Roberts*, 207 F.3d 1288 (11th Cir. 2000) [Appeal No. 97-6347].   In *Reynolds*, the Eleventh Circuit held that the provisions of Consent Decree I are race neutral and that the benefits of those provisions are available to all employees regardless of race.  The Eleventh Circuit found that Plaintiffs' counsel "invited the error the district court committed when it entered the preliminary injunction barring the [ALDOT] from affording the three white grievants the provisional appointments and backpay the EEO Monitor awarded to them."  *Id.* at 1301.  It also concluded that Plaintiffs' counsel "attempted to defend the district court's ruling on appeal with baseless arguments."  *Id.*

A majority of the three-judge panel in *Reynolds* concluded that Plaintiffs' counsel's efforts to "prevent[ ] the three white grievants from obtaining provisional appointments and back pay" and proceeding "as if the white grievants had done something unlawful by invoking the race-neutral complaint procedure," was an "abuse" of the "judicial process" that "was as gross as any we have encountered." *Id.*  Consequently, the Eleventh Circuit *sua sponte* addressed its authority to issue § 1927 sanctions against Plaintiffs' counsel, stating that:

> We have also considered whether we have the authority under 28
> U.S.C. § 1927 (1994) to award these [Adams] intervenors "excess
> costs, expenses, and attorneys' fees reasonably incurred" because of
> counsel's conduct.  The courts of appeals have section 1927 authority.
> Counsel subject to section 1927 sanctions are entitled to be heard
> regarding the matter; accordingly, on receipt of the mandate, the chief
> judge of the Middle District of Alabama will assign the case to
> himself or another district judge (other than Judge Thompson) for the
> purpose of enabling plaintiffs' counsel to show cause why section
> 1927 sanctions should not be awarded to the Adams Intervenors.

*Id.* at 1301–02; (*see also* Doc. # 4390.)[3]   The Eleventh Circuit also directed

immediate issuance of the mandate.

### 2.   *District Court Proceedings*

On **April 11, 2000**, after receipt of the immediate mandate, Chief Judge W.

Harold Albritton assigned Judge Truman M. Hobbs the case "for the limited

purpose of enabling Plaintiffs' counsel to show cause why sanctions under 28

U.S.C. § 1927 should not be awarded to the Adams Intervenors."  (Doc. # 4395.)

On **May 5, 2000**, Chief Judge Albritton entered an Order reassigning this

case to Judge Ira DeMent "for the limited purpose of consideration of sanctions

issues on remand from the Court of Appeals."

On **May 23, 2000**, Judge DeMent entered an Order, reciting the nature of the

limited remand and setting a briefing schedule to permit counsel for Plaintiffs to

---

[3]   The third judge on the panel, U.S. District Judge Richard W. Story, sitting by
designation, dissented from the sanctions section of the court's opinion, stating:  "I would not
impose sanctions.  Though plaintiffs' counsel sought the wrong form of relief, they were
attempting to be vigilant in protecting their client's rights rather than being unreasonable and
vexatious."  207 F.3d at 1302–03.

"show cause . . . as to why § 1927 sanctions should not be awarded to the Adams intervenors."  (Doc. # 4456.)

On **May 30, 2000**, Judge DeMent entered an Order vacating the briefing schedule, upon counsel for Plaintiffs' motion, based upon the pendency of a petition for rehearing and rehearing *en banc* pending in the Eleventh Circuit.  (Doc. # 4464.)

On **January 3, 2001**, which was after the Eleventh Circuit had denied counsel for Plaintiffs' application for rehearing and rehearing *en banc*, Judge DeMent entered an Order with a new briefing schedule.  The Order required counsel for Plaintiffs to "show cause . . . as to why § 1927 sanctions should not be awarded to the Adams intervenors" and "invited" counsel for Plaintiffs to submit "affidavits and any other admissible evidence."  (Doc. # 4680, at 4.)  Judge DeMent also permitted counsel for the Adams Intervenors to file a response, "*if desired*."  (Doc. # 4680, at 4 (citing *Braley v. Campbell*, 832 F.2d 1503, 1515 (10th Cir. 1987) (observing that, "[i]f the court has acted *sua sponte*, the prevailing party should be notified that it may, but need not, participate in the proceedings to determine whether sanctions should be imposed").)  The Order also "emphasize[d] that it is not the function of this court to determine whether or not sanctions should be assessed but simply to give counsel for Plaintiffs an opportunity to show cause why they should not be assessed by the Eleventh Circuit."  (Doc. # 4680, at 4.)

9

The Order concluded by providing that after receiving the evidence, "the court w[ould] notify the parties if it deem[ed] necessary further briefing, oral argument and/or an evidentiary hearing." (Doc. # 4680, at 5.)

On **January 17, 2001**, counsel for Plaintiffs filed a motion, requesting, among other relief, a hearing on the § 1927 sanctions issue. Counsel for Plaintiffs noted that the January 3, 2001 Order provided that a hearing would be held only if the court deemed one necessary after reviewing the written submissions. Counsel for Plaintiffs argued that "the issues here are of such magnitude and of such import tha[t] an evidentiary hearing is essential to a full and fair presentation of their response to the order to show cause, and such a consideration can only be achieved by an *ore tenus* hearing." (Doc. # 4706, at 2.) Counsel for Plaintiffs named as potential witnesses an expert on legal ethics, representatives of opposing parties, the plaintiffs in prior proceedings, and Judge Thompson. They argued that without testimony from these witnesses, "counsel is at risk of being sanctioned for conduct that they are satisfied did not occur." (Doc. # 4706, at 2.) Also on **January 17, 2001**, Plaintiffs' counsel filed an evidentiary submission, which included counsel for Plaintiffs' affidavit, "seven volumes of exhibits," and declarations from three employees. (Doc. # 4709.)

On **January 30, 2001**, the ALDOT filed a motion to intervene on grounds that it "already ha[d] paid the attorneys' fees of the Adams Intervenors' counsel

10

pursuant to an Attorneys' Fees Agreement dated February 20, 1996." The ALDOT contended that "any sanction that is measured in terms of the attorneys' fees incurred by the Adams Intervenors should result in repayment of these amounts to [it]." The ALDOT asserted that it was "the real party in interest in these proceedings in terms of recovery of attorneys' fees." The ALDOT limited its "intervention request . . . to intervening for the purpose of recovering the attorneys' fees it ha[d] paid to the Adams Intervenors." (Doc. # 4737.)

On **January 31, 2001**, Judge DeMent entered an Order denying Plaintiffs' motion for an evidentiary hearing "at this time." The Order provided that the court would "notify the parties if it deem[ed] necessary an evidentiary hearing." The Order permitted the parties to file written statements from the witnesses proposed by counsel for Plaintiffs in a prior filing and extended the submission deadlines for all parties. (Doc. # 4748.)

Also on **January 31, 2001**, Judge DeMent entered an Order denying the ALDOT's motion to intervene. Judge DeMent concluded that the ALDOT "must address the United States Court of Appeals for the Eleventh Circuit with its request to intervene."[4] (Doc. # 4746.)

---

[4] Several discovery motions and motions for extension of time were filed and ruled on by Judge DeMent, but more detail as to these motions is not necessary for resolution of the present issue. (*See, e.g.*, Docs. # 4717, 4733, 4738, 4745, 4764, 4765, 4768, 4771, 4772.) Plaintiffs' counsel also filed additional evidence. (Doc. # 4766.)

11

On **March 1, 2001**, the final submission on the sanctions issue was filed. (Doc. # 4821 (Adams's Intervenors' "final reply").)

On **March 28, 2001**, Judge DeMent entered an Order providing that

> the court, as instructed by the Eleventh Circuit, has given Plaintiffs' counsel an opportunity to be heard on the issue of whether or not § 1927 sanctions should be assessed against them and awarded to the Adams intervenors.  Plaintiffs' counsel filed briefs and a smorgasbord of evidentiary materials, including affidavits, depositions and a 19.5 pound box of exhibits.

(Doc. # 4889.)   The Order further provided that, based upon a review of all submissions on the sanctions issue, further briefing, oral argument, and an evidentiary hearing were unnecessary.   Accordingly, Judge DeMent ordered the Clerk of the Court to certify the pleadings and exhibits filed in connection with the show-cause proceedings to the Eleventh Circuit.   (Doc. # 4889 (listing docket entries for certification).)   The district court's docket reflects that the certified record was transmitted to the Eleventh Circuit on **April 2, 2001**.

### 3.   *Back to the Eleventh Circuit*

On **April 18, 2001**, counsel for Plaintiffs filed a notice of appeal with the Eleventh Circuit, appealing "from the judgment or collateral order entered in this action on the 28th day of March, 2001, finding and adjudicating that appellants are not entitled to a hearing on the issues before the District Court, and otherwise failing to comply with the mandate of the Court of Appeals which directed that the

Court conduct a hearing, receive evidence, and make reviewable findings of fact on the issue of sanctions."  (Doc. # 4941.)

A different three-judge panel was assigned the appeal.  The panel consisted of Judges Edmondson, Barkett, and Wilson.

On **August 6, 2001**, Defendants, which included the ALDOT, filed their appellate brief in which they joined the Adams Intervenors in urging the Eleventh Circuit to dismiss the appeal on grounds that it was "**not** final or appealable."  (*See* Doc. # 8805-1 (emphasis in original).)  Defendants reasoned, first, that Judge DeMent's March 28, 2001 Order "simply certified an evidentiary record to th[e Eleventh Circuit] for purposes of further proceedings" in the circuit and, second, that an interlocutory order imposing sanctions is not appealable.  (Doc. # 8805-1, at 11.)  Defendants argued on appeal that "it could not be more clear that this Court [the Eleventh Circuit] intended to reserve to itself the final decision as to imposition of sanctions" against Plaintiffs' counsel pursuant to § 1927.  Because the *Reynolds* opinion, according to Defendants, "plainly indicated an intent for this Court to make the final determination as to sanctions, it was unnecessary for the opinion to expressly reserve jurisdiction."  (Doc. # 8805-1, at 32.)  Defendants argued, alternatively, that, "[e]ven if th[e Eleventh Circuit] had divested itself of jurisdiction over the sanctions issue, and Judge DeMent's order certifying the evidentiary record was therefore ineffective, appeal of the order would still have to

13

wait final resolution of all other issues in the case." (Doc. # 8805-1, at 32–33.) Defendants further contended that they had a "direct interest" in the sanctions inquiry based on counsel for Plaintiffs' argument that the Adams Intervenors incurred no "excess costs, expenses, and attorneys' fees" within the meaning of § 1927 because the ALDOT had paid the Adams Intervenors' fees and expenses pursuant to a 1996 fee arrangement.

In an Order entered on **October 24, 2001**, the panel reviewing the sanctions appeal granted the Adams Intervenors' motion to dismiss the appeal. The Order reads:

> Appellees' motion to dismiss is GRANTED, and this appeal is DISMISSED. The district court's March 28, 2001, order, issued in response to this Court's March 29, 2000, order giving instructions regarding sanctions pursuant to 28 U.S.C. § 1927, did not resolve the sanctions issue and, thus, is not final. See 28 U.S.C. § 1291; Delaney's Inc. v. Illinois Union Ins. Co., 894 F.2d 1300, 1304–05 (11th Cir. 1990).

(Doc. # 5343.)

### 4.    *More than a Decade of Dormancy in the District Court*

After the second panel's dismissal of the appeal on **October 24, 2001**, neither the district court nor any party – not counsel for Plaintiffs, not the Adams Intervenors, and not Defendants – took any action on the § 1927 sanctions issue. On **July 11, 2003**, however, counsel for all parties received correspondence from the Eleventh Circuit Clerk of the Court. By letter dated **July 11, 2003**, the

14

Eleventh Circuit Clerk issued the following memorandum to "counsel or parties"

concerning Appeal No. 97-6347 (*Reynolds*):

> Part of the Court's mandate in this case required the district court to
> hold a hearing to enable "plaintiffs' counsel to show cause why [28
> U.S.C.] section 1927 sanctions should not be awarded to the Adams
> Intervenors."   The Court directs counsel to send the Court a letter
> within fourteen (14) days informing the Court of the status of the
> show cause proceedings.   Specifically, the Court wants to know
> whether the district court held the show cause hearing, and, if so,
> whether counsel tendered a lawful explanation for the conduct the
> Court's opinion condemned (in the first paragraph of part III).

(Doc. # 8805-2 (Ex. 2).) [5]

The parties responded to the Eleventh Circuit Clerk's letter, outlining the

chronology of the show-cause proceedings in the district court.   The Adams

Intervenors also advised the Eleventh Circuit that their fees for the *Reynolds*

grievance proceedings (and the show-cause proceedings) had been paid by the

ALDOT pursuant to a separate fee agreement between Defendants and the Adams

Intervenors.   Of particular relevance to the present proceedings, Defendants took

the position that "Judge DeMent appropriately confined his inquiry to the issue of

whether sanctions were warranted."   (Defs.' Letter 6.)   Defendants continued:

"[Judge DeMent's] scheduling orders did not provide for argument or evidentiary

---

[5] The Eleventh Circuit Clerk's July 11, 2003 letter was not addressed or copied to the
district court.  The district court also is not included in the "cc" section of counsel's letters
responding to the Eleventh Circuit Clerk, and there is no indication or suggestion in the record or
from the parties that the district court received a copy of this letter.  The Clerk's letter is
attached, however, as an exhibit to Document Number 8805, which is Plaintiffs' response to
Defendants' February 2012 request for a status conference.

submissions concerning the type of sanctions or the amount of any monetary sanctions that might be appropriate.  If this Court determines that sanctions are warranted, it presumably will establish procedures for such submissions or remand the case for further proceedings in that regard."[6]  (Defs.' Letter 6.)

On **January 31, 2005**, there is a docket text notation in the district court's electronic record that reads:  "Appeal Record Returned from USCA re 97-6347-HH."  The docket text notation was entered by a clerk's office employee in the Middle District of Alabama.  The electronic file contains no accompanying order, mandate, or other directive from the Eleventh Circuit.

Nothing occurred in the district court on the sanctions issue until seven years later on **February 14, 2012**, when Defendants filed the instant motion for a status conference, seeking resolution of the § 1927 sanctions issue by the district court. The undersigned entered an Order on **March 1, 2012**, setting an on-the-record status conference for **March 22, 2012**, and further directing Plaintiffs and the Adams Intervenors to file responses to the motion.

In their response, Plaintiffs argue that the district court does not need to reach the substantive sanctions issue.  (Doc. # 8805.)  They contend that the district court should not conduct any further proceedings on or resolve the § 1927 sanctions issue for a number of reasons, including that (1) Defendants waived any

_____

[6] Counsel for Defendants tendered copies of the letters at the March 22, 2012 hearing before the undersigned, and the letters have been placed into the record (Doc. # 9044).

claim to pursue § 1927 sanctions against Plaintiffs' counsel, (2) the Eleventh Circuit retained jurisdiction to determine the issue of sanctions, (3) Judge DeMent "fully complied" with the mandate "by assembling an extensive evidentiary record" and "certifying that record back to the Court of Appeals for it to decide the issue of sanctions," (4) Defendants are judicially estopped from changing their litigation position after more than a decade to argue that the district court, rather than the Eleventh Circuit, must decide whether the Adams Intervenors are entitled to an award of § 1927 sanctions, (5) Defendants waived any right to intervene by not asking the Eleventh Circuit in 2001 for leave to intervene, as Judge DeMent's March 28, 2001 Order required, (6) Defendants' present request to intervene is "inherently untimely," and (7) the administrative return of the record to the district court in 2005 is not tantamount to a second remand.

The Adams Intervenors' response focuses less on legal doctrine and more on surprise because "[t]he filing of this motion [for a status conference] is the first indication in many years that 'ALDOT remains interested in pursuing its interest in having Plaintiff's counsel assessed sanctions.'" (Doc. # 8800 ¶ 6.)  The Adams Intervenors represent that "many years ago, the former lead counsel for the State defendants informed the undersigned that the State defendants had affirmatively determined not to pursue the matter of § 1927 sanctions further." (Doc. # 8800, at ¶ 6.)  Additionally, after remarking that this never-ending litigation bears

17

marked similarities to the litigation decried in Charles Dickens's *Bleak House*, the Adams Intervenors make a plea, "welcom[ing] any assistance the Chief Judge may provide in facilitating a resolution of any and all remaining matters in this litigation." (Doc. # 8800, at 5.) The Adams Intervenors' brief makes no request one way or the other that the district court should resolve or not resolve the sanctions issue. The undersigned court held the status conference on **March 22, 2012**, and took the matter under advisement.

## III. DISCUSSION

"The principle that the passage of time can preclude relief has deep roots in our law, and th[e] Supreme Court has recognized this prescription in various guises." *City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 217 (2005). That principle applies here, but admittedly, the reasons justifying the preclusion of relief do not fit perfectly into any one equitable guise. Nonetheless, for the reasons that follow, based upon Defendants' eleven years of inaction in the district court, coupled with their action in the Eleventh Circuit that is inconsistent with their present position,[7] the concepts of waiver, judicial estoppel, and laches, whether considered individually or cumulatively, present a clear bar to the relief

---

[7] Defendants are not the only parties to change legal positions in the long respite from sanctions activities. In 2001, Plaintiffs appealed Judge DeMent's resolution, on grounds entirely opposite to their arguments here. The passage of time is the modifier.

Defendants now request to have the § 1927 sanctions issue proceed further in the district court.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation and internal quotation marks omitted). As to judicial estoppel,

> where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citation and quotation marks omitted). Finally, to establish laches, it must be shown that (1) there was a delay in asserting the right or claim, (2) the delay was not excusable, and (3) the delay caused undue prejudice. *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005).

Beginning with discussion of the equitable doctrine of waiver, Defendants' prior conduct indicates that any right that the ALDOT may have had to advocate for the imposition of § 1927 sanctions against counsel for Plaintiffs has been abandoned. In his March 8, 2012 filing with this court, counsel for the Adams Intervenors, Raymond Fitzpatrick, Jr., represented that "[m]any years ago, the former lead counsel for the State defendants informed the undersigned that the

19

State defendants had affirmatively determined not to pursue the matter of § 1927 sanctions further."  According to Mr. Fitzpatrick, Defendants' filing on February 14, 2012, was the "first indication in many years" that the ALDOT still was pursuing its interest in the assessment of § 1927 sanctions against Plaintiffs' counsel.  (Doc. # 8800, at 2.)  At the status conference held on March 22, 2012, Defendants' new counsel[8] did not question the veracity of Mr. Fitzpatrick's representation but nonetheless emphasized the absence of a writing or open-court admission in which Defendants had abandoned their pursuit of § 1927 sanctions. While this criticism is noted, the court is persuaded that Mr. Fitzpatrick's representation amounts to sufficient evidence of the ALDOT's abandonment, absent authority from Defendants demonstrating the contrary.  Moreover, Defendants overlook that a waiver can be implied by conduct.  *Cf. Edwards v. Allied Home Mortg. Capital Corp.*, 962 So. 2d 194, 209 (Ala. 2007) ("A party's intent to waive a right may be found from conduct that is inconsistent with the assertion of that right.").  And, in this instance, the ALDOT's silence speaks louder than words.

The ALDOT's conduct is its inaction in the district court for more than a decade (ten years, three months, and twenty-two days to be exact).  Namely, from October 24, 2001 – the date the second panel dismissed the sanctions appeal – to

---

[8] Defendants reignited the § 1927 sanctions issue with new counsel, who made her first appearance in this action on January 9, 2012.  (Doc. # 8769.)

February 14, 2012, there is not a single filing in the district court's record from the ALDOT requesting any form of relief on the § 1927 sanctions issue.[9]  This lengthy period of record silence, coupled with former counsel for Defendants' notification to Mr. Fitzpatrick of the ALDOT's decision not to continue to advocate for the imposition of § 1927 sanctions, is inconsistent with Defendants' present position and indicates an abandonment of any right Defendants may have had in having § 1927 sanctions assessed against counsel for Plaintiffs.

At the very least, Defendants' conduct before the Eleventh Circuit amounts to a waiver of any right to argue that resolution of the § 1927 sanctions issue is for the district court.  Back in October 2001, during the sanctions appeal, Defendants argued to the Eleventh Circuit that "it could not be more clear that this Court [the Eleventh Circuit] intended to reserve to itself the final decision as to imposition of sanctions" under § 1927 against Plaintiffs' counsel, and that the mandate "plainly indicated an intent for this Court [the Eleventh Circuit] to make the final determination as to sanctions."  (Doc. # 8805-1, at 32.)  Defendants posited that Judge DeMent had complied fully with the mandate, that the matter now was in the hands of the first panel, and that the first panel had retained jurisdiction to decide the sanctions issue.  Then, again in July 2003, in their response to the Eleventh Circuit Clerk's letter inquiring about the status of the § 1927 sanctions issue,

---

[9] As of July 16, 2014, there are 9,045 filing entries in the district court in *Reynolds*.  Since the sanctions issue was raised by the circuit court in 2000, there have been 4,655 filings.

Defendants similarly asserted that, if based on the certified record from the district court, the Eleventh Circuit "determines that sanctions are warranted, it presumably will establish procedures for such submissions or remand the case for further proceedings in that regard." (Def.'s Letter, at 6.) Against the backdrop of Defendants' conduct in the Eleventh Circuit, their more-than-a-decade of silence in the district court similarly indicates abandonment of any right Defendants had to advocate for the resolution of the § 1927 sanctions by the district court.

Defendants' conduct before the Eleventh Circuit also raises judicial estoppel concerns insofar as Defendants contend that there is more for the district court to do on the § 1927 sanctions issue. Defendants argued during the sanctions appeal that the Eleventh Circuit's mandate implicitly reserved jurisdiction over the final § 1927 sanctions decision and that the "mandate . . . did not direct the district court to determine whether sanctions were appropriate, much less to determine the amount of sanctions." (Doc. # 8805-1, at 22, 27) Defendants' arguments, at least to some degree, garnered the support of the second panel in that Defendants were able to achieve the result for which they were advocating, namely, a dismissal of the sanctions appeal on grounds that Judge DeMent's March 28, 2001 Order was not final or appealable. (Doc. # 5343.) For more than a decade, Defendants have not challenged Judge DeMent's March 28, 2001 ruling, including in their arguments to the circuit. But now, contrary to the position they advocated in 2001

22

and 2003 before the circuit, Defendants argue that this court must forge ahead and resolve the sanctions issue once and for all.   (*See* Doc. # 8791, at 8–9.) Defendants' current position clearly is inconsistent with the position Defendants advocated on appeal.

Defendants do not dispute that their litigation position has changed, but at the March 2012 status conference, they offered three justifications for that change. First, Defendants argue that a decade ago they had a "good relationship" with counsel for the Adams Intervenors and that the Adams Intervenors had been advocating for the award of attorney's fees as sanctions against Plaintiffs' counsel, even though they had been made whole on those fees.  Defendants point out that the relationship is not as cooperative now that they are no longer paying the Adams Intervenors' attorneys' fees.  Hence, Defendants contend that there is no longer an Adams advocate working on their behalf for the imposition of sanctions. Defendants' argument, however, represents the type of change in conduct that judicial estoppel was designed to prevent – a change in position "according to the exigencies of the moment."  *New Hampshire*, 532 U.S. at 750.  That things have changed does not provide adequate grounds to avert the application of judicial estoppel.

Second, Defendants justify their change in position on grounds that there has been a "lack of clarity" about what the first panel's mandate meant, but that the

July 2003 letter from the Eleventh Circuit Clerk made it "absolutely clear" that the district court, at the very least, was supposed to have a hearing on the § 1927 sanctions issue and that the Eleventh Circuit's return of the record to the district court on January 31, 2005 was a "second remand." They further assert that, "[d]espite this second Remand, neither Judge DeMent, nor any other judge, took any further action to resolve the issue relating to the appropriateness of sanctions against Plaintiffs' counsel." (Doc. # 8791 ¶ 31.) But Defendants' argument assumes too much.

The Eleventh Circuit Clerk's July 2003 letter was not addressed to the district court, but rather to the parties and counsel, and there is no indication from the face of the letter that a copy of the letter was provided to the district court. Moreover, the fact of the record's return to the district court in 2005 merely is contained in a docket notation in the district court's electronic files. The entirety of the docket notation, which was entered by a clerk's office employee, reads "Appeal Record from USCA re 97-6347-HH (ydw)." There is no judgment, no opinion, no reference to the July 2003 letter, no pronouncement that Judge DeMent violated the first panel's mandate in 2001, and simply no directive at all. *Cf.* Fed. R. App. P. 41 (defining the mandate). There is nothing – set out formally or informally – indicating that the Eleventh Circuit expected the district court to do or not to do something after the return of the record in 2005. Defendants' present

characterization also begs the question of why they waited more than seven years – from January 2005 to March 2012 – to inform the district court of their belief that the January 2005 return of the record was a second remand requiring the district court to hold a hearing and resolve the § 1927 sanctions issue.

Moreover, although Defendants' position that there has been a lack of clarity during these proceedings about what "the Eleventh Circuit intended to happen" is understandable, it is notable that Defendants have not contended that they ever sought clarification from the Eleventh Circuit. *Cf. U.S. Cartridge Co. v. Powell*, 186 F.2d 611, 614 (8th Cir. 1951) ("It was not until [remand] that the possible ambiguity of the opinion became a probable source of difficulty in the retrial of the cause. It was then appropriate  . . . that request for clarification be made."); *Dilley v. Alexander*, 627 F.2d 407, 410–413 (D.C. Cir. 1980) ("A motion for clarification was the proper means to invoke the court's power to recall its mandate for the purpose of making clear what relief it had intended to award.").  Nor is there any indication in the record that Defendants argued to the Eleventh Circuit that Judge DeMent misinterpreted its mandate. *Cf. Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985) ("If the trial court fails fully to implement the mandate, the aggrieved party may apply to the appellate court for enforcement, by petitioning for a writ of mandamus.").

Third, Defendants contend that they have brought the issue of the unresolved § 1927 sanctions matter to the attention of Judge Thompson by listing the matter as an agenda item for discussion at the regularly scheduled status conferences that Judge Thompson held for a period of years in this case.  (*See, e.g.*, Doc. # 6652.) They filed no motion with Judge Thompson requesting any relief, however; and even if they had, the Eleventh Circuit expressly has forbidden Judge Thompson from hearing the § 1927 sanctions issue.  *See Reynolds*, 207 F.3d at 1301–02 ("[O]n receipt of the mandate, the chief judge of the Middle District of Alabama will assign the case to himself or another district judge (*other than Judge Thompson*) for the purpose of enabling plaintiffs' counsel to show cause why section 1927 sanctions should not be awarded to the Adams Intervenors." (emphasis added)).  Defendants made no request for relief to the undersigned until February 14, 2012, and their request comes too late for the reasons explained.

Finally, and simply, laches also is a strong conceptual fit for these facts. Clearly, there has been delay, and no compelling excuse is apparent.  Even if Defendants are given the benefit of the doubt on their excuses, the third consideration, undue prejudice, is the deciding factor.  Judicial estoppel and laches both include this element.  Assessing undue prejudice is difficult on these facts because of the abundance of prejudice.  No doubt, the resumption of sanctions proceedings in the district court after the matter has lain dormant for more than

eleven years will be hampered by stale evidence and faded memories, thereby prejudicing counsel for Plaintiffs' ability to defend themselves. On the other hand, the court is sensitive to the fact that the Eleventh Circuit *sua sponte* raised the § 1927 sanctions issue, thereby creating an inchoate, or at least potential, right to recovery. Yet neither the district court nor the Eleventh Circuit has decided whether Plaintiffs' counsel should be assessed § 1927 sanctions. In other words, if the § 1927 sanctions issue ever is to be resolved, prejudice is unavoidable.

After careful consideration of the equities, on this record – where Defendants waited more than ten years after the second panel's 2001 dismissal of the sanctions appeal to take any action on the § 1927 sanctions issue in the district court, where Defendants advanced arguments to the Eleventh Circuit that are directly contrary to the ones they now make to the district court, and where Defendants have failed to formally intervene as suggested by Judge DeMent – the court declines to undo Judge DeMent's March 28, 2001 ruling denying an evidentiary hearing and finding that the final decision on the § 1927 sanctions matter was reserved for the circuit. The court also declines to reconsider Judge DeMent's March 28, 2001 ruling without clear direction from either the first panel or the second panel of the Eleventh Circuit that the district court is in violation of the mandate. As Defendants themselves argued before the Eleventh Circuit in 2001, "[e]ven if th[e Eleventh Circuit] had divested itself of jurisdiction over the

sanctions issue, and Judge DeMent's order certifying the evidentiary record was therefore ineffective, appeal of the order would still have to wait final resolution of all other issues in this case." (Doc. # 8805-1, at 20 (citing *Cunningham v. Hamilton Cnty.*, 527 U.S. 198 (1999).)

There is one final matter to address. At the March 2012 status conference, the ALDOT requested the ability to be heard in any § 1927 sanctions proceedings on grounds that it, rather than the Adams Intervenors, is the real party in interest. (*See* Doc. # 8791, at 9.) In 2001, Judge DeMent denied the ALDOT's motion to intervene and concluded that the ALDOT "must address the United States Court of Appeals for the Eleventh Circuit with its request to intervene." (Doc. # 4746.) The ALDOT has not contended in these proceedings that it ever made such a request with the Eleventh Circuit, and that ruling by Judge DeMent also will not be revisited by this court. From aught that appears, the ALDOT again will have to wait until final disposition of the *Reynolds* case, which to date remains pending. *See generally* 5 Am. Jur. 2d *Appellate Review* § 234 (2014) ("One who seeks to intervene, but is denied leave to do so by the trial court, has standing to appeal such denial, or, according to another view, from the final judgment entered in the case in which he or she sought to intervene."). Accordingly, Defendants' request for relief from the district court on the § 1927 sanctions issue is due to be denied.

## IV.  CONCLUSION

The sanctions corpse is buried under an insurmountable pile of days, doctrines, and delays.  The equities – notably those of waiver, judicial estoppel, and laches, whether considered individually or cumulatively – preclude Defendants from exhuming the § 1927 sanctions dispute in the district court after more than a decade of inaction.  Accordingly, it is ORDERED that Defendants' request that the district court take further action on the § 1927 sanctions issue (Doc. # 8791) is DENIED.

DONE this 16th day of July, 2014.

　　　　　　　　　　　　　　　/s/ W. Keith Watkins
　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE